1  MARK L. SKAIST (SBN 156090)
     apparel@sycr.com
2  JUSTIN E. KLAEB (SBN 254035)
     jklaeb@sycr.com
3  STRADLING YOCCA CARLSON & RAUTH, P.C.
   100 Wilshire Blvd., 4th Floor
4  Santa Monica, California 90401
   Telephone: (424) 214-7000
5  Facsimile: (424) 214-7010

6
   Attorneys for Plaintiffs,
7  BLUE SPHERE, INC. doing business as LUCKY 13
   and ROBERT A. KLOETZLY

8

9                    UNITED STATES DISTRICT COURT

10            FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                          SOUTHERN DIVISION

12

13
   BLUE SPHERE, INC., a California        CASE NO.:  8:14-cv-00782
14 Corporation doing business as
   LUCKY 13, and ROBERT A.                COMPLAINT FOR:
15 KLOETZLY, an individual,
                                          1.  TRADEMARK INFRINGEMENT
16            Plaintiffs,                      UNDER 15 U.S.C. § 1114;

17            vs.                          2.  UNFAIR COMPETITION IN
                                              VIOLATION OF THE LANHAM
18 TAYLOR A. SWIFT, an individual,            ACT, 15 U.S.C. § 1125(a);
   TAYLOR NATION, LLC, a
19 Tennessee Limited Liability             3.  TRADEMARK DILUTION IN
   Company, TAYLOR SWIFT                       VIOLATION OF THE LANHAM
20 PRODUCTIONS, INC., a                        ACT, 15 U.S.C. § 1125(c);
   Tennessee Corporation, SWIFT
21 MERCHANDISING, INC., a                 4.  UNFAIR COMPETITION UNDER
   Tennessee Corporation, and TAS             CALIFORNIA BUSINESS AND
22 RIGHTS MANAGEMENT, LLC, a                  PROFESSIONS CODE §17200;
   Tennessee Limited Liability                and,
23 Company,
                                          5.  COMMON LAW
24            Defendants.                      MISAPPROPRIATION.

25

26                                        JURY TRIAL DEMANDED

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

                               **COMPLAINT**

DOCSSM/3008477v5/102261-0094

Plaintiffs, Blue Sphere, Inc. doing business as Lucky 13 and Robert A. Kloetzly ("Kloetzly" or "Bobby") by and through their attorneys, hereby allege as follows:

**<u>PARTIES</u>**

1.     Plaintiff Blue Sphere, Inc., doing business as Lucky 13 is, and at all times pertinent to this action has been, a corporation duly organized and existing under the laws of the State of California, and having its principal place of business at 215 Baker Street E, Costa Mesa, California 92626.

2.     Plaintiff Kloetzly, who is the Chief Executive Officer of Lucky 13, is a resident of the State of California, who maintains a place of business at 215 Baker Street E, Costa Mesa, California 92626 (Blue Sphere, Inc., doing business as Lucky 13 and Kloetzly are collectively referred to herein as "Lucky 13" or "Plaintiffs").

3.     On information and belief, Defendant Taylor A. Swift ("Taylor Swift") is a resident of Tennessee, and maintains an address at 173 Inlet Drive, Hendersonville, Tennessee 37075-4388.

4.     On information and belief, Taylor Nation, LLC ("Taylor Nation") is a limited liability company duly organized and existing under the laws of the State of Tennessee, with its principal place of business at 2300 Charlotte Avenue, Nashville, Tennessee 37203-1859.

5.     On information and belief, Taylor Swift Productions, Inc. ("Taylor Swift Productions") is a corporation duly organized and existing under the laws of the State of Tennessee, with its principal place of business at 718 Thompson Lane, Suite 108256, Nashville, Tennessee 37204-3600.

6.     On information and belief, Swift Merchandising, Inc. ("Swift Merchandising") is a corporation duly organized and existing under the laws of the State of Tennessee, with its principal place of business at 718 Thompson Lane, Suite 108256, Nashville, Tennessee 37204-3600.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-1-
COMPLAINT

DOCSSM/3008477v5/102261-0094

7.      On information and belief, TAS Rights Management, LLC ("TAS Rights Management"; collectively, Taylor Swift, Taylor Nation, Taylor Swift Productions, Swift Merchandising, and TAS Rights Management shall be referred to as "Swift" or "Defendants") is a limited liability company organized and existing under the laws of the State of Tennessee, with its principal place of business at 718 Thompson Lane, Suite 108256, Nashville, Tennessee 37204-3600.

## JURISDICTION AND VENUE

8.      This is a civil action arising under the laws of the United States relating to trademarks (15 U.S.C. §§ 1114(1), 1125(a) and 1125(c)).  This Court has federal question jurisdiction over Counts I, II, and III pursuant to 28 U.S.C. §§ 1331 and 1338(a)-(b).  This Court has supplemental jurisdiction over Counts IV and V pursuant to 28 U.S.C. § 1367.

9.      This Court has personal jurisdiction over Taylor Swift because she has done and continues to do substantial business in this judicial district — including performing at STAPLES Center in Los Angeles on August 19, 2013 and August 20, 2013, as part of her RED Tour — and has committed acts of trademark infringement, and other acts complained of herein, in this judicial district.

10.     This Court has personal jurisdiction over Taylor Nation because Taylor Nation has done and continues to do substantial business in this judicial district and has committed acts of trademark infringement, and other acts complained of herein, in this judicial district.

11.     This Court has personal jurisdiction over Taylor Swift Productions because Taylor Swift Productions has done and continues to do substantial business in this judicial district and has committed acts of trademark infringement, and other acts complained of herein, in this judicial district.

12.     This Court has personal jurisdiction over Swift Merchandising because Swift Merchandising has done and continues to do substantial business in

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-2-

COMPLAINT

DOCSSM/3008477v5/102261-0094

this judicial district and has committed acts of trademark infringement, and other acts complained of herein, in this judicial district.

13.     This Court has personal jurisdiction over TAS Rights Management because TAS Rights Management has done and continues to do substantial business in this judicial district and has committed acts of trademark infringement, and other acts complained of herein, in this judicial district.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 (b)-(c) and 1400(b).  The acts and transactions complained of herein were conceived, carried out, made effective, and had an effect within the State of California and within this judicial district.

## NATURE OF THE ACTION

15.     In this action, Lucky 13 seeks injunctive relief, Swift's profits, Plaintiffs' lost profits and damages, punitive damages, and attorneys' fees, for Swift's acts of trademark infringement under 15 U.S.C. § 1114 *et seq*., unfair competition and false designation of origin under 15 U.S.C. § 1125(a), trademark dilution under 15 U.S.C. § 1125(c), unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq*., and common law misappropriation.

## FACTUAL ALLEGATIONS

16.     Lucky 13's owner, Robert "Bobby" Kloetzly, grew up on the shores of Huntington Beach, California, surfing, riding motorcycles up and down Pacific Coast Highway, attending the Orange County Fair, and going to concerts given by such notable musicians as Mike Ness and Social Distortion, Black Flag, and Billy Zoom and John Doe's group, X.  *See*, *generally*, "*Lucky 13's still rockin' after two decades*," *Orange County Register*, August 30. 2011, a copy of which is attached hereto as **Ex. A**.

17.     In the late 1980s, Bobby worked under the tutelage of several successful entrepreneurs in the apparel industry, where he made multiple

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-3-
COMPLAINT

DOCSSM/3008477v5/102261-0094

1 | connections and gained detailed knowledge of the lifestyle brand scene, including

2 | how to own and operate a successful lifestyle business.

3 |     18.    In <u>1991</u>, with the blessing, encouragement and support of his myriad

4 | business connections, Bobby ventured out to form Lucky 13.  In its twenty-three

5 | years of business operations, Lucky 13 has built up extensive and valuable

6 | business and goodwill in connection with the marketing and sale of its

7 | LUCKY 13® goods throughout the world.

8 | **Lucky 13's Marketing and Sale of LUCKY 13® Goods**

9 |     19.    Lucky 13 is the owner of the trademark LUCKY 13®, which has been

10 | used in connection with the marketing and sale of, *inter alia*, (1) clothing for men

11 | and women, namely, t-shirts, jackets, headwear and footwear; (2) jewelry;

12 | (3) body sprays and pomade; (4) license plates, license plate holders, key chains,

13 | and vehicle seat and steering wheel covers; (5) motorcycle helmets; and, (6) paper

14 | products, including desk calendars (collectively, the "LUCKY 13® Goods").

15 |     20.    Since at least as early as <u>May 7, 1992</u>, Lucky 13 has invested and

16 | continues to invest substantial time, money, and effort in promoting and

17 | advertising its LUCKY 13® Goods in United States commerce, including through

18 | its commercial Internet website, <u>www.Lucky13.com</u>, which is depicted below.



**COMPLAINT**

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

DOCSSM/3008477v5/102261-0094

21.     Lucky 13 also has marketed and sold the LUCKY 13® Goods in Argentina, Australia, Brazil, Canada, China, in the European Union, Hong Kong, Hungary, Japan, New Zealand, Panama, South Africa, Taiwan, Thailand, and Uruguay for several years.

22.     Lucky 13, as a result of its extensive worldwide marketing, advertising and sale of LUCKY 13® Goods, has built and continues to enjoy significant consumer goodwill associated with its LUCKY 13® trademarks.

23.     Lucky 13 and its licensing partners have sold a significant amount of LUCKY 13® branded goods in the United States and worldwide.  In fact, for the past decade, Lucky 13 has earned several million dollars per year from its worldwide marketing and sale of the LUCKY 13® Goods through its own sales and the sales of its licensees.  As such, Lucky 13's consumers have come to associate Lucky 13 as the source of LUCKY13® consumer goods.  For instance, consumers can search for the term "Lucky 13" on the Google search engine for "Web" — the first search result is for LUCKY 13® consumer goods, as depicted below.



24.     In addition, consumers can search for "Lucky 13" on the Google search engine for "Images" — the majority of the search results are for LUCKY 13® consumer goods, as depicted on the following page.

COMPLAINT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

DOCSSM/3008477v5/102261-0094



**Lucky 13's Ownership of LUCKY 13® Trademarks in the United States**

25.     Lucky 13 is the owner of several Federally registered and incontestable United States trademarks for LUCKY 13®, including,

a.     United States Trademark Registration No. 2,970,316 for the mark LUCKY 13 in International Classification 18 for "Athletic bags, backpacks, beach bags, book bags, carry-on bags, duffel bags, gym bags, school bags, shoulder bags, sports bags, tote bags, travel bags, hand bags, billfold, day packs, pocketbooks, purses, wallets," and International Classification 26 for "Belt Buckles not of precious metal";

b.     United States Trademark Registration No. 2,974,104 for the mark LUCKY 13 in International Classification 12 for "Hitch plugs, license plate holders, vehicle seat covers, automobile seat belt shoulder pads, steering wheel covers";

c.     United States Trademark Registration No. 3,022,964 for the mark LUCKY 13 in International Classification 06 for "Metal key chains, metal key holders, metal key rings, metal money clips, metal license plates"; International Classification 16 for "Bags for merchandise packaging namely plastic and paper, bumper stickers, calendars, organizers for stationary use,

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

COMPLAINT

DOCSSM/3008477v5/102261-0094

decals, desk calendars, paper emblems, printed emblems, graphics for application to automobiles, litter bags, merchandising bags, plastic bags, stickers, temporary tattoos"; and, International Classification 21 for "Beverage glassware, bottle openers, candle holders not of precious metal, candlesticks not of precious metal, coffee cups, drinking glasses, shot glasses, flasks, hair combs, mugs, plastic cups, plastic coasters, rubber coasters, and travel tumblers";

      d.     United States Trademark Registration No. 3,207,294 for the mark LUCKY 13 in International Classification 25 for "Clothing and footwear for men and women, namely, athletic shoes, athletic sports suits, belts, blouses, body suits, cardigans, coats, dresses, gowns, gloves, gym suits, hats, jackets, jeans, jogging suits, overalls; pants, namely, capri pants, chino pants, work pants; shirts namely, polo shirts, jersey shirts, diner shirts, bowling shirts, flannel shirts, sport shirts; shoes, shorts, namely, board shorts, chino shorts, walking shorts, hiking shorts; skirts, sleepwear, slippers, sneakers, suspenders, sweaters, sweatshirts, swimwear, tops, T-shirts, warm-up suits, beach clothes and surf wear, namely, board shorts, camisole tops, midriff tops, pants, skirts, sweatshirts, sweat pants, tank tops, tie tops; vests, sweaters, sandals, head wear, namely, caps, hats"; and, International Classification 35 for "Retail store services and on-line retail services available via the Internet in the field of electrical goods, lamps, optical goods and sunglasses, CDs, records and video tapes, jewelry, stationery, printed publications and printed matter, cards, gift wrap, furniture, furnishings and decorations, bed and table linen, comforters, towels, clothing, footwear, headgear, playthings sporting goods and accessories, namely, belt buckles, candles, clocks, coaster sets, gear bags, lighters, posters"; and,

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-7-
COMPLAINT

DOCSSM/3008477v5/102261-0094

e.     United States Trademark Registration No. 3,250,642 for the mark LUCKY 13 in International Classification 14 for "body-piercing rings, body-piercing studs, bracelets, charms, chokers, costume jewelry, earrings, ear studs, ear plug earrings, jewelry, navel rings, necklaces, pendants." Copies of the aforementioned Federally registered and incontestable LUCKY 13 trademarks are attached hereto as **Exs. B** through **F**.

26.     Lucky 13 is the owner of United States Trademark Registration No. 3,623,660 for LUCKY 13 in International Classification 03 for "Body sprays; Greases for cosmetic purposes; Hair care creams; Hair creams; Hair gels; Hair pomades; Hair shampoo; Hair styling gel; Mustache wax; Perfumed creams; Pomades; Sculpting gel; Styling gels; Gel for molding hair".

27.     Lucky 13 is the owner of United States Trademark Application No. 85/814,077 for LUCKY 13 in International Classification 09 for "Motorcycle helmets; Protective helmets; Riding helmets".

28.     Lucky 13 is the owner of additional trademark applications and registrations throughout the world for LUCKY 13®, a Schedule of which is attached hereto as **Ex. G**.

### Lucky 13's Licensing Program for LUCKY 13® Goods

29.     Lucky 13 has a sophisticated licensing program.  It has entered into numerous licensing agreements with parties in the United States and throughout the world.  Lucky 13 has numerous past and current licensing partners, each of which market and sell LUCKY 13® Goods, including but not limited to apparel, motorcycle helmets, and sunglasses.  Each of these licensing partners pay a negotiated royalty payment to Lucky 13, depending upon the licensed LUCKY 13® product, relevant market, and other economic factors.

30.     Because of Lucky 13's and its licensing partners' extensive use and promotion of the LUCKY 13® trademarks, LUCKY 13® has become distinctive,

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-8-

COMPLAINT

DOCSSM/3008477v5/102261-0094

1   has acquired secondary meaning in the relevant consumer marketplace, and

2   identifies Lucky 13 as the single source of origin for LUCKY 13® Goods.

3       31.     As such, Lucky 13 has developed and maintains a trademark

4   protection program, whereupon it seeks to stop the unauthorized and non-licensed

5   use of its LUCKY 13® trademarks.  As part of this program, it sends "cease and

6   desist" letters and files litigation when its initial attempts to resolve matters are not

7   successful.

8   **Lucky 13's Community Outreach**

9       32.     For several years, Lucky 13 has maintained a significant community

10  outreach program.  As part of this program, it has donated numerous items to the

11  Orange County Rescue Mission, The Phoenix House, and the Delancey Street

12  Foundation, as discussed below.

13      a.     The mission statement for the Orange County Rescue Mission

14  states "Our Mission is to minister the love of Jesus Christ to the Least, the

15  Last, and the Lost."  *See* www.rescuemission.org.  For a copy of the relevant

16  portion of the Orange County Rescue Mission website, *see* **Ex. H**.

17      b.     Phoenix House, from its website, www.phoenixhouse.org,

18  "embraces research-tested addiction treatment methods, tailored to meet

19  individual needs.  Our more than 120 programs in California, Florida, Maine,

20  Maryland, Massachusetts, New Hampshire, New York, Rhode Island, Texas,

21  Vermont, and Virginia/Metro D.C. lead individuals and families from

22  disruptive to productive lives."  For a copy of the relevant portion of the

23  Phoenix House website, *see* **Ex. I**.

24      c.     The Delancey Street Foundation "is the country's leading

25  residential self-help organization for former substance abusers, ex-convicts,

26  homeless and others who have hit bottom. . . .  During their time at Delancey

27  Street, residents receive a high school equivalency degree (GED) and are

28  trained in 3 different marketable skills."  *See*

DOCSSM/3008477v5/102261-0094

1  www.delanceystreetfoundation.org.  For a copy of the relevant portion of the
2  Delancey Street Foundation website, *see* **Ex. J**.

3  **Swift's Unauthorized Marketing and Sale of "Lucky 13" Goods**

4  33.  Lucky 13 has not authorized Defendants to manufacture, distribute,
5  advertise, or sell the "Lucky 13" apparel or related goods.

6  34.  Upon information and belief, on or about <u>March 1, 2012</u>, which is
7  about twenty (20) years after Lucky 13 first used its LUCKY 13® trademarks for
8  the marketing and sale of its LUCKY 13® Goods, Swift began using the term
9  "Lucky 13" to market and sell apparel in at least the United States, without
10  requesting permission or otherwise securing a license from Lucky 13.  *See* the
11  usage depiction below.



26  35.  Upon information and belief, Swift's "Lucky 13" apparel is further
27  marketed and sold by additional vendors, including www.Polyvore.com, as
28  depicted on the following page.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-10-

COMPLAINT

1
2
3
4
5
6
7
8
9



10       36.    Swift also has used social media to market and promote its

11   "Lucky 13" products, as depicted below.

12
13



14
15
16
17
18
19
20
21
22
23
24

25       37.    Upon information and belief, Swift also has partnered with American

26   Greetings Corp. to market "Lucky 13" greeting card contests without authorization

27   or seeking a license from Lucky 13, in further infringement of Lucky 13's

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-11-

COMPLAINT

DOCSSM/3008477v5/102261-0094

Federally registered and incontestable LUCKY 13® trademarks, as depicted below.



38.    Upon information and belief, Swift's conduct has been and will continue to be malicious, fraudulent, deliberate, willful, intentional, and in disregard of Plaintiffs' intellectual property rights.

### Swift's Extensive Trademark Portfolio

39.    Swift has filed about sixty United States Federal trademark applications, including but not limited to the following marks:

a.    United States Trademark Registration No. 3,439,210 for the mark TAYLOR SWIFT in International Classification 25 for "Clothing, namely, shirts, T-shirts, sweatshirts, jerseys, hats and caps";

b.    United States Trademark Registration No. 3,809,272 for the mark TAYLOR SWIFT (and design) in International Classification 35 for "On-line retail store services featuring audio recordings, video recordings, printed publications, printed materials, clothing, collectibles, memorabilia, and a wide variety of products related to a musical artist";

-12-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

COMPLAINT

DOCSSM/3008477v5/102261-0094

1        c.      United States Trademark Registration No. 3,809,274 for the

2  mark TAYLOR SWIFT (and design) in International Classification 25 for

3  "Clothing, namely, bandanas, caps, hats, hooded pullovers, hooded sweat

4  shirts, sweat shirts, pants, and t-shirts";

5        d.      United States Trademark Registration No. 4,102,010 for the

6  mark SPEAK NOW in International Classification 25 for "Clothing, namely,

7  casual clothing, namely, tops for men, women, and children; Shirts; T-shirts;

8  Headwear; Caps; Hats; Gloves; Scarves";

9        e.      United States Trademark Registration No. 4,420,958 for the

10  mark TAYLOR SWIFT in International Classification 25 for "Footwear";

11        f.      United States Trademark Application No. 77/734,586 for the

12  mark FEARLESS in International Classification 25 for "Clothing, namely,

13  dresses, hooded pullovers, hooded sweat shirts, jackets, jerseys, sweat shirts,

14  pants and jeans, and hats, caps, bandanas, t-shirts and sweaters sold or

15  distributed in connection with Applicant's live musical performances and

16  musical sound recordings";

17        g.      United States Trademark Application No. 85/121,390 for the

18  mark SWIFT (and design) in International Classification 25 for "Clothing,

19  namely, shirts, t-shirts, jerseys, sweatshirts, pants, sweatpants, shorts;

20  Headwear; Caps; Hats; Visors; Bandanas; Gloves; Scarves; Footwear;

21  Hosiery";

22        h.      United States Trademark Application No. 85/121,393 for the

23  mark TS (and design) in International Classification 25 for "Clothing,

24  namely, shirts, t-shirts, jerseys, sweatshirts, pants, sweatpants, shorts;

25  headwear; caps; hats; visors; bandanas; gloves; scarves; footwear; hosiery";

26  and,

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-13-

COMPLAINT

DOCSSM/3008477v5/102261-0094

1          i.     United States Trademark Application No. 85/168,908 for the

2 mark TAYLOR SWIFT FEARLESS in International Classification 25 for

3 "Clothing, namely, shirts, jerseys, t-shirts, sweatshirts; Head wear; Caps."

4       40.     Upon information and belief, while Swift filed the above applications,

5 it did not file a Federal trademark application for "Lucky 13" for apparel, the

6 online sale of apparel, or for use on any other goods or services.  This is because,

7 upon Lucky 13's belief, Swift likely knew that such an application would not

8 register — due to (a) Lucky 13's earlier first use of the LUCKY 13® trademarks in

9 United States commerce, as well as (b) the existence of Lucky 13's Federally

10 registered and incontestable LUCKY 13® trademarks.

11 **Swift's Business Empire**

12       41.     Upon information and belief, Swift has numerous business and

13 licensing partners, each of whom is a licensee or sponsor of Swift, or whom Swift

14 endorses.  These business partners include, but are not limited to, AirAsia Berhad,

15 the aforementioned American Greetings, Cover Girl, Elizabeth Arden, Papa John's

16 Pizza, and Keds.

17       42.     Upon information and belief, in its annual Money Makers list,

18 *Billboard* magazine selected Swift as its highest earning musical act for 2013,

19 stating that Swift earned about $40 million.  *See*, "*Music's Top 40 Money Makers*

20 *2014: The Rich List*," Billboard, <u>March 10, 2014</u>, a copy of which is attached

21 hereto as **Ex. K**.

22       43.     Upon information and belief, in total, Swift has sold at least 26

23 million albums and over 75 million digital downloads worldwide under the Taylor

24 Swift trademark.  Swift's net worth is estimated to be at least $200 million.

25 **Swift's Intellectual Property Knowledge and Enforcement Activity**

26       44.     There can be no doubt that Swift — who has an extensive trademark

27 portfolio and numerous business and licensing partners, and whose record label is

28 even named the "Big Machine" — knows, understands and substantially profits

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-14-

COMPLAINT

DOCSSM/3008477v5/102261-0094

1  from her carefully cultivated and meticulously managed trademarks and brand,

2  image, and other intellectual property.

3      45.    As Swift has claimed in previous court filings seeking protect her

4  trademarks, intellectual property protection is the backbone of her success,

5  including for her copyright-protected musical compositions, trademark-protected

6  brands and her overall image and likeness.  Swift previously has filed Federal

7  litigation seeking to protect her intellectual property rights.  *See*, *e.g.*, *Taylor Swift*

8  *v. Malcolm Matthews*, *et al.*, Case No. 09-cv-00442 (M.D. Tenn. 2009) (the

9  "First Swift Trademark Action"); *see*, *also*, *TAS Rights Management, LLC v.*

10  *Various John Does et al.*, Case No. 11-cv-00477 (M.D. Tenn. 2011) (the "Second

11  Swift Trademark Action"); and, *TAS Rights Management, LLC v. Various John*

12  *Does*, *et al.*, Case No. 13-cv-00170 (M.D. Tenn. 2013) (the "Third Swift

13  Trademark Action").  Each of these cases is discussed below.

14      a.    In the First Swift Trademark Action, a copy of which is attached

15  hereto as **Ex. L**, Taylor Swift claims,

16      [M]erchandise bearing [Taylor Swift's] trademarks and likeness has been
made available for purchase to the public, by [Taylor Swift] and her

17  authorized vendors. . . . [Taylor Swift] has advertised and sold such
merchandise since as early as October 2000. . . . Merchandise being

18  offered by [Taylor Swift] . . . includes hooded shirts, posters . . . and,
<u>most prominently</u>, <u>tee-shirts</u>.  . . . A variety of merchandise bearing

19  [Taylor Swift's] trademarks is also available in retail stores nationwide,
pursuant to [Taylor Swift's] <u>licensing agreements</u>.  [Taylor Swift]

20  carefully limits such agreements . . . and <u>maintains complete control</u> over
the manner in which [Taylor Swift's] Trademarks are used and [Taylor

21  Swift's] name and likeness are represented.  (Emphasis added.)  *See* **Ex.**
**L** at Paragraph Nos. 17, 18, 21 and 22.

22

23

24      b.    In the Second Swift Trademark Action, a copy of which is

25  attached hereto as **Ex. M**, TAS Rights Management claims,

26      Ms. Swift is an internationally recognized singer-songwriter, musician
and actress. . . .  Ms. Swift provides and promotes products and services

27  to the public in association with her name, Taylor Swift, which also
functions as a trademark, used in an unstylized, literal form – "Taylor

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-15-

COMPLAINT

DOCSSM/3008477v5/102261-0094

Swift," and in the stylized, "logo" form . . . .  At all times relevant hereto, <u>Ms. Swift and/or her licensees maintained exclusive rights in and control of the Taylor Swift Trademarks</u>, which have and continue to be used extensively in the United States and throughout the world.  (Emphasis added.)  *See* **Ex. M** at Paragraph Nos. 7, 8 and 16.

c.     In the Third Swift Trademark Action, Swift's trademark legal team made the identical claims as in the Second Swift Trademark Action.  *See* **Ex. N**, which is a copy of the Complaint in the Third Swift Trademark Action, also at Paragraph Nos. 7, 8 and 16.

46.     While Swift's merchandising and licensing team obsessively focuses on the Swift brand, it ignores the intellectual property rights of others.  Upon information and belief, since at least as early as <u>March 1, 2012</u>, Swift has marketed and sold "Lucky 13" apparel, as well as offered "Lucky 13" greeting card-themed contests, all without seeking permission or otherwise securing a license from Lucky 13 — which itself has an extensive licensing program.  There can be no doubt that Swift fully understands that marketing and selling another's goods without securing a license or permission is not acceptable and cannot be allowed.

47.     Upon information and belief, the "Lucky 13" apparel that has been marketed and sold by Swift is a "popular item" that is in high demand.

48.     Swift's infringement of Lucky 13's Federally registered and incontestable LUCKY 13® trademarks is clear-cut.  Lucky 13 is concerned that Swift's past use and any future use of the term "Lucky 13" to market and sell apparel and related products is likely to cause and will continue to cause confusion with and dilute the significant value of Lucky 13's Federally registered and incontestable LUCKY 13® trademarks.

49.     Swift's unauthorized use and continued use in interstate commerce of "Lucky 13" for apparel and other products is identical in nature to Lucky 13's marketing and sale of the LUCKY 13® Goods.  This is because Lucky 13's

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-16-

COMPLAINT

DOCSSM/3008477v5/102261-0094

LUCKY 13® Goods and Swift's "Lucky 13" apparel and related products are marketed and sold in the same distribution channels and for a similar price.

50.     Taylor Swift — who has been photographed with permanent or temporary tattoos and markets herself as liking fast cars and dangerous men who drive them inappropriately, as demonstrated by her "I Knew You Were Trouble" music video — undeniably and squarely fits within the exact consumer demographic to whom Lucky 13 markets and sells its LUCKY 13® Goods. Screen shots of this video are depicted immediately below.





COMPLAINT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

DOCSSM/3008477v5/102261-0094

51.     A substantial majority of Swift's more mature, young adult followers are also within Lucky 13's target consumer demographic.  In fact, the screen shot of the LUCKY 13® website at Paragraph No. 20, *supra*, and the screen shots of Taylor Swift's "I Knew You Were Trouble" music video that appear on the prior page at Paragraph No. 50 are similar and could be part of the same LUCKY 13® marketing campaign — the marketing imagery depicts stylish, attractive, tattooed individuals in provocative situations.

52.     Swift has caused and is likely to cause confusion, mistake or deception (a) as to the characteristics, qualities or origin of Lucky 13's LUCKY 13® Goods, (b) as to an affiliation, connection or association between Lucky 13 and Swift, and (c) as to the sponsorship or approval of Swift's "Lucky 13" apparel by Lucky 13.

53.     Lucky 13 is committed to protecting its LUCKY 13® trademarks against the use of identical or confusingly similar marks, for itself and its licensees in order to continue to administer its own highly successful licensing program.

## FIRST CLAIM FOR RELIEF

*(Infringement of Federally Registered Trademark (Lanham Act §32))*

54.     Lucky 13 hereby re-alleges and incorporates by reference each of the allegations from Paragraph Nos. 1 through 53 hereof as if fully stated herein.

55.     By virtue of Defendants' conduct, Defendants have used and are using "Lucky 13" in connection with the advertising, marketing and offering of apparel and other products in interstate commerce, which imitates Lucky 13's LUCKY 13® United States Federally registered and incontestable trademarks.

56.     Both Lucky 13 and Swift market and sell apparel and other products to the same or similar consumers.

57.     As a result of Defendants' conduct, there is a strong likelihood of confusion, mistake, or deception.  Many individuals familiar with Lucky 13's

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-18-
COMPLAINT

DOCSSM/3008477v5/102261-0094

LUCKY 13® Goods, reputation and favorable goodwill are likely to purchase Defendants' "Lucky 13" goods under the mistaken belief that such goods are offered or authorized by Lucky 13.

58.     Defendants' actions have been and are willful, unfair, false and deceptive, in that they tend to mislead, deceive and confuse, and have had and will continue to have the result of misleading, deceiving and confusing the public to believe that Defendants and/or their goods are affiliated with, sponsored or controlled by Lucky 13.

59.     The foregoing actions of Defendants constitute trademark infringement by inducing the erroneous belief that Defendants' and/or their goods are in some manner affiliated with, originate from, or are sponsored by Lucky 13 in violation of Lanham Act § 32, 15 U.S.C. § 1114.

60.     Lucky 13 is informed and believes, and on that ground alleges, that Defendants have made and/or will make unlawful gains and profits from their unlawful actions as alleged herein, and by reason thereof, Lucky 13 has been deprived of gains and profits which otherwise would have inured to Lucky 13 but for such unlawful actions.

61.     Lucky 13 has no adequate remedy at law for the injuries alleged in this Count.  The injuries are, in part, intangible in nature and not capable of being fully measured or valued in terms of monetary damages.  Further, the injuries are of a continuing nature and will continue to be suffered so long as Defendants continue their wrongful conduct.

62.     Notwithstanding the difficulty of fully ascertaining the value of the damage to Lucky 13 caused by Defendants' wrongful conduct, Defendants' conduct has resulted in irreparable, direct and proximate damages to Lucky 13. Thus, Lucky 13 is entitled to injunctive relief under 15 U.S.C. §1116(a).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-19-

COMPLAINT

DOCSSM/3008477v5/102261-0094

## SECOND CLAIM FOR RELIEF

*(False Designation of Origin and Unfair Competition (Lanham Act §43(a))*

63.     Lucky 13 repeats and re-alleges each and every allegation contained in Paragraph Nos. 1 through 62 hereof as if fully stated herein.

64.     This claim arises under Section 43(a) of the Lanham Act.  Swift's unauthorized use and continued use in interstate commerce of "Lucky 13" apparel constitute use of a false designation of origin and a false description or representation that has caused and is likely to cause confusion, mistake or deception (a) as to the characteristics, qualities or origin of Lucky 13's LUCKY 13® Goods, (b) as to an affiliation, connection or association between Lucky 13 and Swift, and (c) as to the sponsorship or approval of Swift's "Lucky 13" apparel by Lucky 13.

65.     Such actions, as used in commercial advertising, have misrepresented and continue to misrepresent the nature, characteristics or qualities of Swift's "Lucky 13" apparel, services and/or commercial activities.

66.     Upon information and belief, Swift has intentionally and falsely designated the origin of its "Lucky 13" apparel by adopting and using a term that is identical to Lucky 13's Federally registered and incontestable LUCKY 13® trademarks so as to profit from Lucky 13's well-earned and carefully crafted reputation by confusing the public as to the source, origin, sponsorship or approval of its "Lucky 13" apparel, with the intention of deceiving and misleading the public at large, and of wrongfully trading on the goodwill and reputation of Lucky 13.

67.     The activities of Swift complained of herein have caused and, unless enjoined, will continue to cause substantial and irreparable harm to Lucky 13, its well-earned and carefully crafted business reputation and its goodwill, for which Lucky 13 is without adequate remedy at law.

DOCSSM/3008477v5/102261-0094

68.     The activities of Swift complained of herein also have caused Lucky 13 monetary loss and damage including, but not limited to, the loss of profits in an amount not yet determined.

69.     Further, the injury is of a continuing nature and will continue to be suffered so long as Swift continues its wrongful conduct.  Notwithstanding the inadequacy of, and the difficulty of, fully ascertaining the value of the damage to Lucky 13 caused by Swift's wrongful conduct, Lucky 13 is informed and believes, and on that ground alleges, that said conduct has resulted in irreparable, direct and proximate damages to Lucky 13.

### THIRD CLAIM FOR RELIEF

*(Federal Trademark Dilution (Lanham Act §43(c))*

70.     Lucky 13 repeats and re-alleges each and every allegation contained in Paragraph Nos. 1 through 69 hereof as if fully stated herein.

71.     Lucky 13's Federally registered and incontestable LUCKY 13® trademarks are famous and distinctive and therefore are entitled to protection against dilution by blurring or tarnishment.

72.     Defendants commenced use of Lucky 13's Federally registered and incontestable LUCKY 13® trademarks in commerce after the LUCKY 13® name and mark had become famous and distinctive.

73.     Swift, by using the LUCKY 13® trademarks in connection with "Lucky 13" apparel and other goods in a manner in which consumers are deceived as to the nature and origin of the goods provided, has injured and will continue to injure Lucky 13's business reputation, has tarnished the distinctive quality of Lucky 13's famous name and marks, and has lessened the capacity of Lucky 13's famous LUCKY 13® trademarks to identify and distinguish the LUCKY 13® Goods, in violation of 15 U.S.C. § 1125(c).

74.     As a result of Defendants' tarnishment of Lucky 13's name and Federally registered and incontestable LUCKY 13® trademarks, Lucky 13 has

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-21-

COMPLAINT

DOCSSM/3008477v5/102261-0094

suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Lucky 13 in its marks. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Lucky 13 has no adequate remedy at law. Lucky 13 will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## FOURTH CLAIM FOR RELIEF

*(Unfair Competition under Cal. Bus. & Prof. Code §§ 17200 et seq.)*

75.     Lucky 13 hereby re-alleges and incorporates by reference each of the allegations from Paragraph Nos. 1 through 74 hereof as if fully stated herein.

76.      Lucky 13 is informed and believes, and on that basis alleges, that Defendants have intentionally misappropriated Lucky 13's Federally registered and incontestable LUCKY 13® trademarks with the intent of causing confusion, mistake and deception as to the source of their goods with the intent to pass off their goods as those of Lucky 13, and as such, Defendants have committed unfair competition in violation of California Business and Professions Code §§ 17200 *et seq*.

77.     The foregoing acts of Defendants have caused and will continue to cause injury to Lucky 13 by depriving it of sales of its genuine LUCKY 13® Goods, injuring its business reputation and by passing off Defendants' goods as Lucky 13's goods, all in violation of California Business and Professions Code §§ 17200 *et seq*.

78.     Defendants' acts have caused and will continue to cause irreparable harm and damage to Lucky 13, and have caused and will continue to cause Lucky 13 monetary damage in an amount not yet determined, for which Lucky 13 is entitled to, including restitution and attorneys' fees and costs under California Business and Professions Code §§ 17200 *et seq*.

79.     Defendants' infringement of Lucky 13's intellectual property described herein constitutes "unlawful, unfair or fraudulent business act[s] or

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

COMPLAINT

practice[s] and unfair, deceptive, untrue or misleading advertising" within the meaning of California Business and Professions Code §17200.

80.     As a consequence of Defendants' actions, Lucky 13 is entitled to injunctive and monetary relief under California Business and Professions Code §§ 17200 *et seq.*

### **FIFTH CLAIM FOR RELIEF**

#### *(Common Law Misappropriation)*

81.     Lucky 13 hereby re-alleges and incorporates by reference each of the allegations from Paragraph Nos. 1 through 80 hereof as if fully stated herein.

82.     Lucky 13 has invested substantial time, man-hours, resources and money in adopting, developing and using the LUCKY 13® trademarks ("Investment Capital"), and the Federally registered and incontestable LUCKY 13® trademarks are Lucky 13's property.

83.     In committing the acts of trademark infringement and unfair competition as alleged herein, Swift has misappropriated and taken without permission Lucky 13's property and converted it to its own use for its own benefit.

84.     Lucky 13 is informed and believes, and on that ground alleges, that by misappropriating and converting Lucky 13's property, Swift has benefited greatly and illegitimately by using the LUCKY 13® trademarks to offer its "Lucky 13" apparel and related goods for sale without having to make a substantial investment of its own Investment Capital.

85.     Swift's acts constitute common-law misappropriation under the common law of the State of California.

86.     Swift has been and will continue to be unjustly enriched by its acts of misappropriation, unless enjoined.

87.     The foregoing acts of Swift have injured and will continue to injure Lucky 13 by depriving it of sales of its genuine LUCKY 13® Goods and by

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-23-

COMPLAINT

DOCSSM/3008477v5/102261-0094

injuring its business reputation and goodwill, all in violation of the common law of the State of California.

88.    Swift's acts have caused and will continue to cause irreparable harm and damage to Lucky 13, and have caused and will continue to cause Lucky 13 monetary damage to Lucky 13 in an amount thus far not determined, for which Lucky 13 is entitled to its actual damages, Swift's profits, punitive damages, attorney fees and costs.

89.    Lucky 13 has no adequate remedy at law.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

A.    A determination that Swift's conduct infringes Lucky 13's Federally registered and incontestable LUCKY 13® trademarks, falsely designates the origin of Swift's "Lucky 13" apparel, falsely describes such apparel, and unfairly competes with Lucky 13, all in violation of Lanham Act §§43(a) and 32, 15 U.S.C. §1125, and 15 U.S.C. §1114 *et seq*.

B.    A determination that Swift's conduct infringes Lucky 13's Federally registered and incontestable LUCKY 13® trademarks and unfairly competes with and misappropriates the property of Lucky 13 under California Business and Professions Code §§ 17200 *et seq*. and the common law of the State of California.

C.    That Swift and its agents, officers, directors, servants, employees, attorneys, its successors and assignees, and all others in active concert or participation with Swift be preliminarily and permanently enjoined from directly or indirectly:

i.    Using Lucky 13's Federally registered and incontestable LUCKY 13® trademarks, or any other trademarks which are confusingly similar to or colorable imitations of Lucky 13's Federally registered and incontestable LUCKY 13® trademarks, including, without limitation, the term "Lucky 13" alone or as part of or together with any other designs, word

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-24-

COMPLAINT

DOCSSM/3008477v5/102261-0094

1   or words, trademark, service mark, trade name, trade dress or other business

2   or commercial designation or any logo, symbol or design;

3        ii.      Committing any act which, in and of itself, or from the manner

4   or under the circumstances in which it is done amounts to false designation

5   of origin, false description or false representation of Swift's "Lucky 13"

6   apparel and other goods; and,

7        iii.     Otherwise unfairly competing with Lucky 13 or

8   misappropriating Lucky 13's intellectual property, including, but not limited

9   to Lucky 13's Federally registered and incontestable LUCKY 13®

10  trademarks.

11       D.       That the Court issue an Order directing Swift to file with the Court

12  and serve on Lucky 13, within thirty days after the service on Swift of such

13  injunctions, a report in writing and under oath, setting forth in detail the manner

14  and form in which Swift has complied with the injunction.

15       E.       That the Court award judgment in favor of Lucky 13 for the amount

16  of either damages sustained by Lucky 13 or the profits made by Swift as a result of

17  Swift's wrongful conduct, whichever amount is greater, and damages in an amount

18  necessary for Lucky 13 to conduct corrective advertising to eliminate the confusion

19  caused by Swift's wrongful acts.

20       F.       That the Court award judgment in favor of Lucky 13 in the amount

21  of treble damages under 15 U.S.C. §1117, plus prejudgment interest.

22       G.       That the Court award judgment against Swift for the full costs of this

23  action, including reasonable attorneys' fees.

24       H.       That the Court award to Lucky 13 punitive damages sufficient to deter

25  Swift from committing such willful acts of infringement in the future.

26       I.       That the Court award interest on all amounts found to be due to Lucky

27  13 from Swift, at the prevailing rate, from the date said amounts or any part thereof

28  became or become due.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-25-
COMPLAINT

1    J.      That the Court require Swift to notify its parent, subsidiaries, affiliated

2  companies, commercial associates, dealers, dealer advertising associations,

3  advertising agencies, suppliers and customers of said Order.

4    K.      That the Court order such other, further and different relief as the

5  nature of this action may require and that the Court deems just and proper.

6    L.      That the Court retain jurisdiction of this action for the purpose of

7  enabling Lucky 13 to apply to the Court, at any time, for such further orders as

8  may be necessary or appropriate for the interpretation or execution of any order

9  entered in this action, for the modification of any such order, for the enforcement

10  or compliance therewith, and for the punishment of any violations thereof.

11

12  DATED:  May 20, 2014              STRADLING YOCCA CARLSON
                                      & RAUTH, P.C.

13

14

15

16                                   By:    _s/ Justin E. Klaeb_____
                                            Mark L. Skaist
17                                          Justin E. Klaeb
                                            Attorneys for Plaintiffs,
18                                          BLUE SPHERE, INC. doing business
                                            as LUCKY 13 and ROBERT A.
19                                          KLOETZLY

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-26-

COMPLAINT

DOCSSM/3008477v5/102261-0094

1

## **JURY DEMAND**

2      Plaintiffs, Blue Sphere, Inc. doing business as Lucky 13 and Robert A.

3  Kloetzly hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of

4  Civil Procedure on each cause of action asserted in its Complaint that is triable by

5  jury.

6

7  DATED:  May 20, 2014              STRADLING YOCCA CARLSON
                                     & RAUTH, P.C.
8

9

10                                   By:   *s/ Justin E. Klaeb*
11                                         Mark L. Skaist
                                           Justin E. Klaeb
12                                         Attorneys for Plaintiffs,
                                           BLUE SPHERE, INC. doing business
13                                         as LUCKY 13 and ROBERT A.
                                           KLOETZLY
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-27-

COMPLAINT