# EXHIBIT K

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**IN NASHVILLE**

TAYLOR SWIFT,

      Plaintiff

v.

MALCOLM MATTHEWS, RENEE SUSAN
MITCHELL, LOUIS MOORE, MARTIN D.
QUATTLEBAUM, MARSHA DYONNE
TYLER, VARIOUS JOHN DOES,
VARIOUS JANE DOES, and
VARIOUS XYZ CORPORATIONS,

      Defendants

Civil Action No. _____

**JURY DEMAND**
**FILED UNDER SEAL**

---

**VERIFIED COMPLAINT**

---

The plaintiff, Taylor Swift, files this Verified Complaint against the defendants, Malcolm Matthews, Renee Susan Mitchell, Louis Moore, Martin D. Quattlebaum, Marsha Dyonne Tyler, Various John Does, Various Jane Does, and Various XYZ Corporations (collectively, "Defendants"), for trademark infringement and trademark dilution, in violation of the Trademark (Lanham) Act, 15 U.S.C. § 1051 *et seq.*, use of counterfeit marks, in violation of the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d), common law unfair competition, violation of Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*, and violation of the

1

Tennessee Personal Rights Protection Act of 1984, Tenn. Code Ann. § 47-25-1101 *et seq.*, and for her cause of action states as follows:

## PARTIES

1.      Plaintiff Taylor Swift ("Plaintiff") is an individual whose principal residence is located in Sumner County, Tennessee and whose principal place of business is located in Sumner County, Tennessee.

2.      Defendant Malcolm Matthews is an individual whose principal residence is located at 3234 Hunter Drive, Orangeburg, South Carolina, 29115.

3.      Defendant Renee Susan Mitchell is an individual whose principal residence is located at 2775 NE Expressway, Apartment 53, Atlanta, Georgia.

4.      Defendant Louis Moore is an individual whose principal residence is located at 705 Mermaid Avenue, Norfolk, Virginia.

5.      Defendant Martin D. Quattlebaum is an individual whose principal residence is located at 8556 Kendrick Road, Jonesboro, Georgia, 30126.

6.      Defendant Marsha Dyonne Tyler is an individual whose principal residence is located at 103 Booker Street, Baytown, Texas.

7.      Defendants Various John Does, Various Jane Does and Various XYZ Corporations ("Unnamed Defendants"), who are identified by fictitious names because their true names, capacities and addresses are not yet known to Plaintiff, are individuals and entities who are in some manner responsible or legally liable for the events or omissions giving rise to the Plaintiff's claims.  Plaintiff will seek leave of Court to amend this Complaint to assert Unnamed Defendants' true names, capacities and addresses when the same have been ascertained.

2

## JURISDICTION

8.      This Court has subject matter jurisdiction over this action pursuant to: 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121(a), as a civil action arising under the trademark laws of the United States; pursuant to 28 U.S.C. § 1338(b), as a civil action asserting a claim of unfair competition joined with a substantial and related claim under the trademark laws of the United States; and under 28 U.S.C. § 1367(a) and the doctrine of supplemental jurisdiction.

9.      Upon information and belief, Defendants are or will be subject to personal jurisdiction in the State of Tennessee, as Defendants have engaged or will engage in acts or omissions outside of Tennessee causing injury within Tennessee, and Defendants are or will be present in and about this judicial district in connection with the claims asserted in this action.

## VENUE

10.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims have occurred and will occur in this judicial district, Defendants have caused and will continue to cause injury to Plaintiff in this judicial district, Defendants will be present in and about this judicial district in connection with the claims asserted in this action, and Defendants are or will be subject to the jurisdiction of this Court.

## FACTS COMMON TO ALL COUNTS

11.     Plaintiff Taylor Swift is an internationally-recognized recording and performing musical artist.  In 2008, Swift was the biggest selling artist in the United States, with combined sales of more than four million records, for her two albums "Taylor Swift" and "Fearless."  In April 2009, sales of these albums reached seven million.  Plaintiff's album "Fearless" has topped The Billboard 200 chart in eleven different weeks, and no album has spent more time at "number

3

one" position on the chart since the 1999-2000 ratings. "Fearless" is also the first album by a female artist in country music history to reach the "number one" rating for eight weeks on The Billboard 200 chart. On April 5, 2009, Plaintiff was awarded the "Album of the Year" honors by Academy of Country Music, as a performer and co-producer for "Fearless." Plaintiff was also presented with the Academy's "Crystal Milestone" award for selling more albums than any other artist in 2008 and for the international success of her song "Love Story."

12.     Plaintiff is also one of the most recognizable and popular artists. Since 2008 only, Plaintiff has appeared on the cover of many leading magazine publications, including *Seventeen*, *Us*, *Redbook*, *Women's Health*, *Teen Vogue*, *Cosmo Girl*, *Self*, *Allure*, *Billboard* and *Rolling Stone*. On January 10, 2009, Plaintiff made her first musical guest appearance on the television program *Saturday Night Live*, making her the youngest country singer to appear as a musical guest on the show in its thirty-three-year history; this program achieved the show's highest rating and overall viewer total since the last presidential election, and it outscored all of the program's telecasts of last season. Plaintiff made her primetime television acting debut on March 5, 2009, on the series *CSI: Crime Scene Investigation*, broadcast in the United Stated on CBS; the episode drew an audience of almost twenty-one million viewers.

13.     Earlier this year, Plaintiff announced her first headlining tour, titled "Fearless Tour" ("Fearless Tour"). In 2009, the tour will reach fifty-six cities, in thirty-five states, within the United States, and will extend abroad, to Canada and United Kingdom. During Fearless Tour, Plaintiff will perform at The Sommet Center in Nashville, Tennessee, on September 12, 2009.

14.     Fearless Tour began on April 23, 2009 in Evansville, Indiana, and it has been met with much anticipation and success: the pre-tour performances, throughout the United States and

4

Australia, from March 1, 2009 through March 20, 2009, drew record audiences; tickets for the May 22, 2009 concert at Los Angeles' Staples Center went on sale on February 6, 2009 and sold out in two minutes; tickets for the concert at Madison Square Garden in New York City sold out in one minute.

15.     Fearless Tour is expected to draw an audience of approximately 500,000 people.

16.     In addition to Fearless Tour, Plaintiff will give live performances during 2009 with the musical artists Keith Urban and Kenny Chesney and at fairs and festivals. A complete current schedule of the Plaintiff's performances during 2009 ("Plaintiff's 2009 Tour") is attached to this Complaint as **Exhibit A.**

17.     In conjunction with her live performances to-date during 2009, as well as during her prior tours—as with Tim McGraw and Faith Hill on their "Soul2Soul" 2007 tour and with Rascal Flatts in 2008—merchandise bearing Plaintiff's trademarks and likeness has been made available for purchase to the public, by Plaintiff and her authorized vendors.

18.     Plaintiff has advertised and sold such merchandise since as early as October 2000.

19.     Plaintiff's genuine and authorized merchandise typically prominently displays the trademark TAYLOR SWIFT, in word and/or stylized forms, and/or the trademark FEARLESS ("Plaintiff's Trademarks"), and/or Plaintiff's photograph, image or likeness ("Taylor Swift Merchandise").

20.     Plaintiff has sold and will sell Taylor Swift Merchandise at the concert venues during Plaintiff's 2009 Tour.

21.     Merchandise being offered by Plaintiff to the public during Plaintiff's 2009 Tour includes hooded shirts, posters, pictures, calendars, bags, leather bracelets and handkerchiefs

and, most prominently, tee-shirts. Digital photographs of select examples of Taylor Swift Merchandise are attached to this Complaint as **Exhibit B**.

22.    A variety of merchandise bearing Plaintiff's Trademarks is also available in retail stores nationwide, pursuant to Plaintiff's licensing agreements. Plaintiff carefully limits such agreements only for products of the highest quality and proper subject matter, and maintains complete control over the manner in which Plaintiff's Trademarks are used and Plaintiff's name and likeness are represented.

23.    TAYLOR SWIFT is Plaintiff's personal name, and Plaintiff is also the owner of U.S. Patent and Trademark Office registrations for the mark TAYLOR SWIFT, in connection with: (a) series of musical sound recordings; pre-recorded audio cassettes, compact discs, and DVD's and video tapes featuring performances by an individual; mouse pads; U.S. Reg. No. 3,439,211 (b) clothing, namely, shirts, T-shirts, sweatshirts, jerseys, hats and caps; U.S. Reg. No. 3,439,210; and (c) entertainment services in the nature of the rendition of live musical performances by an individual; U.S. Reg. No. 3,429,635. True and correct copies of the Certificates of these registrations are attached to this Complaint as **Exhibit C**.

24.    Plaintiff first made use of the mark TAYLOR SWIFT on the products and services subject to these registrations in October 2000.

25.    In October 2006, Plaintiff began to use the mark TAYLOR SWIFT in a stylized form, on musical sound recordings, clothing, and entertainment services, and began additional use of the mark TAYLOR SWIFT, on (a) downloadable audio and video recordings featuring musical entertainment, and downloadable musical sound recordings; (b) entertainment services consisting of providing a website featuring pre-recorded musical performances, news, articles, reviews, photographs, and other information and multi-media materials relating to Plaintiff's

6

performing and recording, conducting contests, and providing non-downloadable digital music and fan club services; and (c) on-line retail store services. True and correct copies of materials demonstrating this use are attached to this Complaint as **Exhibit D**.

26.    Subsequently, in February 2007 and June 2007, respectively, Plaintiff began to use the mark TAYLOR SWIFT, in word and in stylized forms, on jewelry in the nature of bracelets and on printed materials and publications, namely, photographs, posters, stickers, songbooks and sheet music. True and correct copies of materials demonstrating this use are attached to this Complaint as **Exhibit E**.

27.    Plaintiff has used the mark FEARLESS on entertainment services in the nature of live musical performances by an individual since February 1, 2009. True and correct copies of materials demonstrating this use are attached to this Complaint as **Exhibit F**.

28.    A summary of the registrations and applications to register the marks TAYLOR SWIFT, in word and in stylized form, and FEARLESS is attached to this Complaint at **Exhibit G**.

29.    Through Plaintiff's continuous and extensive use of the mark TAYLOR SWIFT, this mark has become highly distinctive and famous, identifying Plaintiff to the public as the genuine sources of Plaintiff's goods and services.

30.    These goods—Taylor Swift Merchandise—are of the highest quality and grade, manufactured according to strict quality and aesthetic standards.

31.    Plaintiff's licensees are also required to manufacture Taylor Swift Merchandise consistent with these standards and are required to obtain prior approval of all licensed products.

32.    In addition, certain Taylor Swift merchandise features anti-counterfeiting measures. For example, the decorative design for Taylor Swift tee-shirts includes a number that

7

tracks every single product.  This system allows Plaintiff to identify counterfeit products from authentic Taylor Swift Merchandise.

33.     Plaintiff has undertaken and continues to undertake diligent efforts to prevent, and actively pursue, sale of merchandise marked with imitations or counterfeits of Plaintiff's Trademarks ("Counterfeit Goods").

34.     Counterfeit Goods have appeared on eBay, otherwise over the Internet, and during Plaintiff's past live performances, including during Plaintiff's 2009 Tour, at or near the concert venues.

35.     At Plaintiff's past live concert performances at various concert tour locations throughout the United States and, most recently, Plaintiff's performances during Plaintiff's 2009 Tour, Plaintiff's merchandise enforcement team has encountered numerous individuals selling Counterfeit Goods.

36.     The named Defendants Matthews and Quattlebaum, and the named Defendants Mitchell, Moore, and Tyler are individuals who were encountered by Plaintiff's merchandise enforcement team, and identified through its efforts, as offering and selling Counterfeit Goods at Plaintiff's concerts in Jacksonville, Florida and Biloxi, Mississippi, respectively.

37.     In addition to the named Defendants, there were numerous individuals distributing, selling and offering for sale Counterfeit Goods at these concert venues who refused to furnish identification to Plaintiff's team and otherwise evaded Plaintiff's anti-counterfeiting enforcement efforts.  These individuals and other similarly-situated individuals and entities, whose true names, capacities and addresses are not yet known to Plaintiff, are identified in this Complaint as Various John Does, Various Jane Does and Various XYZ Corporations.

38.     Defendants have and will manufacture, distribute, advertise or sell Counterfeit Goods in connection with Plaintiff's 2009 Tour.

39.     Plaintiff has not authorized any Defendants to manufacture, distribute, advertise or sell any Counterfeit Goods.

40.     Based upon Plaintiff's past experience, the design, materials and quality of most Counterfeit Goods sold by Defendants are of inferior quality, fail to comply with the quality and style standards established by Plaintiff for Taylor Swift Merchandise, and are lower in price than authentic Taylor Swift Merchandise.

41.     Further, Counterfeit Goods are largely uniform from concert to concert and city to city, as many Defendants sell the same Counterfeit Goods in different cities, travelling from one concert venue to the next.   During Plaintiff's past live performances, Plaintiff's merchandise enforcement team has often observed the same people selling Counterfeit Goods at different concert locations.

42.     Counterfeit Goods are of the same general nature and type as genuine and authorized Taylor Swift Merchandise, and Defendants' use of Plaintiff's Trademarks is likely to cause confusion, to cause mistake and to deceive consumers into believing that Counterfeit Goods are associated with, or sponsored or endorsed by, Plaintiff, and that they are purchasing genuine or authorized Taylor Swift Merchandise.

43.     In addition, Counterfeit Goods often include or feature Plaintiff's image, photographs or likeness.

44.     Digital photographs of select examples of Counterfeit Goods that have been recovered during Plaintiff's 2009 Tour, to-date, are attached to this Complaint as **Exhibit H**.

45.     Plaintiff believes and avers that Defendants do and will continue to manufacture, distribute, advertise and sell Counterfeit Goods in connection with Plaintiff's 2009 Tour, throughout the United States.

46.     In addition to causing Plaintiff irrecoverable and innumerable lost sales, Defendants' actions will irreparably injure Plaintiff's reputation for high-quality products and services, and will cause dilution of the TAYLOR SWIFT trademark by blurring and by tarnishment.

47.     Based upon past experience of Plaintiff's merchandise enforcement team, law enforcement officers at concert venues are primarily dedicated to on-site safety and security, typically do not have priority or time to deal with Counterfeit Goods, and do not extend much cooperation to Plaintiff for her enforcement efforts, citing lack of a federal injunction and seizure order.

48.     When Counterfeiters are approached by Plaintiff's merchandise enforcement team or when they notice Plaintiff's team, they either quickly hide or discard Counterfeit Goods and walk or run away, or ignore requests for identification and to abandon the concert premises and turn over Counterfeit Goods to Plaintiff, and continue to sell Counterfeit Goods at the next concert venue.

49.     Counterfeiters may also become violent as a result of the anti-counterfeiting enforcement efforts without the proper support from the law enforcement officers. As a result of such efforts at the Plaintiff's recent concert in Jacksonville, Florida, where Counterfeit Goods were being sold within six feet outside of the front door to the venue, Plaintiff's Merchandise Manager was personally assaulted and two Counterfeiters were arrested. Such violence is

particularly troublesome because of the young average age of the audience attending Plaintiff's concerts.

50.     Plaintiff has learned that there are many more sellers of Counterfeit Goods at the concert locations than Plaintiff can address absent an order of injunction authorizing the law enforcement officers to seize and impound Counterfeit Goods, and an order authorizing seizure of Counterfeit Goods, because in the absence of such an order, Defendants will not voluntarily turn over Counterfeit Goods and will not cease the distribution and sale of Counterfeit Goods. Further, because Defendants will not identify themselves, Defendants will be able to avoid responding to an ordinary civil lawsuit and, in this way, will be essentially immune from an injunction and monetary liability.

51.     For these reasons, the only effective means of protecting Plaintiff's Trademarks from counterfeiting by Defendants during Plaintiff's 2009 Tour is by authority to seize Counterfeit Goods, through the *ex parte* seizure process.

52.     Without the aid of a federal court order authorizing seizure of Counterfeit Goods at and near Plaintiff's 2009 Tour concert locations, Plaintiff will lose innumerable and irrecoverable sums in merchandise sales and will suffer incalculable, irreparable damage to her reputation and goodwill, in addition to the harm such counterfeiting will cause to the consuming public by deceiving the public into believing that Counterfeit Goods are the legitimate, high-quality Taylor Swift Merchandise; Plaintiff will be unable to combat the network of individuals distributing and selling Counterfeit Goods in connection with Plaintiff's 2009 Tour, and will be unable to protect her rights and the rights of the consuming public against the distribution and sale of Counterfeit Goods at Plaintiff's 2009 Tour concerts.

53.     Upon information and belief, Defendants have and will continue to engage in manufacture, distribution, marketing and sale of Counterfeit Goods, in this State and elsewhere in interstate commerce, and will continue these activities during Plaintiff's 2009 Tour.

## COUNT I
### INFRINGEMENT OF REGISTERED TRADEMARK
### (15 U.S.C. § 1114(1))

54.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

55.     Defendants' use of copies or simulations of the mark TAYLOR SWIFT, or any confusingly-similar marks, words and designs, on Counterfeit Goods constitutes infringement of Plaintiff's registered trademark, in violation of 15 U.S.C. § 1114(1).

56.     On information and belief, Defendants' conduct has been or will be malicious, fraudulent, deliberate, willful, intentional and in disregard of Plaintiff's rights.

57.     Defendants' conduct will injure Plaintiff and, unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable harm and monetary damage.

58.     Plaintiff is entitled to an injunction enjoining Defendants from any further use in commerce of the mark TAYLOR SWIFT, to an award of all Defendants' profits, damages sustained by Plaintiff, the costs of this action, Plaintiff's reasonable attorney's fees, and three times Plaintiff's actual damages, and to an order for destruction of Counterfeit Goods, pursuant to 15 U.S.C. §§ 1116(a), 1117(a) and 1118.

## COUNT II
### INFRINGEMENT OF UNREGISTERED TRADEMARK
### (15 U.S.C. § 1125(a))

59.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

60.     Defendants' use of copies or simulations of Plaintiff's Trademarks, or any confusingly-similar marks, words and designs, on Counterfeit Goods constitutes infringement of Plaintiff's unregistered trademarks in violation of 15 U.S.C. § 1125(a).

61.     On information and belief, Defendants' conduct has been or will be malicious, fraudulent, deliberate, willful, intentional and in disregard of Plaintiff's rights.

62.     Defendants' conduct will injure Plaintiff and, unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable harm and monetary damage.

63.     Plaintiff is entitled to an injunction enjoining Defendants from any further use in commerce of Plaintiff's Trademarks, to an award of all Defendants' profits, damages sustained by Plaintiff, the costs of this action, Plaintiff's reasonable attorney's fees, and three times Plaintiff's actual damages, and to an order for destruction of Counterfeit Goods, pursuant to 15 U.S.C. §§ 1116(a), 1117(a) and 1118.

## COUNT III
## FEDERAL TRADEMARK DILUTION
### (15 U.S.C. § 1125(c))

64.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

65.     Defendants' use of copies or simulations of the mark TAYLOR SWIFT, or any confusingly-similar marks, words and designs, on Counterfeit Goods constitutes dilution by blurring that impairs the distinctiveness of this mark and dilution by tarnishment, and harms the reputation of this mark, in violation of 15 U.S.C. § 1125(c).

66.     On information and belief, Defendants' conduct has been or will be malicious, fraudulent, deliberate, willful, intentional and in disregard of Plaintiff's rights.

13

67.    Defendants' conduct will injure Plaintiff and, unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable harm and monetary damage.

68.    Plaintiff is entitled to an injunction enjoining Defendants from any further acts of dilution of the mark TAYLOR SWIFT, to an award of all Defendants' profits, damages sustained by Plaintiff, the costs of this action, Plaintiff's reasonable attorney's fees, and three times Plaintiff's actual damages, and to an order for destruction of Counterfeit Goods, pursuant to 15 U.S.C. §§ 1116(a), 1117(a), 1118 and 1125(c)(1).

## COUNT IV
### USE OF COUNTERFEIT MARK
### (15 U.S.C. § 1116(d))

69.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

70.    Defendants' Counterfeit Goods constitutes goods bearing counterfeit marks.

71.    Defendants have intentionally sold, offered for sale or distributed these goods, in violation of The Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d), and, unless restrained and enjoined, will continue to traffic in Counterfeit Goods, all to Plaintiff's irreparable harm and monetary damage.

72.    On information and belief, Defendants' conduct has been or will be malicious, fraudulent, deliberate, willful, intentional and in disregard of Plaintiff's rights.

73.    Plaintiff is entitled to an injunction enjoining Defendants from any further use in commerce of Plaintiff's Trademarks, and to an award of all profits of Defendants, damages sustained by Plaintiff, treble damages or, in the alternative, statutory damages, the costs of this action, and Plaintiff's reasonable attorney's fees, an order providing for the seizure of

14

Counterfeit Goods and counterfeit marks involved in violation of Plaintiff's rights, and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation, and an order for destruction of Counterfeit Goods, pursuant to 15 U.S.C. §§ 1116(a) and (d), 1117(b)-(c) and 1118.

**COUNT V**

**COMMON LAW UNFAIR COMPETITION**

74.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

75.     Defendants have prominently used Plaintiff's Trademarks in connection with their unlawful efforts to sell competing products as legitimate goods of Plaintiff. Defendants' use of Plaintiff's Trademarks for competing goods is likely to confuse the public as to the origin, source, sponsorship or quality of goods offered for sale by Defendants and is likely to mislead persons to believe that Defendants' businesses and goods have been sponsored, approved or licensed by Plaintiff or are in some way affiliated or connected with Plaintiff.

76.     Defendants' use of Plaintiff's Trademarks is with full knowledge of the substantial reputation and goodwill associated with Plaintiff and Plaintiff's Trademarks, and with full knowledge that Defendants have no rights to such marks. By appropriating the goodwill of Plaintiff's widely known and respected trademarks, Defendants have unjustly enriched themselves and damaged Plaintiff.

77.     On information and belief, Defendants' conduct has been or will be malicious, fraudulent, deliberate, willful, intentional and in disregard of Plaintiff's rights.

78.     Defendants' conduct will injure Plaintiff and, unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable harm and monetary damage.

15

79.     Plaintiff is entitled to an injunction enjoining Defendants from any further acts of Defendants' use of Plaintiff's Trademarks, to an award of all Defendants' profits, damages sustained by Plaintiff, the costs of this action, and Plaintiff's reasonable attorney's fees.

**COUNT VI**

**VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT**
**(TENN. CODE ANN. § 47-18-101 *ET SEQ.*)**

80.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

81.     Defendants' actions and omissions referenced above constitute violations of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*, including, without limitation, Tenn. Code Ann. §§ 47-18-104(a), (b)(1), (2), (3), (5), (6), (7), (9), (22) and (27).

82.     Plaintiff has been damaged by Defendants' violations of the Tennessee Consumer Protection Act.

83.     On information and belief, Defendants' use or employment of unfair or deceptive acts or practices was a willful or knowing violation of the Tennessee Consumer Protection Act, entitling Plaintiff to an award of three times the actual damages sustained by Plaintiff and such other relief as the Court considers necessary and proper, pursuant to Tenn. Code Ann. § 47-18-109(a)(3).

84.     Defendants' violations of the Tennessee Consumer Protection Act entitle Plaintiff to an award of her reasonable attorney's fees and costs, pursuant to Tenn. Code Ann. § 47-18-109(e)(1).

## COUNT VII
### VIOLATION OF TENNESSEE PERSONAL RIGHTS PROTECTION ACT OF 1984
### (TENN. CODE ANN. § 47-25-1101 *ET SEQ.*)

85.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

86.    Defendants have knowingly used and infringed upon the use of Plaintiff's name, photograph and likeness, as items of commerce for purposes of advertising products, merchandise, and goods, without Plaintiff's prior consent.

87.    Defendants' actions and omissions constitute violations of the Tennessee Personal Rights Protection Act of 1984, Tenn. Code Ann. § 47-25-1101 *et seq.*, including, without limitation, Tenn. Code Ann. § 47-18-1105.

88.    Plaintiff has been damaged by Defendants' violations of the Tennessee Personal Rights Protection Act.

89.    Plaintiff is entitled to an injunction preventing and restraining Defendants' unauthorized use of Plaintiff's name, photograph or likeness, to an order impounding all materials or any part thereof made or used in violation of Plaintiff's rights, and enjoining the use of all plates, molds, matrices or other articles by means of which such materials may be reproduced, and to an order of the destruction or other reasonable disposition of all such materials.

90.    On information and belief, Defendants' use of Plaintiff's name, photograph or likeness was a willful or knowing violation of the Tennessee Personal Rights Protection Act, entitling Plaintiff to an award of her actual damages and any profits attributable to Defendants' infringement on her personal rights, together with all other remedies afforded by the Act and,

pursuant to Tenn. Code Ann. § 47-25-1106(a), in addition to any other damages awarded by this Court.

**JURY DEMAND**

91.     Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

THE ABOVE PREMISES CONSIDERED, Plaintiff respectfully prays that the Court:

1.     Award Plaintiff a judgment against Defendants for compensatory damages;

2.     Award Plaintiff a judgment against Defendants for punitive damages;

3.     Award Plaintiff a judgment against Defendants for three times of the actual damages sustained by Plaintiff, under the Lanham Act, 15 U.S.C. § 1117(a), and the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109(a)(3);

4.     Award Plaintiff a judgment against Defendants for treble damages or, in the alternative, statutory damages, under the Lanham Act, 15 U.S.C. § 1117(b)-(c);

5.     Issue a temporary restraining order, and preliminary and permanent injunctions, prohibiting Defendants, their agents, servants, employees, officers, attorneys, successors and assigns and all persons acting on their behalf from: (a) any further use of Plaintiff's Trademarks and any photograph, image or likeness of Plaintiff; (b) manufacturing, distributing, marketing or selling any Counterfeit Goods, or any other merchandise or products bearing without authorization Plaintiff's Trademarks or any confusingly-similar marks, words, names or designs, or any photograph, image or likeness of Plaintiff; and (c) representing that any Counterfeit Goods are sponsored, endorsed or authorized by Plaintiff, all within a ten-mile vicinity of all concert venues at which Plaintiff will be performing during Plaintiff's 2009 Tour;

18

6.      Order that all Counterfeit Goods, or any other merchandise or products bearing without authorization Plaintiff's Trademarks or any confusingly-similar marks, words, names or designs, or any photograph, image or likeness of Plaintiff, found in the possession, custody or control of Defendants within a ten-mile vicinity of all concert venues at which Plaintiff will be performing during Plaintiff's 2009 Tour, during and within twenty-four hours of the performance, be seized until a hearing can be held before this Court to determine the disposition of any goods so seized;

7.      Order that any and all means of making Counterfeit Goods and any and all records documenting the manufacture, sale, or receipt of things involved in the sale, offering for sale, or distribution of Counterfeit Goods, be seized until a hearing can be held before this Court to determine the disposition of any goods so seized;

8.      Order that (a) all Counterfeit Goods, or any other merchandise or products bearing without authorization Plaintiff's Trademarks or any confusingly-similar marks, words, names or designs, or any photograph, image or likeness of Plaintiff, and all plates, molds, matrices, and other means or articles of making or reproducing the same, found in the possession, custody, or control of Defendants, and (b) any goods seized pursuant to this Court's order, be delivered up to Plaintiff, or Plaintiff's attorneys, pending the outcome of this action;

9.      Order that all goods seized pursuant to this Court's orders be destroyed;

10.     Award Plaintiff her attorneys' fees, costs and expenses under the Lanham Act, 15 U.S.C. § 1117(a), and the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109(e)(1);

11.     Award Plaintiff prejudgment interest; and

12.     Award Plaintiff such other and further general, injunctive and equitable relief as may be appropriate under the circumstances.

Respectfully submitted,

*Natalya L. Rose*

W. Michael Milom (No. 002803)
David S. Crow (No. 020699)
Natalya L. Rose (No. 021701)
MILOM JOYCE HORSNELL CROW PLC
3310 West End Avenue, Suite 610
Nashville, Tennessee 37203
Telephone: (615) 255-6161
Facsimile: (615) 254-4490
mmilom@mjhc-law.com
dcrow@mjhc-law.com
nrose@mjhc-law.com

*Attorneys for Plaintiff*
*Taylor Swift*

## **VERIFICATION**

I am Taylor Swift.  The allegations in the foregoing Complaint that relate or refer to Taylor Swift are true to my own knowledge, and as to those allegations that relate or refer to Defendants' activities and that are alleged upon information and belief, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on May _15_, 2009.

TAYLOR SWIFT

21