# EXHIBIT M

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## IN NASHVILLE

| | |
|---|---|
| TAS RIGHTS MANAGEMENT, LLC,<br><br>      Plaintiff<br>v.<br><br>VARIOUS JOHN DOES,<br>VARIOUS JANE DOES, and<br>VARIOUS XYZ CORPORATIONS,<br><br>      Defendants | Civil Action No. _____<br><br><br>**FILED UNDER SEAL** |

## VERIFIED COMPLAINT

The plaintiff, TAS Rights Management, LLC, files this Verified Complaint against the defendants, Various John Does, Various Jane Does and Various XYZ Corporations (collectively, "Defendants"), for [1] trademark infringement and trademark dilution, in violation of the Trademark (Lanham) Act, 15 U.S.C. § 1051 *et seq.*, [2] use of counterfeit marks, in violation of the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d), [3] common law unfair competition, violation of Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*, and [4] violation of the Tennessee Personal Rights Protection Act of 1984, Tenn. Code Ann. § 47-25-1101 *et seq.*, and for its cause of action states as follows:

1

## PARTIES

1.      The plaintiff, TAS Rights Management, LLC ("Plaintiff") is a limited liability company organized and existing pursuant to the laws of the State of Tennessee, with its principal place of business in Nashville, Tennessee.

2.      Upon information and belief, the defendants, Various John Does, Various Jane Does and Various XYZ Corporations, who are identified by fictitious names because their true names, capacities and addresses are not yet known to Plaintiff, are individuals and entities who are in some manner responsible or legally liable for the events or omissions giving rise to the Plaintiff's claims.    Plaintiff will seek leave of Court to amend this Complaint to assert Defendants' true names, capacities and addresses when the same have been ascertained.

## JURISDICTION

3.      This Court has subject matter jurisdiction over this action pursuant to: 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121(a), as a civil action arising under the trademark laws of the United States; pursuant to 28 U.S.C. § 1338(b), as a civil action asserting a claim of unfair competition joined with a substantial and related claim under the trademark laws of the United States; and under 28 U.S.C. § 1367(a) and the doctrine of supplemental jurisdiction.

4.      Upon information and belief, Defendants are or will be subject to personal jurisdiction in the State of Tennessee, as Defendants have engaged or will engage in acts or omissions outside of Tennessee causing injury within Tennessee, and Defendants are or will be present in and about this judicial district in connection with the claims asserted in this action. Upon information and belief, Defendants have and will continue to engage in manufacture, distribution, marketing and sale of counterfeit goods, in this State and elsewhere in interstate commerce, and will continue these activities during all times relevant to this action.

2

## VENUE

5.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims have occurred and will occur in this judicial district, Defendants have caused and will continue to cause injury to Plaintiff in this judicial district, Defendants will be present in and about this judicial district in connection with the claims asserted in this action, and Defendants are or will be subject to the jurisdiction of this Court.

## FACTS COMMON TO ALL COUNTS

6.      Plaintiff is the exclusive licensee and administrator of the trademark, name and likeness rights of Ms. Taylor Swift ("Ms. Swift"), in the United States and throughout the world.

### A.  Taylor Swift Trademarks

7.      Ms. Swift is an internationally recognized singer-songwriter, musician and actress.

8.      Ms. Swift provides and promotes products and services to the public in association with her name, Taylor Swift, which also functions as a trademark, used in an unstylized, literal form—"Taylor Swift," and in the stylized, "logo" form— *Taylor Swift* .

9.      The name and trademark "Taylor Swift" was first used exclusively by Ms. Swift and her licensees, in an unstylized, literal form, in October 2000 in connection with:

   a). Series of musical sound recordings, pre-recorded audio cassettes, compact discs, and DVDs and video tapes featuring performances by an individual, and mouse pads;
   b). Clothing, namely, shirts, T-shirts, sweatshirts, jerseys, hats and caps; and
   c). Entertainment services in the nature of the rendition of live musical performances by an individual.

10.     The U.S. Patent and Trademark Office ("USPTO") has registered the trademark "Taylor Swift" for the above products and services, under Registration Numbers 3439211,

3

3439210 and 3429635, respectively.   True and correct copies of the Certificates of these registrations are attached to this Complaint as **Exhibit A**.

11.     Beginning in October 2006, the trademarks "Taylor Swift" and *Taylor Swift* (collectively, "Taylor Swift Trademarks") have been used exclusively by Ms. Swift and her licensees, for a wide variety of products and services.

12.     The Taylor Swift Trademarks have been registered with the USPTO in connection with many of these products and services.  True and correct copies of the Certificates of these registrations are attached to this Complaint as **Exhibit B**.

13.     Use of the Taylor Swift Trademarks has most recently expanded to include such products as greeting cards and protective "skins" for portable telephones and electronic devices. Photographs of a representative sample of such products are attached to this Complaint as **Exhibit C**.

14.     Further, the Taylor Swift Trademarks are expected to be used in the near future on additional products, including cosmetics, fragrances and household furnishings.  A summary of all Taylor Swift Trademarks, identifying their USPTO registration status, dates of registration, and respective products and services, is attached to this Complaint as **Exhibit D**.

15.     The Taylor Swift Trademarks have become well recognized by the general consuming public of the United States, as demonstrated below.

16.     At all times relevant hereto, Ms. Swift and/or her licensees maintained exclusive rights in and control of Taylor Swift Trademarks, which have and continue to be used extensively in the United States and throughout the world.

4

## B.  Distinctiveness and Recognition of Taylor Swift Trademarks

i)        Amount and Volume of Sales of Goods and Services Offered under the
          Taylor Swift Trademarks

17.     In "The Nielsen Company & Billboard's 2010 Music Industry Report" ("Nielsen & Billboard Report"), Ms. Swift was named the top-selling artist for the 2010 Calendar Year—for the second time since 2008: she was named the top-selling artist in 2008 and the second-best-selling artist in 2009.  A true and correct copy of the Nielsen & Billboard 2010 Report is attached to this Complaint as **Exhibit E**.

18.     The Nielsen & Billboard Report also recognized Ms. Swift as the top-selling digital artist of the Nielsen SoundScan Era, in the top ten of digital artists in 2010, as the top "Airplay" artist for 2010—with more than 1.1 million spins (plays) and as the artist with the second-highest number of the Internet streams in 2010—77,000,000.

19.     According to the Nielsen & Billboard Report, Ms. Swift's most recent studio album, *Speak Now*, was the top Internet album in 2010, the third-best-selling physical album and the second-best-selling digital album in 2010, and both *Speak Now* and the album released by Ms. Swift in 2008, *Fearless*, ranked in the top ten of the best-selling digital albums of the Nielsen SoundScan Era.  Further, Ms. Swift's song "Love Story" ranked in the top ten of the best-selling digital songs of the Nielsen SoundScan Era, and Ms. Swift's album *The Holiday Collection* was in the top ten of the best-selling seasonal albums in 2010.

20.     In the *Billboard* "Best of 2008" (year-end) charts, Ms. Swift was ranked No. 4 in the chart tracking top-selling albums across all genres, *Top Billboard 200 Artists*, and No. 5 in the chart tracking the overall popularity of an artist, *Top Artists*.  True and correct copies of these Billboard charts are attached to this Complaint as **Exhibit F**.

5

21.     In the *Billboard* "Best of 2009" charts, Ms. Swift was ranked No. 1 in *Top Billboard 200 Artists* and No. 1 in *Top Artists*.  True and correct copies of these *Billboard* charts are attached to this Complaint as **Exhibit G**.

22.     In the Billboard "Best of 2010" charts, Ms. Swift was ranked No. 1 in *Top Billboard 200* Artists and No. 2 in Top Artists.  True and correct copies of these *Billboard* charts are attached to this Complaint as **Exhibit H**.

23.     In total, over 20 million albums, over 34 million digital downloads, and over 22.5 million certified digital singles, have been sold to-date, world-wide, under the Taylor Swift Trademarks.

24.     From 2006 to the present, Ms. Swift has given 382 concerts world-wide, in association with the Taylor Swift Trademarks.  An estimated 3,858,719 people attended these concerts.  The following table shows the estimated attendance and revenues from "Taylor Swift" concerts since 2006:

| Year | Number of Concerts | Estimated Attendance | Estimated Revenue from Ticket Sales |
|------|--------------------|--------------------|-----------------------------------|
| 2006 | 11 | 37,000 | $31,500 |
| 2007 | 152 | 588,000 | $1,213,970 |
| 2008 | 86 | 1,153,786 | $4,625,718 |
| 2009 | 79 | 1,229,933 | $19,541,500 |
| 2010 | 54 | 850,000 | $23,168,637 |
| **Total** | **382** | **3,858,719** | **$48,581,325** |

6

25.     Merchandise branded with the Taylor Swift Trademarks is sold world-wide, in very close affiliation with Ms. Swift's name and image, as, for example, at Ms. Swift's concerts and on-line at the official global website, which is accessible at the URL http://www.TaylorSwift.com.   This merchandise includes products described in the trademark registrations attached as **Exhibits A and B**.  The following table shows the estimated sales from such merchandise:

| Year | Estimated Revenue from Merchandise Sales |
|------|------------------------------------------|
| 2006 | $9,591 |
| 2007 | $1,685,596 |
| 2008 | $2,798,613 |
| 2009 | $10,696,399 |
| 2010 | $11,553,064 |
| **Total** | **$26,743,263** |

26.     In addition to the merchandise bearing the Taylor Swift Trademarks, these marks have been featured in prominent product endorsements and co-branding ventures, in the U.S. and other countries throughout the world, since 2008, including affiliation with:

a).     Elizabeth Arden, Inc., for fragrances and body-care products: 2010-present;

b).     American Greetings & Papyrus, for greeting cards, gift packaging, party goods, stationery and related social expression products: 2009-present;

c).     AT&T, for services endorsement and advertising: 2008;

d).     Circuit City Stores, Inc., for holiday promotions: 2008-2009;

7

  e).  Comcast Corporation, for "Taylor Swift" dedicated video-on-demand collection: 2009-present;

  f).  CoverGirl, for cosmetic products: 2010-present;

  g).  Hot Picks USA/Big Idea Guys, Incorporated, for guitar picks and guitar pick jewelry: 2008-2011;

  h).  JAKKS Pacific, Inc., for fashion dolls and accessories: 2008-2010;

  i).  L.e.i./Jones Apparel, Inc., for jeans, tops and dresses: 2008-2009;

  j).  National Milk Processor Board, for "got milk?" Campaign: 2008-2009;

  k).  Procter & Gamble Co., for "Gillette" brand hair removal or shaving products: 2008;

  l).  Sanford L.P., A Newell Rubbermaid Company, for "Sharpie" brand pens: 2008; and

  m).  Sony Electronics, for consumer electronics and gaming products: 2010-present.

27.  Further, Ms. Swift has appeared in roles on television, in the television series *CSI: Crime Scene Investigation*, and in motion pictures, in the internationally distributed film titled *Valentine's Day*. Ms. Swift is also a member of the cast and the voice of the character "Audrey" in the animated film *The Lorax*, a production of Universal Studios, Imagine Entertainment and Illumination Entertainment that is scheduled for release in March 2012.

28.  The trademark "Taylor Swift" appeared in the credits and on advertising for these television and motion pictures performances, and also in connection with the awards and awards nominations for Ms. Swift's performance in *Valentine's Day*.

29.  According to Box Office Mojo / BoxOfficeMojo.com ("Box Office Mojo"), which tracks performance of motion picture films at the box office, *Valentine's Day* has gross revenue of approximately $110 million for the "domestic" screenings (U.S. and Canada). Additionally, this film has gross revenue of $106 million from screenings in a long list of other

countries.  The film was shown on 5,100 screens in 3,665 theatres across the United States and Canada, and ranked at No. 1 at the box office in its opening weekend; it was the second largest weekend opening for a romantic comedy on the records.  True and correct copies of the supporting materials from Box Office Mojo are attached to this Complaint as **Exhibit I**.

30.    Further according to Box Office Mojo, the total number of tickets sold can be estimated by dividing the total gross revenue by the average ticket price ($7.95 U.S. in the United States and Canada).  Therefore, as shown below, an estimated 13 million people in the United States and Canada would have seen Ms. Swift's performance in *Valentine's Day* and the trademark "Taylor Swift" appearing in the credits for this film:

| Total Gross (Canada & U.S.) | $110,485,654 |
| Average Ticket Price | $7.95 |
| Estimated Number of Tickets Sold | **13,897,566** |

True and correct copies of the supporting materials from Box Office Mojo and Reuters are attached to this Complaint as **Exhibit J**.

ii)    <u>Duration, Extent and Geographic Reach of Advertising and Publicity of Taylor Swift Trademarks</u>

31.    Products and services branded with the Taylor Swift Trademarks have been extensively advertised and promoted throughout the world.

32.    Ms. Swift's likeness and the Taylor Swift Trademarks have appeared on the cover of many leading magazine publications, including *Seventeen*, *Us*, *Redbook*, *Women's Health*, *Teen Vogue*, *Cosmo Girl*, *Self*, *Allure*, *The New York Times Style Magazine*, *Billboard*, *Rolling Stone* and *Entertainment Weekly*, in the United States, and, internationally, *Capricho* (Brazil),

9

*Femina* (China), *(Revista) Seventeen* (Colombia), *Hitkrant* (Holland), *Meiden* (Holland), *CosmoGirl* (Holland), *Glamour* (Italy), *D-You* (Italy), *Bounce* (Japan), *Elle Girl Touch* (Japan), *Girl'sCeleb* (Japan), *Gisele* (Japan), *Glitter* (Japan), *InRock* (Japan), *Seventeen* (Mexico), *Creme* (New Zealand), *Bliss* (UK) and *Independent on Sunday* (UK).

33.    A photograph of Ms. Swift and the trademark "Taylor Swift" first appeared on the cover of *Billboard* magazine, the premier trade publication in the music industry, on March 22, 2008.   This cover was captioned "Nashville 2.0 Is Taylor Swift The Face of A Country Revolution?".  A true and correct copy of this *Billboard* cover is attached to this Complaint as **Exhibit K**.

34.    A photograph of Ms. Swift and the trademark "Taylor Swift" appeared again on the cover of *Billboard* for the October 25, 2008 edition—with the caption of "TAYLOR SWIFT Country's Teen Queen Takes Her Music Global," and also for the October 23, 2010 edition. True and correct copies of these *Billboard* covers are attached to this Complaint as **Exhibit L**.

35.    More recently, on November 14, 2010, the cover of *Billboard* featured a top banner "TAYLOR'S MILLION-SELLING WEEK: A TEACHABLE MOMENT?"—displaying an image of the album *Speak Now*, with a photograph of Ms. Swift and the Taylor Swift Trademarks.  A true and correct copy of this *Billboard* cover is attached to this Complaint as **Exhibit M**.

36.    In 2009, *Billboard* magazine named Ms. Swift "The Artist of The Year".  A true and correct copy of the article and of the excerpt from the chart published by *Billboard* is attached to this Complaint as **Exhibit N**.

37.    Ms. Swift first appeared on the cover of *Rolling Stone* magazine, one of the most popular and respected publications devoted to music and pop culture, on May 1, 2008, as one of

10

the artists named in "The Best of Rock 2008". A true and correct copy of this *Rolling Stone* cover is attached to this Complaint as **Exhibit O**.

38.     Ms. Swift was also the artist featured on the cover of the March 5, 2009 edition of *Rolling Stone*, which also includes a prominent display of the trademark "Taylor Swift." A true and correct copy of this *Rolling Stone* cover is attached to this Complaint as **Exhibit P**.

39.     Ms. Swift was named the "Entertainer of the Year" in the 2010 End-of-the-Year issue of *Entertainment Weekly*, a magazine that features reports and critical reviews on a wide variety of entertainment, including music. A true and correct copy of this *Entertainment Weekly* cover is attached to this Complaint as **Exhibit Q**.

40.     Further, Ms. Swift has extensively appeared on television, in the United States and internationally. In connection with these appearances, Ms. Swift has publicized the products and services bearing the Taylor Swift Trademarks, and engaged in live musical performances. A true and correct select list of such appearances is attached to this Complaint as **Exhibit R**.

iii)     Extent of Actual Recognition of Taylor Swift Trademarks

41.     To date, three full studio albums have been released under the Taylor Swift Trademarks: *Taylor Swift*, *Fearless*, and *Speak Now*. The albums *Fearless* and *Speak Now* were also released in "Platinum" and "Karaoke" editions. Each album has been received well, as demonstrated by the following facts about each album:

a)   *Taylor Swift*

- Released on October 24, 2006
- Certified "5x Platinum" in the U.S.
- The longest-charting album in *Billboard Top 200 Albums* (best-selling albums across all genres), appearing on the top-selling albums list for over 230 weeks

11

b) *Fearless*

- Released on November 11, 2008
- Charted at No. 1 in *Billboard Top 200 Albums*
- Topped *Billboard 200* for 11 non-consecutive weeks
- Top-selling album in 2009
- Has received the most awards ever in country music history
- Certified "6x Platinum" in the U.S., and "Gold" and "Platinum" in other countries

c) *Speak Now*

- Released on October 25, 2010
- Sold 1,047,000 copies in the first week of release
- Charted at No. 1 in *Billboard Top 200* and *Billboard Country Albums*
- Remained at No. 1 for six weeks in *Billboard Top 200* and for 13 weeks in *Billboard Country Albums*
- Certified "3x Platinum" in the U.S, and "Gold" and "Platinum" in other countries

42.    Ms. Swift has been nominated for professional awards and recognitions, world-wide, 139 times and has won 78 awards, including:

a) *Grammy Awards (2010)*
- Album of the Year: Fearless
- Best Country Album: Fearless
- Best Female Country Vocal Performance: "White Horse"
- Best Country Song: "White Horse"

b) *American Music Awards*
- Favorite Country Female Artist (2008)
- Artist of the Year (2009)
- Favorite Pop/Rock Female Artist (2009)
- Favorite Country Female Artist (2009)
- Favorite Adult Contemporary Artist (2009)
- Favorite Country Album: Fearless (2009)
- Favorite Country Female Artist (2010)

c) *Academy of Country Music Awards*
- Top Female Vocalist Artist (2008)
- Album of the Year: Fearless (2009)
- Crystal Milestone Award (2010)
- Jim Reeves International Award (2011)
- Entertainer of the Year (2011)

12

d) *Country Music Association Awards*
- Horizon Award (2007)
- Entertainer of the Year (2009)
- Female Vocalist of the Year (2009)
- International Artist Achievement Award (2009)
- Album of the Year: Fearless (2009)
- Music Video of the Year: "Love Story" (2009)

e) *People's Choice Awards*
- Favorite Female Artist (2010)
- Favorite Country Artist (2011)

f) *Teen Choice Awards*
- Choice Movie/Breakout Female: *Valentine's Day* (2010)

g) *Canadian Country Music Association Awards*
- Top Selling Album: Fearless (2009)
- Top Selling Album: Fearless (2010)

h) *MTV Video Music Awards*
- Best Female Video: "You Belong With Me" (2009)

i) *World Music Awards*
- World's Best Album: Fearless (Nominated, 2010)
- World's Best Pop/Rock Artist (Nominated, 2010)

j) *BRIT Awards*
- International Breakthrough Artist (Nominated, 2010)

## C. Counterfeits of Taylor Swift Trademarks

i) <u>Fearless Tour (2009-2010)</u>

43.     On April 23, 2009, Ms. Swift launched her first headlining tour, titled "Fearless Tour" ("Fearless Tour").  The Fearless Tour was originally scheduled to reach 56 cities, in 35 states, within the United States, and to include shows abroad, in Canada, Australia and United Kingdom.  As a result of the overwhelming response to Fearless Tour, it was subsequently extended and concluded after 105 shows and an attendance of over 2,000,000 people.

13

44.     Unfortunately, the Fearless Tour was popular not only with Ms. Swift's fans, but also with parties involved in counterfeiting of Taylor Swift Trademarks.  As a result, Ms. Swift filed a Complaint in this Court on May 18, 2009, against five named and additional unnamed defendants, with respect to such defendants' manufacturing, offering for sale and sale of products bearing counterfeits of the Taylor Swift Trademarks at or near venues on the Fearless Tour, and for related causes of action (Case No. 3:09-CV-00442).

45.     Ms. Swift also filed a Motion for Temporary Restraining Order and Preliminary Injunction, and an Application for Order of Seizure of Counterfeit Goods; the Court granted Ms. Swift's Motion and issued a Temporary Restraining Order and Order of Seizure of Counterfeit Goods (Case No. 3:09-CV-00442, Document 12, Signed by Chief Judge Todd J. Campbell) and, subsequently, an Order to Extend these Orders (Case No. 3:09-CV-00442, Document 17, Signed by Senior Judge Thomas Wiseman) and an Order of Preliminary Injunction and Order of Seizure of Counterfeit Goods (Case No. 3:09-CV-00442, Document 33, Signed by Senior Judge Thomas Wiseman).  Further, following the extension of the Fearless Tour, Ms. Swift applied to this Court to Extend Time Period and Supplement Locations Identified in Preliminary Injunction and Order of Seizure of Counterfeit Goods (Case No. 3:09-CV-00442, Document 66, Signed by Senior Judge Thomas Wiseman) and the Court granted such relief (Case No. 3:09-CV-00442, Document 78, Signed by Senior Judge Thomas Wiseman).

46.     As a result, over 1,500 t-shirts bearing counterfeits of the Taylor Swift Trademarks were seized during the Fearless Tour and subsequently destroyed (Order of Destruction of Counterfeit Goods signed by Senior Judge Thomas Wiseman; Case No. 3:09-CV-00442, Document 134).

14

47.    However, some of the merchandise bearing counterfeits of Taylor Swift Trademarks could not be seized and destroyed pursuant to this Court's Orders because it was located outside of the five-mile radius specified in the Order of Seizure of Counterfeit Goods. Local law enforcement officials and Ms. Swift's merchandise enforcement team have found and identified such merchandise located as far away as nearly 20 miles from the concert venue, where it was held for subsequent delivery to and distribution at the venue. Such merchandise has also been found being sold at Interstate exit ramps leading to the concert venues.

ii)    Speak Now World Tour (2011)

48.    On February 9, 2011, Ms. Swift launched her new tour, "Speak Now World Tour."

49.    The Speak Now World Tour began in Singapore and is presently scheduled to include 106 concerts, in 19 countries—across Asia, Europe, North America and Australia—and to conclude on November 22, in New York, New York. The U.S. portion of the Speak Now Tour ("Speak Now Tour") will officially begin on May 27, 2011, in Omaha, Nebraska. The Speak Now Tour will include 73 performances by Ms. Swift across the United States, including two performances in Nashville, on September 16 and 17, 2011, at the Bridgestone Arena. A complete current schedule of the Speak Now Tour is attached to this Complaint as **Exhibit S**.

50.    While Ms. Swift and her band were rehearsing and preparing for the Speak Now Tour, tornadoes swept across the Southeast United States, causing many lost lives and unprecedented property damage.

51.    As a fundraiser to benefit the victims of these disasters, the final dress rehearsal for the Speak Now Tour has been opened to the public. The tickets for this event went on sale

on May 12, 2011, with 100% of the ticket sales to help tornado victims.  A true and correct copy of the public announcement of this benefit and event is attached to this Complaint as **Exhibit T**.

52.     The "Speak Now Help Now" public benefit performance—and now the first public show in the Speak Now Tour—will be held on <u>May 21, 2011</u>, at <u>Bridgestone Arena</u>, in <u>Nashville</u>.

53.      In conjunction with the Speak Now Tour, including at the public benefit concert on May 21, 2011, merchandise bearing the Taylor Swift Trademarks and/or the trademark "Speak Now" (collectively, "Plaintiff's Trademarks"), and/or a photograph, image or likeness of Ms. Swift ("Taylor Swift Merchandise") will be made available for purchase to the public, by Plaintiff and its authorized vendors.

54.     Merchandise being offered by Plaintiff to the public during the Speak Now Tour will include shirts, t-shirts, posters, pictures, calendars, souvenir tour books, bags, backpacks, bracelets and blankets.  Digital photographs of select examples of the Taylor Swift Merchandise are attached to this Complaint as **Exhibit U**.

55.     The Taylor Swift Merchandise is of the highest quality and grade, manufactured according to strict quality and aesthetic standards.

56.     In addition, certain Taylor Swift Merchandise features anti-counterfeiting measures.  For example, the decorative design for the tee-shirts branded with the Taylor Swift Trademarks includes a number that tracks every single product.  This system allows Plaintiff to identify counterfeit products and to distinguish them from the authentic Taylor Swift Merchandise.

57.     Plaintiff has undertaken and continues to undertake diligent efforts to prevent, and actively pursue, sale of merchandise marked with imitations or counterfeits of Plaintiff's Trademarks or otherwise copying the Taylor Swift Merchandise ("Counterfeit Goods").

58.     Since the conclusion of the Case No. 3:09-CV-00442 before this Court, the Counterfeit Goods have continued to appear on eBay, at numerous outlets over the Internet, and during Ms. Swift's live performances on the Speak Now World Tour, at or near the concert venues.   Copies of photographs of select examples of the Counterfeit Goods recently sold, offered for sale and distributed during the Speak Now World Tour are attached to this Complaint as **Exhibit V.**

59.     Based on such sale, offering for sale and distribution of the Counterfeit Goods, and on the sale, offering for sale and distribution of the Counterfeit Goods by the named and numerous unnamed defendants during the Fearless Tour, as supported by this Court's record in Case No. 3:09-CV-00442, and upon information and belief, Plaintiff expects that numerous individuals distributing, selling and offering for sale the Counterfeit Goods will appear at the concert venues identified in **Exhibit S** to this Complaint, and as far away as 20 miles from these concert venues; these individuals and other similarly-situated individuals and entities, whose true names, capacities and addresses are not yet known to Plaintiff, are identified in this Complaint as "Various John Does," "Various Jane Does" and "Various XYZ Corporations."

60.     Upon information and belief, Defendants have and will manufacture, distribute, offer for sale, and/or sell the Counterfeit Goods in connection with the Speak Now Tour, and have engaged in such activities in preparation of the tour.

61.     Plaintiff has not authorized any Defendants to manufacture, distribute, offer for sale, or sell any Counterfeit Goods.

62.     Upon information and belief, the design, materials and quality of the Counterfeit Goods sold by Defendants are and will be of inferior quality, do and will fail to comply with the quality and style standards established by Plaintiff for the Taylor Swift Merchandise, and are significantly lower in price than the authentic Taylor Swift Merchandise.

63.     Further, upon information and belief, the Counterfeit Goods will be largely uniform from concert to concert and city to city, as many Defendants will sell the same Counterfeit Goods in different cities, travelling from one concert venue to the next.

64.     Upon information and belief, the Counterfeit Goods are and will be of the same general nature and type as the genuine and authorized Taylor Swift Merchandise, and Defendants' use of Plaintiff's Trademarks will likely cause confusion, cause mistake and/or deceive consumers into believing that the Counterfeit Goods are associated with, or sponsored or endorsed by, Plaintiff, and that they are purchasing genuine or authorized Taylor Swift Merchandise.

65.     Upon information and belief, Defendants do now and will continue to manufacture, distribute, offer for sale and sell the Counterfeit Goods in connection with the Speak Now Tour, throughout the United States.

66.     Upon information and belief, in addition to causing Plaintiff irrecoverable and innumerable lost sales, Defendants' actions will irreparably injure Plaintiff's reputation for high-quality products and services, and will cause dilution of the Taylor Swift Trademarks by blurring and by tarnishment.

67.     Upon information and belief, and based upon past experience at concert venues on the Fearless Tour, prior to and in the absence of a federal restraining and seizure order, local law enforcement officers have not and will not extend cooperation to Plaintiff for its anti-

18

counterfeiting enforcement efforts; however, local law enforcement officers have and will properly execute and enforce the Orders of this Court enjoining distribution, offering for sale, and sale of the Counterfeit Goods, and authorizing seizure of the Counterfeit Goods.

68.     Upon information and belief, prior to and in the absence of such Orders, when approached, parties distributing, offering for sale or selling the Counterfeit Goods have and will either quickly hide or discard Counterfeit Goods and run away, or ignore requests for identification and to abandon the concert premises and turn over Counterfeit Goods.

69.     Upon information and belief, Defendants are likely to become violent as a result of the anti-counterfeiting enforcement efforts without the proper support from the local law enforcement officers.  Such violence is particularly troublesome because of the young average age of the audience who will be attending Ms. Swift's concerts.

70.     Based on experience, and upon information and belief, there are many more sellers of the Counterfeit Goods at the concert locations than Plaintiff can address absent an order of injunction authorizing the law enforcement officers to seize the Counterfeit Goods because, in the absence of such an order, Defendants will not voluntarily turn over the Counterfeit Goods and will not cease the distribution, offering for sale and sale of the Counterfeit Goods.  Further, because Defendants will not identify themselves, Defendants will be able to avoid responding to an ordinary civil lawsuit and, in this way, will be essentially immune from any injunctive and/or monetary liability.

71.     For these reasons, the only effective means of protecting Plaintiff's Trademarks from counterfeiting by Defendants during the Speak Now Tour is by authority to enjoin the distribution, sale and offering for sale, and to seize, the Counterfeit Goods, as authorized by Section 1116 of Title 15 of the United States Code.

19

72.     Upon information and belief, without the aid of a federal court order restraining the distribution, sale and offering for sale of the Counterfeit Goods and authorizing their seizure, at and near the Speak Now Tour concert locations, Plaintiff will lose innumerable and irrecoverable sums in merchandise sales and will suffer incalculable, irreparable damage to its reputation and goodwill, in addition to the harm such counterfeiting will cause to the consuming public by deceiving the public into believing that the Counterfeit Goods are the legitimate, high-quality Taylor Swift Merchandise; Plaintiff will be unable to combat the network of individuals distributing and selling the Counterfeit Goods in connection with the Speak Now Tour, and will be unable to protect its rights and the rights of the consuming public against the distribution and sale of the Counterfeit Goods at the Speak Now Tour concerts.

73.     Upon information and belief, Defendants have and will continue to engage in the manufacture, distribution, marketing and sale of the Counterfeit Goods, in this State and elsewhere in interstate commerce, and will continue these activities during the Speak Now Tour throughout the United States.

## COUNT I
## INFRINGEMENT OF REGISTERED TRADEMARK
### (15 U.S.C. § 1114(1))

74.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

75.     Defendants' use of copies or simulations of Taylor Swift Trademarks, or any confusingly-similar marks, words and/or designs, on the Counterfeit Goods constitutes infringement of Plaintiff's Trademarks that are registered with the USPTO, in violation of 15 U.S.C. § 1114(1).

20

76.     On information and belief, Defendants' conduct has been or will be malicious, fraudulent, deliberate, willful, intentional and in disregard of Plaintiff's rights.

77.     Defendants' conduct will injure Plaintiff and, unless restrained and enjoined, will continue to do so, causing Plaintiff irreparable harm and monetary damage.

78.     Plaintiff is entitled to an injunction enjoining Defendants from any further use in commerce of the Taylor Swift Trademarks, to an award of all Defendants' profits, damages sustained by Plaintiff, the costs of this action, Plaintiff's reasonable attorney's fees, and three times of Plaintiff's actual damages, and to an order for destruction of the Counterfeit Goods, pursuant to 15 U.S.C. §§ 1116(a), 1117(a) and 1118.

**COUNT II**

**INFRINGEMENT OF UNREGISTERED TRADEMARK**

**(15 U.S.C. § 1125(a))**

79.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

80.     Defendants' use of copies or simulations of the Plaintiff's Trademarks that are not yet registered or are pending registration with the USPTO, or any confusingly-similar marks, words and designs, on the Counterfeit Goods constitutes infringement of Plaintiff's unregistered trademarks in violation of 15 U.S.C. § 1125(a).

81.     On information and belief, Defendants' conduct has been or will be malicious, fraudulent, deliberate, willful, intentional and in disregard of Plaintiff's rights.

82.     Defendants' conduct will injure Plaintiff and, unless restrained and enjoined, will continue to do so, causing Plaintiff irreparable harm and monetary damage.

83.     Plaintiff is entitled to an injunction enjoining Defendants from any further use in commerce of Plaintiff's Trademarks, to an award of all Defendants' profits, damages sustained

21

by Plaintiff, the costs of this action, Plaintiff's reasonable attorney's fees, and three times of Plaintiff's actual damages, and to an order for destruction of the Counterfeit Goods, pursuant to 15 U.S.C. §§ 1116(a), 1117(a) and 1118.

## COUNT III

## FEDERAL TRADEMARK DILUTION

## (15 U.S.C. § 1125(c))

84.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

85.     Defendants' use of copies or simulations of the Taylor Swift Trademarks, or any confusingly-similar marks, words and designs, on the Counterfeit Goods constitutes dilution by blurring that impairs the distinctiveness of the Taylor Swift Trademarks and dilution by tarnishment, and harms the reputation of the Taylor Swift Trademarks, in violation of 15 U.S.C. § 1125(c).

86.     On information and belief, Defendants' conduct has been or will be malicious, fraudulent, deliberate, willful, intentional and in disregard of Plaintiff's rights.

87.     Defendants' conduct will injure Plaintiff and, unless restrained and enjoined, will continue to do so, causing Plaintiff irreparable harm and monetary damage.

88.     Plaintiff is entitled to an injunction enjoining Defendants from any further acts of dilution of the Taylor Swift Trademarks, to an award of all Defendants' profits, damages sustained by Plaintiff, the costs of this action, Plaintiff's reasonable attorney's fees, and three times of Plaintiff's actual damages, and to an order for destruction of the Counterfeit Goods, pursuant to 15 U.S.C. §§ 1116(a), 1117(a), 1118 and 1125(c)(1).

22

## COUNT IV

## USE OF COUNTERFEIT MARK

### (15 U.S.C. § 1116(d))

89.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

90.     Defendants' Counterfeit Goods constitute goods bearing counterfeit marks.

91.     Defendants have intentionally sold, offered for sale or distributed these goods, in violation of The Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d), and, unless restrained and enjoined, will continue to traffic in the Counterfeit Goods, causing Plaintiff irreparable harm and monetary damage.

92.     On information and belief, Defendants' conduct has been or will be malicious, fraudulent, deliberate, willful, intentional and in disregard of Plaintiff's rights.

93.     Plaintiff is entitled to an injunction enjoining Defendants from any further use in commerce of Plaintiff's Trademarks, and to an award of all profits of Defendants, damages sustained by Plaintiff, treble damages or, in the alternative, statutory damages, the costs of this action, and Plaintiff's reasonable attorney's fees, an order providing for the seizure of the Counterfeit Goods and counterfeit marks involved in violation of Plaintiff's rights, and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation, and an order for destruction of the Counterfeit Goods, pursuant to 15 U.S.C. §§ 1116(a) and (d), 1117(b)-(c) and 1118.

23

## COUNT V

## COMMON LAW UNFAIR COMPETITION

94.      Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

95.      Defendants have used or will use Plaintiff's Trademarks prominently in connection with their unlawful efforts to sell competing products as legitimate goods of Plaintiff. Defendants' use of Plaintiff's Trademarks for competing goods is likely to confuse the public as to the origin, source, sponsorship or quality of goods offered for sale by Defendants and is likely to mislead persons to believe that Defendants' businesses and goods have been sponsored, approved or licensed by Plaintiff or are in some way affiliated or connected with Plaintiff.

96.      Defendants' use of Plaintiff's Trademarks is or will be with full knowledge of the substantial reputation and goodwill associated with Plaintiff and Plaintiff's Trademarks, and with full knowledge that Defendants have no rights to such marks.  By appropriating the goodwill of Plaintiff's widely known and respected trademarks, Defendants have or will unjustly enrich themselves and damage Plaintiff.

97.      On information and belief, Defendants' conduct has been or will be malicious, fraudulent, deliberate, willful, intentional, and in disregard of Plaintiff's rights.

98.      Defendants' conduct will injure Plaintiff and, unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable harm and monetary damage.

99.      Plaintiff is entitled to an injunction enjoining Defendants from any further use of Plaintiff's Trademarks, to an award of all Defendants' profits, damages sustained by Plaintiff, the costs of this action, and Plaintiff's reasonable attorney's fees.

24

## COUNT VI

## VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT

### (TENN. CODE ANN. § 47-18-101 *ET SEQ.*)

100.   Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

101.   Defendants' actions and omissions referenced above have and will constitute violations of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*, including, without limitation, Tenn. Code Ann. §§ 47-18-104(a), (b)(1), (2), (3), (5), (6), (7), (9), (22) and (27).

102.   Plaintiff has been and will continue to be damaged by Defendants' violations of the Tennessee Consumer Protection Act.

103.   On information and belief, Defendants' use or employment of unfair or deceptive acts or practices was a willful or knowing violation of the Tennessee Consumer Protection Act, entitling Plaintiff to an award of three times the actual damages sustained by Plaintiff and such other relief as the Court considers necessary and proper, pursuant to Tenn. Code Ann. § 47-18-109(a)(3).

104.   Defendants' violations of the Tennessee Consumer Protection Act entitle Plaintiff to an award of its reasonable attorney's fees and costs, pursuant to Tenn. Code Ann. § 47-18-109(e)(1).

## COUNT VII

## VIOLATION OF TENNESSEE PERSONAL RIGHTS PROTECTION ACT OF 1984
### (TENN. CODE ANN. § 47-25-1101 *ET SEQ.*)

105.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

106.    Defendants have knowingly used and infringed upon the use of the name, photograph and likeness of Ms. Taylor Swift, as items of commerce for purposes of advertising products, merchandise, and goods, without Plaintiff's prior consent.

107.    Defendants' actions and omissions constitute violations of the Tennessee Personal Rights Protection Act of 1984, Tenn. Code Ann. § 47-25-1101 *et seq.*, including, without limitation, Tenn. Code Ann. § 47-18-1105.

108.    Plaintiff has been damaged by Defendants' violations of the Tennessee Personal Rights Protection Act.

109.    Plaintiff is entitled to an injunction preventing and restraining Defendants' unauthorized use of the name, photograph or likeness of Ms. Swift, to an order impounding all materials or any part thereof made or used in violation of Plaintiff's rights, and enjoining the use of all plates, molds, matrices or other articles by means of which such materials may be reproduced, and to an order of the destruction or other reasonable disposition of all such materials.

110.    On information and belief, Defendants' use of Ms. Swift's name, photograph or likeness has been and will continue to be a willful or knowing violation of the Tennessee Personal Rights Protection Act, entitling Plaintiff to an award of Plaintiff's actual damages and any profits attributable to Defendants' infringement on Ms. Swift's personal rights, together with

26

all other remedies afforded by the Act and, pursuant to Tenn. Code Ann. § 47-25-1106(a), in addition to any other damages awarded by this Court.

## PRAYER FOR RELIEF

THE ABOVE PREMISES CONSIDERED, Plaintiff respectfully prays that the Court:

1.  Award Plaintiff a judgment against Defendants for compensatory damages;

2.  Award Plaintiff a judgment against Defendants for punitive damages;

3.  Award Plaintiff a judgment against Defendants for three times of the actual damages sustained by Plaintiff, under the Lanham Act, 15 U.S.C. § 1117(a), and the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109(a)(3);

4.  Award Plaintiff a judgment against Defendants for treble damages or, in the alternative, statutory damages, under the Lanham Act, 15 U.S.C. § 1117(b)-(c);

5.  Issue a temporary restraining order, and preliminary and permanent injunctions, prohibiting Defendants, their agents, servants, employees, officers, attorneys, successors and assigns and all persons acting on their behalf from: (a) use of Plaintiff's Trademarks and any photograph, image or likeness of Ms. Taylor Swift; (b) manufacturing, distributing, marketing or selling any Counterfeit Goods, or any other merchandise or products bearing without authorization Plaintiff's Trademarks or any confusingly-similar marks, words, names or designs, or any photograph, image or likeness of Plaintiff; and (c) representing that any Counterfeit Goods are sponsored, endorsed or authorized by Plaintiff, all within a twenty-mile vicinity of all concert venues at which Plaintiff will be performing during the Speak Now Tour;

6.  Order that all Counterfeit Goods, or any other merchandise or products bearing without authorization Plaintiff's Trademarks or any confusingly-similar marks, words, names or designs, or any photograph, image or likeness of Ms. Taylor Swift, found in the possession,

27

custody or control of Defendants within a twenty-mile vicinity of all concert venues at which Ms. Swift will be performing during the Speak Now Tour, during and within twenty-four hours of the performance, be seized until a hearing can be held before this Court to determine the disposition of any goods so seized;

7.    Order that any and all means of making the Counterfeit Goods and any and all records documenting the manufacture, sale, or receipt of things involved in the sale, offering for sale or distribution of the Counterfeit Goods, be seized until a hearing can be held before this Court to determine the disposition of any goods so seized;

8.    Order that (a) all Counterfeit Goods, or any other unauthorized merchandise or products bearing Plaintiff's Trademarks or any confusingly-similar marks, words, names or designs, or any photograph, image or likeness of Ms. Taylor Swift, and all plates, molds, matrices, and other means or articles of making or reproducing the same, found in the possession, custody, or control of Defendants, and (b) any goods seized pursuant to this Court's order, be delivered up to be held in the custody of the Court, pending the outcome of this action;

9.    Order that all goods seized pursuant to this Court's orders be destroyed;

10.   Award Plaintiff its attorneys' fees, costs and expenses under the Lanham Act, 15 U.S.C. § 1117(a), and the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109(e)(1);

11.   Award Plaintiff pre-judgment interest; and

12.   Award Plaintiff such other and further general, injunctive and equitable relief as may be appropriate under the circumstances.

28

Respectfully submitted,

_____
W. Michael Milom (No. 002803)
David S. Crow (No. 020699)
Natalya L. Rose (No. 021701)
MILOM JOYCE HORSNELL CROW PLC
3310 West End Avenue, Suite 610
Nashville, Tennessee 37203
Telephone: (615) 255-6161
Facsimile: (615) 254-4490
mmilom@mjhc-law.com
dcrow@mjhc-law.com
nrose@mjhc-law.com

*Attorneys for Plaintiff*
*TAS Rights Management, LLC*

29

## VERIFICATION

I, Jim Weatherson, declare that I am a Vice President for TAS Rights Management, LLC and am properly authorized to verify the foregoing Complaint on behalf of the Plaintiff, that I have read the foregoing Verified Complaint, that the facts that relate or refer to TAS Rights Management, LLC and Ms. Taylor Swift are true and correct to the best of my knowledge, and that all statements made on information and belief are believed to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on May 18, 2011.

Jim Weatherson
Vice President
TAS Rights Management, LLC

30