# EXHIBIT N

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
IN NASHVILLE

TAS RIGHTS MANAGEMENT, LLC,

      Plaintiff

v.

VARIOUS JOHN DOES,
VARIOUS JANE DOES, and
VARIOUS XYZ CORPORATIONS,

      Defendants

Civil Action No. _____

**FILED UNDER SEAL**

---

## VERIFIED COMPLAINT

---

The plaintiff, TAS Rights Management, LLC, files this Verified Complaint against the defendants, Various John Does, Various Jane Does and Various XYZ Corporations (collectively, "Defendants"), for [1] trademark infringement and trademark dilution, in violation of the Trademark (Lanham) Act, 15 U.S.C. § 1051 *et seq.*, [2] use of counterfeit marks, in violation of the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d), [3] common law unfair competition, violation of Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*, and [4] violation of the Tennessee Personal Rights Protection Act of 1984, Tenn. Code Ann. § 47-25-1101 *et seq.*, and for its cause of action states as follows:

1

## PARTIES

1.      The plaintiff, TAS Rights Management, LLC ("Plaintiff") is a limited liability company organized and existing pursuant to the laws of the State of Tennessee, with its principal place of business in Nashville, Tennessee.

2.      Upon information and belief, the defendants, Various John Does, Various Jane Does and Various XYZ Corporations, who are identified by fictitious names because their true names, capacities and addresses are not yet known to Plaintiff, are individuals and entities who are in some manner responsible or legally liable for the events or omissions giving rise to the Plaintiff's claims.   Plaintiff will seek leave of Court to amend this Complaint to assert Defendants' true names, capacities and addresses when the same have been ascertained.

## JURISDICTION

3.      This Court has subject matter jurisdiction over this action pursuant to: 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121(a), as a civil action arising under the trademark laws of the United States; pursuant to 28 U.S.C. § 1338(b), as a civil action asserting a claim of unfair competition joined with a substantial and related claim under the trademark laws of the United States; and under 28 U.S.C. § 1367(a) and the doctrine of supplemental jurisdiction.

4.      Upon information and belief, Defendants are or will be subject to personal jurisdiction in the State of Tennessee, as Defendants have engaged or will engage in acts or omissions outside of Tennessee causing injury within Tennessee, and Defendants are or will be present in and about this judicial district in connection with the claims asserted in this action. Upon information and belief, Defendants have and will continue to engage in manufacture, distribution, marketing and sale of counterfeit goods, as further described in this Verified

Complaint, in this State and elsewhere in interstate commerce, and will continue these activities during all times relevant to this action.

## VENUE

5.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims have occurred and will occur in this judicial district, Defendants have caused and will continue to cause injury to Plaintiff in this judicial district, Defendants will be present in and about this judicial district in connection with the claims asserted in this action, and Defendants are or will be subject to the jurisdiction of this Court.

## FACTS COMMON TO ALL COUNTS

6.      Plaintiff is the exclusive licensee and administrator of the trademark, name and likeness rights of Ms. Taylor Swift ("Ms. Swift"), in the United States and throughout the world.

### A.      Taylor Swift Trademarks

7.      Ms. Swift is an internationally recognized singer-songwriter, musician and actress.

8.      Ms. Swift provides and promotes products and services to the public in association with her name, Taylor Swift, which also functions as a trademark, appearing in literal form as "Taylor Swift" or "TAYLOR SWIFT," and in a stylized form as *Taylor Swift* .

9.      The name and trademark "Taylor Swift" was first used exclusively by Ms. Swift and her licensees, in an unstylized, literal form, in October 2000 in connection with:

> a). Series of musical sound recordings, pre-recorded audio cassettes, compact discs, and DVDs and video tapes featuring performances by an individual, and mouse pads;
> b). Clothing, namely, shirts, T-shirts, sweatshirts, jerseys, hats and caps; and
> c). Entertainment services in the nature of the rendition of live musical performances by an individual.

3

10.     The U.S. Patent and Trademark Office ("USPTO") has registered the trademark "Taylor Swift" for the above products and services, under Registration Numbers 3439211, 3439210 and 3429635, respectively.   True and correct copies of the Certificates of these registrations are attached to this Complaint as **Exhibit A**.

11.     Beginning in October 2006, the trademarks "Taylor Swift" and *Taylor Swift* (collectively, "Taylor Swift Trademarks") have been used exclusively by Ms. Swift and her licensees, for a wide variety of products and services.

12.     The Taylor Swift Trademarks have been registered with the USPTO in connection with many of these products and services.   True and correct copies of the Certificates of these registrations are attached to this Complaint as **Exhibit B**.

13.     Use of the Taylor Swift Trademarks now includes such products as greeting cards, accessories for portable telephones and electronic devices, and fragrances.   Photographs of a representative sample of such products are attached to this Complaint as **Exhibit C**.

14.     A summary of all Taylor Swift Trademarks, identifying their USPTO registration status, dates of registration, and respective products and services, is attached to this Complaint as **Exhibit D**.

15.     The Taylor Swift Trademarks have become widely recognized by the general consuming public of the United States, as demonstrated below, as a designation of the source of Ms. Swift's goods and services.

16.     At all times relevant hereto, Ms. Swift and/or her licensees maintained exclusive rights in and control of the Taylor Swift Trademarks, which have and continue to be used extensively in the United States and throughout the world.

4

### B.  Distinctiveness and Recognition of the Taylor Swift Trademarks

**i)**    **Amount and Volume of Sales of Goods and Services Offered under the Taylor Swift Trademarks**

17.    In "The Nielsen Company & Billboard's 2012 Music Industry Report" ("Nielsen & Billboard 2012 Report"), Ms. Swift was recognized as a top-selling artist, with sales of her most recent studio album, *RED*, exceeding 3.1 million copies in only ten weeks of its release, and debuting with the highest weekly sales of any album since 2002, exceeding 1.2 million units in its first-week.   Although *RED* was released only on October 22, 2012, it was the second-highest selling album of 2012.  A true and correct copy of the Nielsen & Billboard 2012 Report is attached to this Complaint as **Exhibit E.**

18.    *RED* was also the second-highest selling digital and physical album of 2012, and was the top-selling album during the 2012 holiday season, with over 1.5 million units sold from November 5 through December 30, 2012.

19.    Ms. Swift also earned honors for the top-selling songs, top artist airplay, and top streamed music videos and songs, earning the highest spot among streamed artists, with 216 million streams.

20.    Ms. Swift was the only artist on the Nielsen & Billboard 2012 Report to earn three out of top ten spots for the highest number of digital albums sold during the Nielsen SoundScan Era (since 1993 through December 30, 2012), selling a total of over 2.5 million digital units with her albums *Fearless*, *Speak Now* and *RED*.  Ms. Swift had the second-highest sales of all musical albums in 2012.

21.    In "The Nielsen Company & Billboard's 2010 Music Industry Report" ("Nielsen & Billboard 2010 Report"), Ms. Swift was named the top-selling artist for the 2010 Calendar Year − for the second time since 2008: she was named the top-selling artist in 2008 and the

5

second-best-selling artist in 2009.  A true and correct copy of the Nielsen & Billboard 2010 Report is attached to this Complaint as **Exhibit F**.

22.    The Nielsen & Billboard 2010 Report also recognized Ms. Swift as the top-selling digital artist of the Nielsen SoundScan Era, in the top ten of digital artists in 2010, as the top "Airplay" artist for 2010 – with more than 1.1 million spins (plays) and as the artist with the second-highest number of the Internet streams in 2010 – 77,000,000.

23.    According to the Nielsen & Billboard 2010 Report, Ms. Swift's third studio album, *Speak Now*, was the top Internet album in 2010, the third-best-selling physical album and the second-best-selling digital album in 2010, and both *Speak Now* and the album released by Ms. Swift in 2008, *Fearless*, ranked in the top ten of the best-selling digital albums of the Nielsen SoundScan Era.  Further, Ms. Swift's song "Love Story" ranked in the top ten of the best-selling digital songs of the Nielsen SoundScan Era, and Ms. Swift's album *The Holiday Collection* was in the top ten of the best-selling seasonal albums in 2010.

24.    In total, over 25 million albums and over 50 million digital downloads have been sold to-date worldwide under the Taylor Swift Trademarks, with total sales of over $200 million.

25.    From 2006 to the present, over 5 million people have attended "Taylor Swift" concerts.  The following table shows the estimated attendance and revenues from "Taylor Swift" concerts since 2006:

| Year | Estimated Attendance |
|:---:|:---:|
| 2006 | 37,000 |
| 2007 | 588,000 |
| 2008 | 1,153,786 |
| 2009 | 1,229,933 |
| 2010 | 850,000 |
| 2011 | 1,429,039 |
| **TOTAL:** | **5,287,758** |

6

26.     Merchandise branded with the Taylor Swift Trademarks is sold world-wide, in very close affiliation with Ms. Swift's name and image, including at Ms. Swift's concerts and on-line at the official global website, which is accessible at the URL http://www.TaylorSwift.com.   This merchandise includes products described in the trademark registrations attached as **Exhibits A and B**.

27.     In addition to the merchandise bearing the Taylor Swift Trademarks, these marks have been featured in prominent product endorsements and co-branding ventures, in the U.S. and other countries throughout the world, since 2008, including affiliation with:

a).     American Greetings & Papyrus, for greeting cards, gift packaging, party goods, stationery and related social expression products: 2009 – present;

b).     AT&T, for services endorsement and advertising: 2008;

c).     Circuit City Stores, Inc., for holiday promotions: 2008 – 2009;

d).     Comcast Corporation, for "Taylor Swift" dedicated video-on-demand collection: 2009 – present;

e).     CoverGirl, for cosmetic products: 2010 – 2012;

f).     Elizabeth Arden, Inc., for fragrances and body-care products: 2010 – present;

g).     Hot Picks USA/Big Idea Guys, Incorporated, for guitar picks and guitar pick jewelry: 2008 – 2011;

h).     JAKKS Pacific, Inc., for fashion dolls and accessories: 2008 – 2010;

i).     Keds, LLC and SR Holdings, LLC, for "Keds" brand of footwear: 2012 – present;

j).     L.e.i./Jones Apparel, Inc., for jeans, tops and dresses: 2008 – 2009;

k).     National Milk Processor Board, for "got milk?" Campaign: 2008 – 2009;

l).     Procter & Gamble Co., for "Gillette" brand hair removal or shaving products: 2008;

7

m).    Sanford L.P., A Newell Rubbermaid Company, for "Sharpie" brand pens: 2008;

n).    Sony Electronics, for consumer electronics and gaming products: 2010 – 2012; and

o).    The Coca Cola Company, for advertising and promotion of "Diet Coke" beverages: 2012 – present.

28.    Further, Ms. Swift has appeared in roles on television, in the television series *CSI: Crime Scene Investigation*, and in motion pictures, in the internationally distributed films *Valentine's Day* and *The Lorax* (as a member of the cast and the voice of the character "Audrey").

29.    The trademark "Taylor Swift" appeared in the credits and on advertising for these television and motion pictures performances, and also in connection with the awards and awards nominations for Ms. Swift's performance in *Valentine's Day* and *The Lorax*.

**ii)    Duration, Extent and Geographic Reach of Advertising and Publicity of Taylor Swift Trademarks**

30.    Products and services branded with the Taylor Swift Trademarks have been extensively advertised and promoted throughout the world.

31.    The estimated advertising and promotional expenses for the "Taylor Swift" concerts total over $7 million.

32.    The estimated expenses associated with worldwide marketing of albums sold under the Taylor Swift Trademarks exceed $20 million.

33.    Ms. Swift's likeness and the Taylor Swift Trademarks have appeared on the cover of many leading magazine publications, including *Seventeen, Us, Redbook, Women's Health, Teen Vogue, Cosmo Girl, Cosmopolitan, Self, Allure, The New York Times Style Magazine, Billboard, Rolling Stone* and *Entertainment Weekly*, in the United States, and, internationally,

8

*Capricho* (Brazil), *Femina* (China), *(Revista) Seventeen* (Colombia), *Hitkrant* (Holland), *Meiden* (Holland), *CosmoGirl* (Holland), *Glamour* (Italy), *D-You* (Italy), *Bounce* (Japan), *Elle Girl Touch* (Japan), *Girl'sCeleb* (Japan), *Gisele* (Japan), *Glitter* (Japan), *InRock* (Japan), *Seventeen* (Mexico), *Creme* (New Zealand), *Bliss* (UK) and *Independent on Sunday* (UK).

34.    Ms. Swift's likeness and the Taylor Swift Trademarks have also appeared many times on the covers of *Billboard* and *Rolling Stone* magazines, the premier trade publications in the music industry, as early as March 22, 2008 and as recently as October 25, 2012, and including the special issue of the *Billboard* in December 10, 2011, which was dedicated to "Women In Music" and wherein Ms. Swift was named "Woman of the Year." True and correct copies of these covers are attached to this Complaint as **Exhibit G**.

35.    Further, Ms. Swift has extensively appeared on television, in the United States and internationally. In connection with these appearances, Ms. Swift has publicized the products and services bearing the Taylor Swift Trademarks, and engaged in live musical performances. These appearances include Ms. Swift's performance for the opening of the 55th GRAMMYs, on February 10, 2013. A true and correct select list of such appearances is attached to this Complaint as **Exhibit H**.

### iii)    Extent of Actual Recognition of the Taylor Swift Trademarks

36.    To-date, four full studio albums have been released under the Taylor Swift Trademarks: *Taylor Swift*, *Fearless*, *Speak Now* and *RED*. The albums *Fearless* and *Speak Now* have also released in "Platinum" and "Karaoke" editions. Each album has been received extremely well, as demonstrated by the following facts about each album:

9

a) *Taylor Swift*

- Released on October 24, 2006
- Certified "5x Platinum" in the U.S.
- The longest-charting album in *Billboard Top 200 Albums* (best-selling albums across all genres), appearing on the top-selling albums list for over 230 weeks

b) *Fearless*

- Released on November 11, 2008
- Charted at No. 1 in *Billboard Top 200 Albums*
- Topped *Billboard 200* for 11 non-consecutive weeks
- Top-selling album in 2009
- Has received the most awards in country music history
- Certified "6x Platinum" in the U.S., and "Platinum" in other countries, with global sales exceeding 8.5 million units

c) *Speak Now*

- Released on October 25, 2010
- Sold 1,047,000 copies in the first week of release
- Charted at No. 1 in *Billboard Top 200* and *Billboard Country Albums*
- Remained at No. 1 for six weeks in *Billboard Top 200* and for 13 weeks in *Billboard Country Albums*
- Certified "4x Platinum" in the U.S, and "Gold" and "Platinum" in other countries, having sold over 5.5 million units worldwide

d) *RED*

- Released in October 2012
- Debuted at "number one" on *Billboard Top 200*
- Lead single held "number one" position at *Billboard* Hot 100 for three weeks, and topped iTunes charts worldwide, selling over 620,000 copies in the first week
- Sold over 1.2 million copies in the first week of release
- Certified "4x Platinum" in the U.S, and "Gold" and "Platinum" in other countries, having sold over 5 million units worldwide

37.     Ms. Swift has been nominated for professional awards and recognitions, world-wide, 182 times and has won 148 awards, including:

a) *Grammy Awards*
- Album of the Year: *Fearless* (2010)
- Best Country Album: *Fearless* (2010)

10

- Best Female Country Vocal Performance: "White Horse" (2010)
- Best Country Song: "White Horse" (2010)
- Best Country Solo Performance: "Mean" (2012)
- Best Country Song: "Mean" (2012)
- Best Song Written for Visual Media: "Safe & Sound" (2013)

b) *American Music Awards*
- Favorite Country Female Artist (2008)
- Artist of the Year (2009)
- Favorite Pop/Rock Female Artist (2009)
- Favorite Country Female Artist (2009)
- Favorite Adult Contemporary Artist (2009)
- Favorite Country Album: *Fearless* (2009)
- Favorite Country Female Artist (2010)
- Artist of the Year (2011)
- Favorite Country Female Artist (2011)
- Favorite Country Album: *Speak Now* (2011)
- Favorite Female Country Artist (2012)

c) *Academy of Country Music Awards*
- Top Female Vocalist Artist (2008)
- Album of the Year: *Fearless* (2009)
- Crystal Milestone Award (2010)
- Jim Reeves International Award (2011)
- Entertainer of the Year (2011)
- Entertainer of the Year (2012)

d) *Country Music Association Awards*
- Horizon Award (2007)
- Entertainer of the Year (2009)
- Female Vocalist of the Year (2009)
- International Artist Achievement Award (2009)
- Album of the Year: *Fearless* (2009)
- Music Video of the Year: "Love Story" (2009)
- Entertainer of the Year (2011)

e) *People's Choice Awards*
- Favorite Female Artist (2010)
- Favorite Country Artist (2011)
- Favorite Country Artist (2012)
- Favorite Country Artist (2013)

f) *Ripple of Hope Gala*
- Ripple of Hope Award (2012)

11

g) *Teen Choice Awards*
   - Choice Female Artist (2009)
   - Choice Female Album: *Fearless* (2009)
   - Choice Movie/Breakout Female: *Valentine's Day* (2010)
   - Choice Female Country Artist (2010)
   - Choice Country Song: "Fifteen"(2010)
   - Choice Country Album: *Fearless* (2010)
   - Choice Female Artist (2011)
   - Choice Female Country Artist (2011)
   - Choice Country Song: "Mean" (2011)
   - Ultimate Choice Award (2011)
   - Choice Female Artist (2012)
   - Choice Female Country Artist (2012)
   - Choice Voice: *The Lorax* (2012)
   - Choice Single by a Female Artist: "Eyes Open" (2012)
   - Choice Country Song: "Sparks Fly" (2012)

h) *Canadian Country Music Association Awards*
   - Top Selling Album: *Fearless* (2009)
   - Top Selling Album: *Fearless* (2010)
   - Top Selling Album: *Speak Now* (2011)
   - Generation Award (2012)

i) *MTV Video Music Awards*
   - Best Female Video: "You Belong With Me" (2009)

j) *World Music Awards*
   - World's Best Album: *Fearless* (Nominated, 2010)
   - World's Best Pop/Rock Artist (Nominated, 2010)
   - World's Best Album: *RED* (Nominated, Pending)
   - World's Best Song: "We Are Never Ever Getting Back Together" (Nominated, Pending)
   - World's Best Video: "We Are Never Ever Getting Back Together" (Nominated, Pending)
   - World's Best Female Artist (Nominated, Pending)
   - World's Best Live Act (Nominated, Pending)
   - World's Best Entertainer of the Year (Nominated, Pending)

## C.   Counterfeiting of the Taylor Swift Trademarks

### i)   Fearless Tour (2009-2010)

38.   On April 23, 2009, Ms. Swift had launched her first headlining tour, titled "Fearless Tour" ("Fearless Tour"). The Fearless Tour was originally scheduled to reach 56

12

cities, in 35 states, within the United States, and to include shows abroad, in Canada, Australia and United Kingdom.   As a result of the overwhelming response to Fearless Tour, it was subsequently extended and concluded after 105 shows and an attendance of over 2,000,000 people.

39.     Unfortunately, the Fearless Tour was popular not only with Ms. Swift's fans, but also with parties involved in counterfeiting of the Taylor Swift Trademarks.  As a result, Ms. Swift filed a Complaint in this Court on May 18, 2009, against five named and additional unnamed defendants, with respect to such defendants' manufacturing, offering for sale and sale of products bearing counterfeits of at or near venues on the Fearless Tour, and for related causes of action (Case No. 3:09-CV-00442).

40.     Ms. Swift also filed a Motion for Temporary Restraining Order and Preliminary Injunction, and an Application for Order of Seizure of Counterfeit Goods; the Court granted Ms. Swift's Motion and issued a Temporary Restraining Order and Order of Seizure of Counterfeit Goods (Case No. 3:09-CV-00442, Document 12, Signed by Chief Judge Todd J. Campbell) and, subsequently, an Order to Extend these Orders (Case No. 3:09-CV-00442, Document 17, Signed by Senior Judge Thomas Wiseman) and an Order of Preliminary Injunction and Order of Seizure of Counterfeit Goods (Case No. 3:09-CV-00442, Document 33, Signed by Senior Judge Thomas Wiseman).  Further, following the extension of the Fearless Tour, Ms. Swift applied to this Court to Extend Time Period and Supplement Locations Identified in Preliminary Injunction and Order of Seizure of Counterfeit Goods (Case No. 3:09-CV-00442, Document 66, Signed by Senior Judge Thomas Wiseman) and the Court granted such relief (Case No. 3:09-CV-00442, Document 78, Signed by Senior Judge Thomas Wiseman).

41.     As a result, over 1,500 T-shirts bearing counterfeits of the Taylor Swift Trademarks were seized during the Fearless Tour and subsequently destroyed (Order of Destruction of Counterfeit Goods signed by Senior Judge Thomas Wiseman;  Case No. 3:09-CV-00442, Document 134).

42.     However, some of the merchandise bearing counterfeits of the Taylor Swift Trademarks could not be seized and destroyed pursuant to this Court's Orders because it was located outside of the five-mile radius specified in the Order of Seizure of Counterfeit Goods. Local law enforcement officials and Ms. Swift's merchandise enforcement team have found and identified such merchandise located as far away as nearly 20 miles from the concert venue, where it was held for subsequent delivery to and distribution at the venue.  Such merchandise has also been found being sold at Interstate exit ramps leading to the concert venues.

### ii)    Speak Now World Tour (2011)

43.     On February 9, 2011, Ms. Swift had launched her tour titled "Speak Now World Tour" ("Speak Now Tour").

44.     Speak Now Tour included over 100 concerts, in 19 countries, including 73 performances across the United States.

45.     The schedule for Speak Now Tour was revised to open the final dress rehearsal, at the Bridgestone Arena in Nashville, to the public as a fundraiser, with 100% of the ticket sales to benefit the victims of the tornadoes that had swept across the Southeast United States just as Ms. Swift and her band were rehearsing for the tour.  Speak Now Tour included two other performances in Nashville, on September 16 and 17, 2011, also at the Bridgestone Arena.

46.     In conjunction with the Speak Now Tour, including at the public benefit concert, merchandise bearing the Taylor Swift Trademarks and/or a photograph, image or likeness of Ms.

Swift were made available for purchase to the public, by Plaintiff and its authorized vendors. However, as Plaintiff had anticipated, sellers of merchandise bearing counterfeits of the Taylor Swift Trademarks attempted to peddle their wares to the fans attending the Speak Now Tour, just as they had done during the Fearless Tour.

47.     This Court enjoined such sales and authorized seizure of all counterfeit merchandise, by issuing a Temporary Restraining Order and Order of Seizure of Counterfeit Goods (Case No. 3:11-0477, Document 7, Signed by Judge Aleta A. Trauger), a Preliminary Injunction and Order of Seizure of Counterfeit Goods (Case No. 3:11-0477, Document 15, Signed by Judge John T. Nixon), and a Modified Preliminary Injunction and Order of Seizure of Counterfeit Goods (Case No. 3:11-0477, Document 39, Signed by Judge John T. Nixon) against Various John Does, Various Jane Does, and Various XYZ Corporations.  The Court further issued an Order of Default Judgment, Permanent Injunction and Destruction of Counterfeit Goods against all named defendants, allowing for destruction of counterfeit goods seized from all named defendants and from the defendants who had been named as "John Does," "Jane Does" and "XYZ Corporations" and who refused to provide identification and accept service of the complaint (Case No. 3:11-0477, Document 52, Signed by Judge John T. Nixon).  As a result, over 1,000 T-shirts bearing counterfeits of the Taylor Swift Trademarks were seized during the Speak Now Tour and subsequently destroyed (Order of Destruction of Counterfeit Goods signed by Judge John T. Nixon;  Case No. 3:11-0477, Document 52).

### iii)     The RED Tour (2013)

48.     Ms. Swift anticipates launching her new tour, titled "The RED Tour" ("The RED Tour") on March 13, 2013.

49.     The RED Tour is presently scheduled to reach 45 cities in 29 States, concluding with three shows at the Bridgestone Area in Nashville.  A complete current schedule of The RED Tour is attached to this Complaint as **Exhibit I**.

50.     During The RED Tour, Plaintiff and its authorized vendors will offer for sale merchandise bearing the Taylor Swift Trademarks and/or a photograph, image or likeness of Ms. Swift ("Taylor Swift Merchandise").

51.     The Taylor Swift Merchandise to be offered by Plaintiff to the public during The RED Tour will include shirts, T-shirts, headwear, posters, photographs, calendars, books, bags, backpacks, jewelry, blankets, and accessories for electronic devices.   Photographs of select examples of the Taylor Swift Merchandise are attached to this Complaint as **Exhibit C**.

52.     The Taylor Swift Merchandise is of the highest quality and grade, and has been manufactured according to strict quality and aesthetic standards.

53.     In addition, certain Taylor Swift Merchandise features anti-counterfeiting measures.  For example, the decorative design for the tee-shirts branded with the Taylor Swift Trademarks includes a number that tracks every single product.  This system allows Plaintiff to identify counterfeit products and to distinguish them from the authentic Taylor Swift Merchandise.

54.     Plaintiff has undertaken and continues to undertake diligent efforts to prevent, and actively pursue, sale of merchandise marked with imitations or counterfeits of Plaintiff's Trademarks or otherwise copying the Taylor Swift Merchandise ("Counterfeit Goods").

55.     Since the conclusion of the Case No. 3:11-0477 before this Court, the Counterfeit Goods have continued to appear on eBay, other on-line marketplaces and at numerous outlets

16

over the Internet.  Plaintiff has implemented and vigorously continues an enforcement program against such violations on the Taylor Swift Trademarks.

56.     Based on such sale, offering for sale and distribution of the Counterfeit Goods, and on the sale, offering for sale and distribution of the Counterfeit Goods by the named and numerous unnamed defendants during the Fearless Tour and the Speak Now Tour, as supported by this Court's records in Case No. 3:09-CV-00442 and in Case No. 3:11-0477, and upon information and belief, Plaintiff expects that numerous individuals distributing, selling and offering for sale the Counterfeit Goods will appear at the concert venues identified in **Exhibit I** to this Complaint, and as far away as 20 miles from these concert venues; these individuals and other similarly situated individuals and entities, whose true names, capacities and addresses are not yet known to Plaintiff, are identified in this Complaint as "Various John Does," "Various Jane Does" and "Various XYZ Corporations."

57.     Upon information and belief, Defendants have and will manufacture, distribute, offer for sale, and/or sell the Counterfeit Goods in connection with the Red Tour, and have engaged in such activities in preparation of the tour.

58.     Plaintiff has not authorized any Defendants to manufacture, distribute, offer for sale, or sell any Counterfeit Goods.

59.     Upon information and belief, and based upon past experience at concert venues on the Fearless Tour and on the Speak Now Tour, the design, materials and quality of the Counterfeit Goods sold by Defendants are and will be of poor quality, do and will fail to comply with the quality and style standards established by Plaintiff for the Taylor Swift Merchandise, and the Counterfeit Goods will be priced significantly lower than the authentic Taylor Swift Merchandise.  Photographs of a representative sample of the Counterfeit Goods, which were

17

seized pursuant to this Court's Orders during the Speak Now Tour, are attached to this Complaint as **Exhibit J**.

60.     Further, upon information and belief, and based upon past experience at concert venues on the Fearless Tour and on the Speak Now Tour, the Counterfeit Goods will be largely uniform from concert to concert and city to city, as many Defendants will sell the same Counterfeit Goods in different cities, travelling from one concert venue to the next.

61.     Upon information and belief, and based upon past experience at concert venues on the Fearless Tour and on the Speak Now Tour, the Counterfeit Goods are and will be of the same general nature and type as the genuine and authorized Taylor Swift Merchandise, and Defendants' use of the Taylor Swift Trademarks will likely cause confusion, cause mistake and/or deceive consumers into believing that the Counterfeit Goods are associated with, or sponsored or endorsed by, Plaintiff, and that they are purchasing genuine or authorized Taylor Swift Merchandise.

62.     Upon information and belief, and based upon past experience at concert venues on the Fearless Tour and on the Speak Now Tour, Defendants do now and will continue to manufacture, distribute, offer for sale and sell the Counterfeit Goods in connection with The RED Tour, throughout the United States.

63.     Upon information and belief, in addition to causing Plaintiff irrecoverable and innumerable lost sales, Defendants' actions will irreparably injure Plaintiff's reputation for high-quality products and services, and will cause dilution of the Taylor Swift Trademarks by blurring and by tarnishment.

64.     Upon information and belief, and based upon past experience at concert venues on the Fearless Tour and on the Speak Now Tour, prior to and in the absence of a federal

restraining and seizure order, local law enforcement officers have not and will not extend cooperation to Plaintiff for its anti-counterfeiting enforcement efforts; however, local law enforcement officers have and will properly execute and enforce the Orders of this Court enjoining distribution, offering for sale, and sale of the Counterfeit Goods, and authorizing seizure of the Counterfeit Goods.

65. Upon information and belief, and based upon past experience at concert venues on the Fearless Tour and on the Speak Now Tour, prior to and in the absence of such Orders, when approached, parties distributing, offering for sale or selling the Counterfeit Goods have and will either quickly hide or discard Counterfeit Goods and run away, or ignore requests for identification and to abandon the concert premises and turn over Counterfeit Goods.

66. Upon information and belief, and based upon past experience at concert venues on the Fearless Tour and on the Speak Now Tour, Defendants are likely to become violent as a result of the anti-counterfeiting enforcement efforts without the proper support from the local law enforcement officers. Such violence is particularly troublesome because of the young average age of the audience who will be attending Ms. Swift's concerts.

67. Upon information and belief, and based upon past experience at concert venues on the Fearless Tour and on the Speak Now Tour, there are many more sellers of the Counterfeit Goods at the concert locations than Plaintiff can address absent an order of injunction authorizing the law enforcement officers to seize the Counterfeit Goods because, in the absence of such an order, Defendants will not voluntarily turn over the Counterfeit Goods and will not cease the distribution, offering for sale and sale of the Counterfeit Goods. Further, because Defendants will not identify themselves, Defendants will be able to avoid responding to an

ordinary civil lawsuit and, in this way, will be essentially immune from any injunctive and/or monetary liability.

68.    For these reasons, the only effective means of protecting Plaintiff's Trademarks from counterfeiting by Defendants during The RED Tour is by authority to enjoin the distribution, sale and offering for sale, and to seize, the Counterfeit Goods, as authorized by Section 1116 of Title 15 of the United States Code.

69.    Upon information and belief, and based upon past experience at concert venues on the Fearless Tour and on the Speak Now Tour, without the aid of a federal court order restraining the distribution, sale and offering for sale of the Counterfeit Goods and authorizing their seizure, at and near The RED Tour concert locations, Plaintiff will lose innumerable and irrecoverable sums in merchandise sales and will suffer incalculable, irreparable damage to its reputation and goodwill, in addition to the harm such counterfeiting will cause to the consuming public by deceiving the public into believing that the Counterfeit Goods are the legitimate, high-quality Taylor Swift Merchandise; Plaintiff will be unable to combat the network of individuals distributing and selling the Counterfeit Goods in connection with The RED Tour, and will be unable to protect its rights and the rights of the consuming public against the distribution and sale of the Counterfeit Goods at The RED Tour concerts.

70.    Upon information and belief, and based upon past experience at concert venues on the Fearless Tour and on the Speak Now Tour, Defendants have and will continue to engage in the manufacture, distribution, marketing and sale of the Counterfeit Goods, in this State and elsewhere in interstate commerce, and will continue these activities during The RED Tour throughout the United States.

20

## COUNT I

### INFRINGEMENT OF REGISTERED TRADEMARK
### (15 U.S.C. § 1114(1))

71.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

72.     Defendants' use of copies or simulations of the Taylor Swift Trademarks, or any confusingly similar marks, words and/or designs, on the Counterfeit Goods constitutes infringement of Plaintiff's Trademarks that are registered with the USPTO, in violation of 15 U.S.C. § 1114(1).

73.     On information and belief, Defendants' conduct has been or will be malicious, fraudulent, deliberate, willful, intentional and in disregard of Plaintiff's rights.

74.     Defendants' conduct will injure Plaintiff and, unless restrained and enjoined, will continue to do so, causing Plaintiff irreparable harm and monetary damage.

75.     Plaintiff is entitled to an injunction enjoining Defendants from any further use in commerce of the Taylor Swift Trademarks, to an award of all Defendants' profits, damages sustained by Plaintiff, the costs of this action, Plaintiff's reasonable attorney's fees, and three times of Plaintiff's actual damages, and to an order for destruction of the Counterfeit Goods, pursuant to 15 U.S.C. §§ 1116(a), 1117(a) and 1118.

## COUNT II

### INFRINGEMENT OF UNREGISTERED TRADEMARK
### (15 U.S.C. § 1125(a))

76.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

77.     Defendants' use of copies or simulations of the Taylor Swift Trademarks that are not yet registered or are pending registration with the USPTO, or any confusingly similar marks,

21

words and designs, on the Counterfeit Goods constitutes infringement of Plaintiff's unregistered trademarks in violation of 15 U.S.C. § 1125(a).

78.     On information and belief, Defendants' conduct has been or will be malicious, fraudulent, deliberate, willful, intentional and in disregard of Plaintiff's rights.

79.     Defendants' conduct will injure Plaintiff and, unless restrained and enjoined, will continue to do so, causing Plaintiff irreparable harm and monetary damage.

80.     Plaintiff is entitled to an injunction enjoining Defendants from any further use in commerce of the Taylor Swift Trademarks, to an award of all Defendants' profits, damages sustained by Plaintiff, the costs of this action, Plaintiff's reasonable attorney's fees, and three times of Plaintiff's actual damages, and to an order for destruction of the Counterfeit Goods, pursuant to 15 U.S.C. §§ 1116(a), 1117(a) and 1118.

## COUNT III

### FEDERAL TRADEMARK DILUTION
### (15 U.S.C. § 1125(c))

81.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

82.     Defendants' use of copies or simulations of the Taylor Swift Trademarks, or any confusingly similar marks, words and designs, on the Counterfeit Goods constitutes dilution by blurring that impairs the distinctiveness of and dilution by tarnishment, and harms the reputation of the Taylor Swift Trademarks, in violation of 15 U.S.C. § 1125(c).

83.     On information and belief, Defendants' conduct has been or will be malicious, fraudulent, deliberate, willful, intentional and in disregard of Plaintiff's rights.

84.     Defendants' conduct will injure Plaintiff and, unless restrained and enjoined, will continue to do so, causing Plaintiff irreparable harm and monetary damage.

22

85.     Plaintiff is entitled to an injunction enjoining Defendants from any further acts of dilution of the Taylor Swift Trademarks, to an award of all Defendants' profits, damages sustained by Plaintiff, the costs of this action, Plaintiff's reasonable attorney's fees, and three times of Plaintiff's actual damages, and to an order for destruction of the Counterfeit Goods, pursuant to 15 U.S.C. §§ 1116(a), 1117(a), 1118 and 1125(c)(1).

## COUNT IV

### USE OF COUNTERFEIT MARK
### (15 U.S.C. § 1116(d))

86.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

87.     Defendants' Counterfeit Goods constitute goods bearing counterfeit marks.

88.     Defendants have intentionally sold, offered for sale or distributed these goods, in violation of The Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d), and, unless restrained and enjoined, will continue to traffic in the Counterfeit Goods, causing Plaintiff irreparable harm and monetary damage.

89.     On information and belief, Defendants' conduct has been or will be malicious, fraudulent, deliberate, willful, intentional and in disregard of Plaintiff's rights.

90.     Plaintiff is entitled to an injunction enjoining Defendants from any further use in commerce of the Taylor Swift Trademarks, and to an award of all profits of Defendants, damages sustained by Plaintiff, treble damages or, in the alternative, statutory damages, the costs of this action, and Plaintiff's reasonable attorney's fees, an order providing for the seizure of the Counterfeit Goods and counterfeit marks involved in violation of Plaintiff's rights, and the means of making such marks, and records documenting the manufacture, sale, or receipt of

things involved in such violation, and an order for destruction of the Counterfeit Goods, pursuant to 15 U.S.C. §§ 1116(a) and (d), 1117(b)-(c) and 1118.

**COUNT V**

**COMMON LAW UNFAIR COMPETITION**

91.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

92.     Defendants have used or will use the Taylor Swift Trademarks prominently in connection with their unlawful efforts to sell competing products as legitimate goods of Plaintiff. Defendants' use of the Taylor Swift Trademarks for competing goods is likely to confuse the public as to the origin, source, sponsorship or quality of goods offered for sale by Defendants and is likely to mislead persons to believe that Defendants' businesses and goods have been sponsored, approved or licensed by Plaintiff or are in some way affiliated or connected with Plaintiff.

93.     Defendants' use of the Taylor Swift Trademarks is or will be with full knowledge of the substantial reputation and goodwill associated with Plaintiff and the Taylor Swift Trademarks, and with full knowledge that Defendants have no rights to such marks.   By appropriating the goodwill of Plaintiff's widely known and respected trademarks, Defendants have or will unjustly enrich themselves and damage Plaintiff.

94.     On information and belief, Defendants' conduct has been or will be malicious, fraudulent, deliberate, willful, intentional, and in disregard of Plaintiff's rights.

95.     Defendants' conduct will injure Plaintiff and, unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable harm and monetary damage.

24

96.     Plaintiff is entitled to an injunction enjoining Defendants from any further use of the Taylor Swift Trademarks, to an award of all Defendants' profits, damages sustained by Plaintiff, the costs of this action, and Plaintiff's reasonable attorney's fees.

**COUNT VI**

**VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT**
**(TENN. CODE ANN. § 47-18-101 *et seq*.)**

97.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

98.     Defendants' actions and omissions referenced above have and will constitute violations of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*, including, without limitation, Tenn. Code Ann. §§ 47-18-104(a), (b)(1), (2), (3), (5), (6), (7), (9), (22) and (27).

99.     Plaintiff has been and will continue to be damaged by Defendants' violations of the Tennessee Consumer Protection Act.

100.     On information and belief, Defendants' use or employment of unfair or deceptive acts or practices was a willful or knowing violation of the Tennessee Consumer Protection Act, entitling Plaintiff to an award of three times the actual damages sustained by Plaintiff and such other relief as the Court considers necessary and proper, pursuant to Tenn. Code Ann. § 47-18-109(a)(3).

101.     Defendants' violations of the Tennessee Consumer Protection Act entitle Plaintiff to an award of its reasonable attorney's fees and costs, pursuant to Tenn. Code Ann. § 47-18-109(e)(1).

## COUNT VII

### VIOLATION OF TENNESSEE PERSONAL RIGHTS PROTECTION ACT OF 1984
### (TENN. CODE ANN. § 47-25-1101 *et seq.*)

102.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

103.    Defendants have knowingly used and infringed upon the use of the name, photograph and likeness of Ms. Taylor Swift, as items of commerce for purposes of advertising products, merchandise, and goods, without Plaintiff's prior consent.

104.    Defendants' actions and omissions constitute violations of the Tennessee Personal Rights Protection Act of 1984, Tenn. Code Ann. § 47-25-1101 *et seq.*, including, without limitation, Tenn. Code Ann. § 47-18-1105.

105.    Plaintiff has been damaged by Defendants' violations of the Tennessee Personal Rights Protection Act.

106.    Plaintiff is entitled to an injunction preventing and restraining Defendants' unauthorized use of the name, photograph or likeness of Ms. Swift, to an order impounding all materials or any part thereof made or used in violation of Plaintiff's rights, and enjoining the use of all plates, molds, matrices or other articles by means of which such materials may be reproduced, and to an order of the destruction or other reasonable disposition of all such materials.

107.    On information and belief, Defendants' use of Ms. Swift's name, photograph or likeness has been and will continue to be a willful or knowing violation of the Tennessee Personal Rights Protection Act, entitling Plaintiff to an award of Plaintiff's actual damages and any profits attributable to Defendants' infringement on Ms. Swift's personal rights, together with

all other remedies afforded by the Act and, pursuant to Tenn. Code Ann. § 47-25-1106(a), in addition to any other damages awarded by this Court.

**PRAYER FOR RELIEF**

THE ABOVE PREMISES CONSIDERED, Plaintiff respectfully prays that the Court:

1.      Award Plaintiff a judgment against Defendants for compensatory damages;

2.      Award Plaintiff a judgment against Defendants for punitive damages;

3.      Award Plaintiff a judgment against Defendants for three times of the actual damages sustained by Plaintiff, under the Lanham Act, 15 U.S.C. § 1117(a), and the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109(a)(3);

4.      Award Plaintiff a judgment against Defendants for treble damages or, in the alternative, statutory damages, under the Lanham Act, 15 U.S.C. § 1117(b)-(c);

5.      Issue a temporary restraining order, and preliminary and permanent injunctions, prohibiting Defendants, their agents, servants, employees, officers, attorneys, successors and assigns and all persons acting on their behalf from: (a) use of the Taylor Swift Trademarks and any photograph, image or likeness of Ms. Taylor Swift; (b) manufacturing, distributing, marketing or selling any Counterfeit Goods, or any other merchandise or products bearing without authorization the Taylor Swift Trademarks or any confusingly similar marks, words, names or designs, or any photograph, image or likeness of Plaintiff; and (c) representing that any Counterfeit Goods are sponsored, endorsed or authorized by Plaintiff, all within a twenty-mile vicinity of all concert venues at which Plaintiff will be performing during The RED Tour;

6.      Order that all Counterfeit Goods, or any other merchandise or products bearing without authorization the Taylor Swift Trademarks or any confusingly similar marks, words, names or designs, or any photograph, image or likeness of Ms. Taylor Swift, found in the

possession, custody or control of Defendants within a twenty-mile vicinity of all concert venues at which Ms. Swift will be performing during The RED Tour, during and within twenty-four hours of the performance, be seized until a hearing can be held before this Court to determine the disposition of any goods so seized;

7. Order that any and all means of making the Counterfeit Goods and any and all records documenting the manufacture, sale, or receipt of things involved in the sale, offering for sale or distribution of the Counterfeit Goods, be seized until a hearing can be held before this Court to determine the disposition of any goods so seized;

8. Order that (a) all Counterfeit Goods, or any other unauthorized merchandise or products bearing the Taylor Swift Trademarks or any confusingly similar marks, words, names or designs, or any photograph, image or likeness of Ms. Taylor Swift, and all plates, molds, matrices, and other means or articles of making or reproducing the same, found in the possession, custody, or control of Defendants, and (b) any goods seized pursuant to this Court's order, be delivered up to be held in the custody of the Court, pending the outcome of this action;

9. Order that all goods seized pursuant to this Court's orders be destroyed;

10. Award Plaintiff its attorneys' fees, costs and expenses under the Lanham Act, 15 U.S.C. § 1117(a), and the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109(e)(1);

11. Award Plaintiff pre-judgment interest; and

12. Award Plaintiff such other and further general, injunctive and equitable relief as may be appropriate under the circumstances.

28

Respectfully,

W. Michael Milom (No. 002803)
David S. Crow (No. 020699)
Natalya L. Rose (No. 021701)
MILOM HORSNELL CROW ROSE KELLEY PLC
3310 West End Avenue, Suite 610
Nashville, Tennessee 37203
Telephone: (615) 255-6161
Facsimile: (615) 254-4490
mmilom@milomlaw.com
dcrow@milomlaw.com
nrose@milomlaw.com

*Attorneys for Plaintiff*
*TAS Rights Management, LLC*

## **VERIFICATION**

I, _Teece Scchandieg_ declare that I am a Vice President for TAS Rights Management, LLC and am properly authorized to verify the foregoing Complaint on behalf of the Plaintiff, that I have read the foregoing Verified Complaint, that the facts that relate or refer to TAS Rights Management, LLC and Ms. Taylor Swift are true and correct to the best of my knowledge, and that all statements made on information and belief are believed to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on February 28, 2013.

Vice President
TAS Rights Management, LLC

30