1  MARK L. SKAIST (SBN 156090)
     apparel@sycr.com
2  JUSTIN E. KLAEB (SBN 254035)
     apparel@sycr.com
3  STRADLING YOCCA CARLSON & RAUTH, P.C.
   100 Wilshire Blvd., 4th Floor
4  Santa Monica, California 90401
   Telephone:  (424) 214-7000
5  Facsimile:  (424) 214-7010

6
   Attorneys for Plaintiffs,
7  BLUE SPHERE, INC. doing business as LUCKY 13
   and ROBERT A. KLOETZLY
8

9

10                  UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                      SOUTHERN DIVISION

13

14  BLUE SPHERE, INC., a California        CASE NO.:  8:14-cv-00782
    Corporation doing business as
15  LUCKY 13, and ROBERT A.                FIRST AMENDED COMPLAINT
    KLOETZLY, an individual,               FOR:
16
              Plaintiffs,                   1.  TRADEMARK INFRINGEMENT
17                                              UNDER 15 U.S.C. § 1114;
              vs.
18                                          2.  UNFAIR COMPETITION IN
    TAYLOR A. SWIFT, an individual,             VIOLATION OF THE LANHAM
19  TAYLOR NATION, LLC, a                       ACT, 15 U.S.C. § 1125(a);
    Tennessee Limited Liability
20  Company, TAYLOR SWIFT                   3.  TRADEMARK DILUTION IN
    PRODUCTIONS, INC., a                        VIOLATION OF THE LANHAM
21  Tennessee Corporation, SWIFT               ACT, 15 U.S.C. § 1125(c);
    MERCHANDISING, INC., a
22  Tennessee Corporation; TAS             4.  UNFAIR COMPETITION UNDER
    RIGHTS MANAGEMENT, LLC, a                   CALIFORNIA BUSINESS AND
23  Tennessee Limited Liability                 PROFESSIONS CODE §17200;
    Company; and, AMERICAN                      and,
24  GREETINGS CORPORATION, an
    Ohio Corporation,                       5.  COMMON LAW
25                                              MISAPPROPRIATION.
              Defendants.
26
27                                         JURY TRIAL DEMANDED

28

                         FIRST AMENDED COMPLAINT

Plaintiffs, Blue Sphere, Inc. doing business as Lucky 13 and Robert A. Kloetzly ("Kloetzly" or "Bobby"; Blue Sphere, Inc., doing business as Lucky 13 and Kloetzly are collectively referred to herein as "Lucky 13" or "Plaintiffs") by and through their attorneys, hereby allege as follows:

## STATEMENT OF THE CASE

1.      Lucky 13 is a small, individually owned business located in Orange County, California that markets and sells LUCKY 13-branded apparel, posters and other paper products, has numerous licensees that also market and sell LUCKY 13-branded products, and maintains ownership of several Federally registered and incontestable LUCKY 13 trademarks for, *inter alia*, apparel, paper products and retail sales.  Lucky 13 is active in the local Los Angeles and Orange County community, providing time and the little, meager assistance it can afford to offer to charitable organizations such as the Orange County Rescue Mission — whose mission is ". . . *to minister the love of Jesus Christ to the Least, the Last, and the Lost*" — and the Delancey Street Foundation, which, according to *The Wall Street Journal*, is one of the most successful rehabilitation programs in the United States.

2.      Taylor A. Swift is a highly successful, multi-talented, widely respected, and influential international recording artist.  Ms. Swift's management team is legendary for its sophistication and business moxie.  Upon information and belief, in its annual Money Makers list, *Billboard* magazine recognized Ms. Swift as the highest earning musical act for 2013, stating that Swift earned about $40 million.  *See* "Music's Top 40 Money Makers 2014:  The Rich List," *Billboard*, March 10, 2014, a copy of which is attached hereto as **Ex. A**.  Swift's net worth is estimated to be at least $200 million.

3.      American Greetings Corporation ("American Greetings") was founded in 1906 and is the world's largest greeting card company.  American Greetings — whose Class A common shares are traded on the New York Stock

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

**FIRST AMENDED COMPLAINT**

DOCSSM/3010185v5/102261-0094

Exchange (NYSE) under the ticker symbol AM — sells paper greeting cards, electronic greeting cards, party products, and electronic expressive content (*e.g.*, ringtones and images for cell phones).  American Greetings' total revenue for its most recent fiscal year was $1.97 billion.  *See*, *e.g.*, American Greetings' Annual Report, the relevant portions of which are attached hereto as **Ex. B**.

4.    American Greetings maintains a worldwide licensing program, with licensees in at least 50 countries.  American Greetings' toy design and licensing division includes copyrighted properties such as Strawberry Shortcake, the Care Bears, The Get Along Gang, Popples, and Holly Hobbie, as well as Nickelodeon characters.  On June 17, 2014, American Greetings was named as the owner of the most trustworthy e-retail website in the world by the Online Trust Alliance.

5.    This is a case of "*Why You Gotta Be So Mean*."  Without first obtaining Lucky 13's written consent or a license from Lucky 13, Taylor Swift marketed and sold LUCKY 13 apparel.  Furthermore, without first obtaining Lucky 13's written consent or a license from Lucky 13, Taylor Swift and American Greetings developed and substantially advertised a "Lucky 13" Sweepstakes contest through which they marketed and sold greeting cards through the www.taylorswiftcards.com e-retail website.  In filing this action, tiny Lucky 13 is standing up for itself — much like Ms. Swift has done with great vim and vigor against the bullies she has encountered in her own life — and seeks to enforce its rights in and to the LUCKY 13 trademarks against Ms. Swift and American Greetings, both of whom are financial giants.

6.    When combined, Ms. Swift and American Greetings have a net worth of several billion dollars and certainly could have afforded to license the LUCKY 13 marks from Lucky 13.  While Ms. Swift understood and accepted that, for the bullies who confronted her, "*all you're ever going to be is mean*," Lucky 13 believes that Ms. Swift and American Greetings will do the right thing in this matter.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-2-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

# PARTIES

7.      Plaintiff Blue Sphere, Inc., doing business as Lucky 13 is, and at all times pertinent to this action has been, a corporation duly organized and existing under the laws of the State of California, and having its principal place of business at 215 Baker Street E, Costa Mesa, California 92626.

8.      Plaintiff Kloetzly, who is the Chief Executive Officer of Lucky 13, is a resident of the State of California, who maintains a place of business at 215 Baker Street E, Costa Mesa, California 92626.

9.      On information and belief, Defendant Taylor A. Swift ("Taylor Swift") is a resident of Tennessee, and maintains an address at 173 Inlet Drive, Hendersonville, Tennessee 37075-4388.

10.     On information and belief, Taylor Nation, LLC ("Taylor Nation") is a limited liability company duly organized and existing under the laws of the State of Tennessee, with its principal place of business at 2300 Charlotte Avenue, Nashville, Tennessee 37203-1859.

11.     On information and belief, Taylor Swift Productions, Inc. ("Taylor Swift Productions") is a corporation duly organized and existing under the laws of the State of Tennessee, with its principal place of business at 718 Thompson Lane, Suite 108256, Nashville, Tennessee 37204-3600.

12.     On information and belief, Swift Merchandising, Inc. ("Swift Merchandising") is a corporation duly organized and existing under the laws of the State of Tennessee, with its principal place of business at 718 Thompson Lane, Suite 108256, Nashville, Tennessee 37204-3600.

13.     On information and belief, TAS Rights Management, LLC ("TAS Rights Management"; collectively, Taylor Swift, Taylor Nation, Taylor Swift Productions, Swift Merchandising, and TAS Rights Management shall be referred to as "Swift") is a limited liability company organized and existing under the laws

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-3-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

1   of the State of Tennessee, with its principal place of business at 718 Thompson

2   Lane, Suite 108256, Nashville, Tennessee 37204-3600.

3       14.    On information and belief, American Greetings (collectively, Swift

4   and American Greetings shall be referred to as "Defendants") is a corporation duly

5   organized and existing under the laws of the State of Ohio, with its principal place

6   of business at One American Road, Cleveland, Ohio, 44144.

7                          **JURISDICTION AND VENUE**

8       15.    This is a civil action arising under the laws of the United States

9   relating to trademarks (15 U.S.C. §§ 1114(1), 1125(a) and 1125(c)).  This Court

10  has federal question jurisdiction over Counts I, II, and III pursuant to 28 U.S.C.

11  §§ 1331 and 1338(a)-(b).  This Court has supplemental jurisdiction over Counts IV

12  and V pursuant to 28 U.S.C. § 1367.

13      16.    This Court has personal jurisdiction over Taylor Swift because she has

14  done and continues to do substantial business in this judicial district — including

15  performing at STAPLES Center in Los Angeles on August 19, 2013 and

16  August 20, 2013, as part of her RED Tour — and has committed acts of trademark

17  infringement, and other acts complained of herein, in this judicial district.

18      17.    This Court has personal jurisdiction over Taylor Nation because

19  Taylor Nation has done and continues to do substantial business in this judicial

20  district and has committed acts of trademark infringement, and other acts

21  complained of herein, in this judicial district.

22      18.    This Court has personal jurisdiction over Taylor Swift Productions

23  because Taylor Swift Productions has done and continues to do substantial

24  business in this judicial district and has committed acts of trademark infringement,

25  and other acts complained of herein, in this judicial district.

26      19.    This Court has personal jurisdiction over Swift Merchandising

27  because Swift Merchandising has done and continues to do substantial business in

28

Stradling Yocca
Carlson & Rauth
Lawyers
Santa Monica

-4-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

1  this judicial district and has committed acts of trademark infringement, and other

2  acts complained of herein, in this judicial district.

3      20.    This Court has personal jurisdiction over TAS Rights Management

4  because TAS Rights Management has done and continues to do substantial

5  business in this judicial district and has committed acts of trademark infringement,

6  and other acts complained of herein, in this judicial district.

7      21.    This Court has personal jurisdiction over American Greetings because

8  American Greetings has done and continues to do substantial business in this

9  judicial district and has committed acts of trademark infringement, and other acts

10  complained of herein, in this judicial district.

11      22.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391

12  (b)-(c) and 1400(b).  The acts and transactions complained of herein were

13  conceived, carried out, made effective, and had an effect within the State of

14  California and within this judicial district.

15                      **NATURE OF THE ACTION**

16      23.    In this action, Lucky 13 seeks injunctive relief, Defendants' profits,

17  Plaintiffs' lost profits and damages, punitive damages, and attorneys' fees, for

18  Defendants' acts of trademark infringement under 15 U.S.C. § 1114 *et seq*., unfair

19  competition and false designation of origin under 15 U.S.C. § 1125(a), trademark

20  dilution under 15 U.S.C. § 1125(c), unfair competition under Cal. Bus. & Prof.

21  Code § 17200 *et seq*., and common law misappropriation.

22                      **FACTUAL ALLEGATIONS**

23      24.    Lucky 13 is a small, individually owned company.  Lucky 13's owner,

24  Bobby Kloetzly, grew up on the shores of Huntington Beach, California, surfing,

25  riding motorcycles up and down Pacific Coast Highway, attending the Orange

26  County Fair, and going to concerts given by such notable musicians as Mike Ness

27  and Social Distortion, Black Flag, and Billy Zoom and John Doe's group, X.  *See*

28

Stradling Yocca
Carlson & Rauth
Lawyers
Santa Monica

-5-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

*generally*, "Lucky 13's still rockin' after two decades," *Orange County Register*, <u>August 30, 2011</u>, a copy of which is attached hereto as **Ex. C**.

25.     In the late 1980s, Bobby worked under the tutelage of several successful entrepreneurs in the apparel industry, where he made multiple connections and gained detailed knowledge of the lifestyle brand scene, including how to own and operate a successful lifestyle business.

26.     In <u>1991</u>, with the blessing, encouragement and support of his myriad business connections, Bobby ventured out to form Lucky 13.  In its twenty-three years of business operations, Lucky 13 has built up extensive and valuable business and goodwill in connection with the marketing and sale of its LUCKY 13® goods throughout the world.

### Lucky 13's Marketing and Sale of LUCKY 13® Goods

27.     Lucky 13 is the owner of the trademark LUCKY 13®, which has been used in connection with the marketing and sale of, *inter alia*, (1) clothing for men and women, namely, t-shirts, jackets, headwear and footwear; (2) jewelry; (3) body sprays and pomade; (4) license plates, license plate holders, key chains, and vehicle seat and steering wheel covers; (5) motorcycle helmets; and, (6) paper products, including desk calendars (collectively, the "LUCKY 13® Goods").

28.     Since at least as early as <u>May 7, 1992</u>, Lucky 13 has invested and continues to invest substantial time, money, and effort in promoting and advertising its LUCKY 13® Goods in United States commerce, including through its commercial Internet website, www.Lucky13.com, which is depicted on the next page.

/ / /

/ / /

/ / /

/ / /

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-6-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

1

2

3

4

5

6

7

8

9

10

11

12

13



14    29.    Lucky 13 also has marketed and sold the LUCKY 13® Goods in

15  Argentina, Australia, Brazil, Canada, China, the European Union, Hong Kong,

16  Hungary, Japan, New Zealand, Panama, South Africa, Taiwan, Thailand, and

17  Uruguay for several years.

18    30.    Lucky 13, as a result of its extensive worldwide marketing,

19  advertising and sale of LUCKY 13® Goods, has built and continues to enjoy

20  significant consumer goodwill associated with its LUCKY 13® trademarks.

21    31.    Lucky 13 and its licensing partners have sold a significant amount of

22  LUCKY 13® branded goods in the United States and worldwide.  In fact, for the

23  past decade, Lucky 13 has earned several million dollars per year from its

24  worldwide marketing and sale of the LUCKY 13® Goods through its own sales

25  and the sales of its licensees.  As such, Lucky 13's consumers have come to

26  associate Lucky 13 as the source of LUCKY13® consumer goods.  For instance,

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-7-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

consumers can search for the term "Lucky 13" on the Google search engine for "Web" — the first search result is for LUCKY 13® goods, as depicted below.



32.    In addition, consumers can search for "Lucky 13" on the Google search engine for "Images" — the majority of the search results are for LUCKY 13® consumer goods, as depicted below.

**Lucky 13's Ownership of LUCKY 13® Trademarks in the United States**

33.    Lucky 13 is the owner of several Federally registered and incontestable United States trademarks for LUCKY 13®, including,

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

**FIRST AMENDED COMPLAINT**

DOCSSM/3010185v5/102261-0094

a.     United States Trademark Registration No. 2,970,316 for the mark LUCKY 13 in International Classification 18 for "Athletic bags, backpacks, beach bags, book bags, carry-on bags, duffel bags, gym bags, school bags, shoulder bags, sports bags, tote bags, travel bags, hand bags, billfold, day packs, pocketbooks, purses, wallets," and International Classification 26 for "Belt Buckles not of precious metal";

b.     United States Trademark Registration No. 2,974,104 for the mark LUCKY 13 in International Classification 12 for "Hitch plugs, license plate holders, vehicle seat covers, automobile seat belt shoulder pads, steering wheel covers";

c.     United States Trademark Registration No. 3,022,964 for the mark LUCKY 13 in International Classification 06 for "Metal key chains, metal key holders, metal key rings, metal money clips, metal license plates"; International Classification 16 for "Bags for merchandise packaging namely plastic and paper, bumper stickers, calendars, organizers for stationary use, decals, desk calendars, paper emblems, printed emblems, graphics for application to automobiles, litter bags, merchandising bags, plastic bags, stickers, temporary tattoos"; and, International Classification 21 for "Beverage glassware, bottle openers, candle holders not of precious metal, candlesticks not of precious metal, coffee cups, drinking glasses, shot glasses, flasks, hair combs, mugs, plastic cups, plastic coasters, rubber coasters, and travel tumblers";

d.     United States Trademark Registration No. 3,207,294 for the mark LUCKY 13 in International Classification 25 for "Clothing and footwear for men and women, namely, athletic shoes, athletic sports suits, belts, blouses, body suits, cardigans, coats, dresses, gowns, gloves, gym suits, hats, jackets, jeans, jogging suits, overalls; pants, namely, capri pants, chino pants, work pants; shirts namely, polo shirts, jersey shirts, diner shirts,

-9-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

bowling shirts, flannel shirts, sport shirts; shoes, shorts, namely, board shorts, chino shorts, walking shorts, hiking shorts; skirts, sleepwear, slippers, sneakers, suspenders, sweaters, sweatshirts, swimwear, tops, T-shirts, warm-up suits, beach clothes and surf wear, namely, board shorts, camisole tops, midriff tops, pants, skirts, sweatshirts, sweat pants, tank tops, tie tops; vests, sweaters, sandals, head wear, namely, caps, hats"; and, International Classification 35 for "Retail store services and on-line retail services available via the Internet in the field of electrical goods, lamps, optical goods and sunglasses, CDs, records and video tapes, jewelry, stationery, printed publications and printed matter, cards, gift wrap, furniture, furnishings and decorations, bed and table linen, comforters, towels, clothing, footwear, headgear, playthings sporting goods and accessories, namely, belt buckles, candles, clocks, coaster sets, gear bags, lighters, posters"; and,

  e. United States Trademark Registration No. 3,250,642 for the mark LUCKY 13 in International Classification 14 for "body-piercing rings, body-piercing studs, bracelets, charms, chokers, costume jewelry, earrings, ear studs, ear plug earrings, jewelry, navel rings, necklaces, pendants." Copies of the aforementioned Federally registered and incontestable LUCKY 13 trademarks are attached hereto as **Exs. D** through **H**.

  34. Lucky 13 is the owner of United States Trademark Registration No. 3,623,660 for LUCKY 13 in International Classification 03 for "Body sprays; Greases for cosmetic purposes; Hair care creams; Hair creams; Hair gels; Hair pomades; Hair shampoo; Hair styling gel; Mustache wax; Perfumed creams; Pomades; Sculpting gel; Styling gels; Gel for molding hair".

  35. Lucky 13 is the owner of United States Trademark Application No. 85/814,077 for 13 in International Classification 09 for "Motorcycle helmets; Protective helmets; Riding helmets".

FIRST AMENDED COMPLAINT

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
SANTA MONICA

DOCSSM/3010185v5/102261-0094

36.    Lucky 13 is the owner of additional trademark applications and registrations throughout the world for LUCKY 13®. A Schedule of Lucky 13's relevant trademark portfolio is attached hereto as **Ex. I**.

### Lucky 13's Licensing Program for LUCKY 13® Goods

37.    Lucky 13 has a sophisticated licensing program for the marketing and sale of LUCKY 13® goods. It has entered into numerous licensing agreements with parties in the United States and throughout the world. Lucky 13 has numerous past and current licensing partners, each of which market and sell LUCKY 13® Goods, including but not limited to apparel, motorcycle helmets, and sunglasses. Each of these licensing partners pay a negotiated royalty payment to Lucky 13, depending upon the licensed LUCKY 13® product, relevant market, and other economic factors.

38.    Because of Lucky 13's and its licensing partners' extensive use and promotion of the LUCKY 13® trademarks, LUCKY 13® has become distinctive, has acquired secondary meaning in the relevant consumer marketplace, and identifies Lucky 13 as the single source of origin for LUCKY 13® Goods. Indeed, LUCKY 13® is a famous trademark.

39.    As such, Lucky 13 has developed and maintains a trademark protection program, whereupon it seeks to stop the unauthorized and non-licensed use of its LUCKY 13® trademarks. As part of this program, it sends "cease and desist" letters and files litigation when its initial attempts to resolve matters are not successful.

### Swift's Unauthorized Marketing and Sale of "Lucky 13" Goods

40.    Lucky 13 has not authorized Defendants to manufacture, distribute, advertise, or sell the "Lucky 13" apparel or related goods.

41.    Upon information and belief, on or about <u>March 1, 2012</u>, which is about twenty (20) years after Lucky 13 first used its LUCKY 13® trademarks for the marketing and sale of its LUCKY 13® Goods, Swift began using the term

-11-

FIRST AMENDED COMPLAINT

"Lucky 13" to continuously market and sell apparel on the www.taylorswift.com
website, without requesting permission or otherwise securing a license from
Lucky 13.  *See* the usage depiction below.



42.    Upon information and belief, Swift's "Lucky 13" apparel is further
marketed and sold by additional vendors, including www.Polyvore.com, as
depicted below.



STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

43.    Upon information and belief, Taylor Swift has about 41 million Twitter followers.  Swift also has used social media to market and promote its "Lucky 13" products, as depicted below.



**Swift and American Greetings' Unauthorized Use of "Lucky 13"**

**to Market and Sell Greeting Cards**

44.    Upon information and belief, beginning at least as early as November 17, 2009, Swift and American Greetings partnered together to create Taylor Swift Greeting Cards.  From www.taylorswiftcards.com, "Taylor Swift Greeting Cards is a mobile app that allows you to select, personalize, and send digital versions of real Taylor Swift greeting cards from your device to your recipient via text message, email, twitter, or posting to their Facebook page."  In addition, Swift and American Greetings also market and sell traditional Taylor Swift paper cards.  From http://store.taylorswift.com/Greeting-Cards-Box-Set.html,

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

DOCSSM/3010185v5/102261-0094

"Get <u>13</u> of the best Taylor Swift greeting cards from the American Greetings selection in this card box set! Features <u>13</u> different Taylor Swift cards for multiple occasions: (6) Birthday cards, (4) Friendship cards and (3) Romantic cards. The perfect addition to your Taylor collection at the perfect price! . . .  Price:  $19.99." (Emphasis added.)

45.     Upon information and belief, also beginning at least as early as <u>March 13, 2013</u>, Swift and American Greetings used "Lucky 13" to market and sell greeting cards, through the sponsorship of the "Lucky 13" Sweepstakes contest through at least the <u>www.taylorswiftcards.com</u> website, without authorization or seeking a license from Lucky 13, in further infringement of Lucky 13's Federally registered and incontestable LUCKY 13® trademarks.

46.     Pursuant to the "Lucky 13" Sweepstakes Official Rules, the contest consists of thirteen (13) separate entry periods whereby contestants, through use of either through the Taylor Swift Mobile Greeting Card Application or through the <u>www.taylorswiftcards.com</u> website, could enter the "Lucky 13" Sweepstakes to win a Weekly Prize or a Grand Prize.  For a depiction of the "Lucky 13" Sweepstakes offering on the <u>www.taylorswiftcards.com</u> website, *see* below and the next page; *see also* **Ex. J**, which is a copy of the "Lucky 13" Sweepstakes Official Rules.



FIRST AMENDED COMPLAINT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

DOCSSM/3010185v5/102261-0094

47.    Upon information and belief, the Weekly Prize and the Grand Prize consisted of the following,

a.    For the Weekly Prize, each of the thirteen (13) "Lucky 13" winners were to receive:  a Taylor Swift-branded T-Shirt; two "RED"-branded drawstring backpacks; a branded grey rubber bracelet; two branded red rubber bracelets; a Taylor Swift poster; two 2013 branded locker calendars; one branded guitar pick pack; one large branded spiral notebook; and, two small branded spiral notebooks; *see*, *e.g*., **Ex. J**; and,

b.    For the Grand Prize, the winner was to receive,

"A trip for the Grand Prize winner and up to three (3) guests to Nashville, Tennessee for Taylor Swift's Red Concert on September 21, 2013. Grand Prize includes: Round-trip, coach-class airfare for the winner and up to three (3) guests to Nashville, Tennessee from an airport determined at the sole discretion of the Sponsor . . .  The Approximate Retail Value . . . of the Grand Prize is $12,933.21." *See id*.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

48.     Upon information and belief, several media outlets provided and continue to provide information concerning the American Greetings and Taylor Swift "Lucky 13" Sweepstakes, including but limited to,

a.     About.com, wherein this internet website states,

"American Greetings and Taylor Swift - Lucky 13 Sweepstakes. . . . Enter American Greetings and Taylor Swift's Lucky 13 Sweepstakes and you could win a trip for four to Nashville, Tennessee for a Taylor Swift concert or weekly prizes of a selection of Taylor Swift branded stuff worth about $117 each." *See* www.contests.about.com, a copy of which is attached hereto as **Ex. K**;

b.     I Love Giveaways, wherein this internet website states,

"American Greetings and Taylor Swift's Lucky 13 Sweepstakes. . . . Enter for your chance to win the Grand Prize of a trip to Nashville to see Taylor Swift's final stop on The RED Tour! Plus, 13 Weekly Prize Winners will win Taylor Swift prize packages containing t-shirts, bracelets, posters and much more!" *See* www.ilovegiveaways.com, a copy of which is attached hereto as **Ex. L**;

c.     Infinite Sweeps, wherein this internet website stated,

"AMERICAN GREETINGS AND TAYLOR SWIFT'S LUCKY 13 SWEEPSTAKES . . . They're sending one Grand Prize winner to Nashville to see the final stop on The RED Tour. . . .  We're talking airplane + hotel + concert tickets + spending money. . . ." *See* www.infinitesweeps.com, a copy of which is attached hereto as **Ex. M**;

d.     Slick Deals, wherein this internet website stated,

"To enter the Sweepstakes via the Taylor Swift Mobile Greeting Card App, you <u>must download</u> the free . . . Application . . . ." *See* www.slickdeals.net, a copy of which is attached hereto as **Ex. N** (emphasis added);

e.     Sweepstakes Fanatics, wherein this internet website stated,

"Enter the American Greetings and Taylor Swift's 'Lucky 13' Sweepstakes for a chance to win a 2-night trip for four to Nashville, Tennessee to attend Taylor Swift's Red Concert! . . . ." *See* www.sweepstakesfanatics.com, a copy of which is attached hereto as **Ex. O**; and,

f.    Ultra Contest, wherein this internet website states,

"American Greetings - Taylor Swift Lucky 13 Sweepstakes . . . . One Grand Prize Winner in the American Greetings 'Taylor Swift Lucky 13 Sweepstakes' will win a trip for 4 to see Taylor Swift's Red Concert in Nashville, Tennessee." *See* www.ultracontest.com, a copy of which is attached hereto as **Ex. P**.

49.    Upon information and belief, Defendants' conduct has been and will continue to be malicious, fraudulent, deliberate, willful, intentional, and in disregard of Plaintiffs' intellectual property rights.

**Swift's and American Greetings' Extensive Trademark Portfolios**

50.    Swift has filed about sixty United States Federal trademark applications, including but not limited to the following marks:

a.    United States Trademark Registration No. 3,439,210 for the mark TAYLOR SWIFT in International Classification 25 for "Clothing, namely, shirts, T-shirts, sweatshirts, jerseys, hats and caps";

b.    United States Trademark Registration No. 3,809,272 for the mark TAYLOR SWIFT (and design) in International Classification 35 for "On-line retail store services featuring audio recordings, video recordings, printed publications, printed materials, clothing, collectibles, memorabilia, and a wide variety of products related to a musical artist";

c.    United States Trademark Registration No. 3,809,274 for the mark TAYLOR SWIFT (and design) in International Classification 25 for "Clothing, namely, bandanas, caps, hats, hooded pullovers, hooded sweat shirts, sweat shirts, pants, and t-shirts";

d.    United States Trademark Registration No. 4,102,010 for the mark SPEAK NOW in International Classification 25 for "Clothing, namely, casual clothing, namely, tops for men, women, and children; Shirts; T-shirts; Headwear; Caps; Hats; Gloves; Scarves";

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-17-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

e.    United States Trademark Registration No. 4,420,958 for the mark TAYLOR SWIFT in International Classification 25 for "Footwear";

f.    United States Trademark Application No. 77/734,586 for the mark FEARLESS in International Classification 25 for "Clothing, namely, dresses, hooded pullovers, hooded sweat shirts, jackets, jerseys, sweat shirts, pants and jeans, and hats, caps, bandanas, t-shirts and sweaters sold or distributed in connection with Applicant's live musical performances and musical sound recordings";

g.    United States Trademark Application No. 85/121,390 for the mark SWIFT (and design) in International Classification 25 for "Clothing, namely, shirts, t-shirts, jerseys, sweatshirts, pants, sweatpants, shorts; Headwear; Caps; Hats; Visors; Bandanas; Gloves; Scarves; Footwear; Hosiery";

h.    United States Trademark Application No. 85/121,393 for the mark TS (and design) in International Classification 25 for "Clothing, namely, shirts, t-shirts, jerseys, sweatshirts, pants, sweatpants, shorts; headwear; caps; hats; visors; bandanas; gloves; scarves; footwear; hosiery"; and,

i.    United States Trademark Application No. 85/168,908 for the mark TAYLOR SWIFT FEARLESS in International Classification 25 for "Clothing, namely, shirts, jerseys, t-shirts, sweatshirts; Head wear; Caps."

51.    Upon information and belief, American Greetings maintains its own trademark legal department.  Since its inception in 1906, American Greetings has filed more than 1,000 United States Federal trademark applications, including but not limited to the following marks:

a.    United States Trademark Registration No. 728,862 for the mark AMERICARD in International Classification 16 for "Greeting Cards";

b.      United States Trademark Registration No. 871,354 for the mark HOLLY HOBBIE in International Classification 16 for "Greeting Cards";

c.      United States Trademark Registration No. 1,117,262 for the mark STRAWBERRY SHORTCAKE in International Classification 16 for "Greeting cards";

d.      United States Trademark Registration No. 1,267,116 for the mark STRAWBERRY SHORTCAKE in International Classification 16 for "Gift wrapping paper";

e.      United States Trademark Registration No. 1,270,509 for the mark CARE BEARS in International Classification 16 for "Greeting cards";

f.      United States Trademark Registration No. 2,305,057 for the mark AMERICAN GREETINGS in International Classification 35 for "Retail store services featuring greeting cards and related gift items provided via global computer network", and International Classification 42 for "Computer services, namely, interactive personalization of greeting cards and gifts via global computer network";

g.      United States Trademark Registration No. 2,547,461 for the mark TROLL AND TOAD in International Classification 35 for "Mail Order Catalog Services Featuring Games"; and,

h.      United States Trademark Registration No. 3,819,802 for the mark AGINTERACTIVE in International Classification 09 for "Providing a website featuring downloadable software for screensavers, browser skins, desktop wallpaper, emoticons, stationery, and clip-art", in International Classification 38 for, "Wireless communications services, namely, transmission of graphics, text, and ring tones to mobile telephones; Instant messaging services; and delivery of personalized greeting cards to others via electronic mail," and in International Classification 41 for "Entertainment services, namely, providing a web site featuring, electronic greeting cards."

-19-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

52.     Upon information and belief, while Swift and American Greetings filed the above applications, they did not file any Federal trademark applications for "Lucky 13" in International Classification 16 for paper products, International Classification 25 for apparel, or International Classification 35 for the retail sale of LUCKY 13® apparel, or for use on or in conjunction with any other goods or services.  This is because, upon Lucky 13's belief, they likely knew that such applications would not register — due to (a) Lucky 13's earlier first use of the LUCKY 13® trademarks in United States commerce, as well as (b) the existence of Lucky 13's Federally registered and incontestable LUCKY 13® trademarks in each of these international classifications.

### Swift's and American Greetings' Business Empires

53.     Upon information and belief, Swift has numerous business and licensing partners, each of whom is a licensee or sponsor of Swift, or whom Swift endorses.  These business partners include, but are not limited to, AirAsia Berhad, the aforementioned American Greetings, Coca-Cola, Cornetto, Cover Girl, Elizabeth Arden, Keds, Papa John's Pizza, and Toyota.

54.     *Billboard* magazine recognized Swift as the highest earning musical act for 2013, stating that Swift earned about $40 million.  *See*, *e.g*., **Ex. A**.  Upon information and belief, in total, Swift has sold at least 26 million albums and over 75 million digital downloads worldwide under the Taylor Swift trademarks.

55.     Upon information and belief, American Greetings' major domestic greeting card brands are American Greetings, Recycled Paper Greetings, Papyrus, Carlton Cards, Gibson, Tender Thoughts, and Just For You.  From American Greetings' most recent Annual Report,

> Our other domestic products include AGI In-Store display fixtures, as well as other paper product offerings such as Design Ware party goods and Plus Mark gift wrap and boxed cards.  Electronic greetings and other digital content, services and products are available through our subsidiary, AG Interactive, Inc.  Our major Internet brands are AmericanGreetings.com, BlueMountain.com and Cardstore.com.  We also create and license our intellectual properties, such as the "Care

Stradling Yocca
Carlson & Rauth
Lawyers
Santa Monica

-20-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

Bears" and "Strawberry Shortcake" characters. . . .  Our international operations include wholly-owned subsidiaries in the United Kingdom [UK], Canada, Australia and New Zealand as well as licensees in approximately 50 other countries. As of February 28, 2014, we also operated 396 card and gift retail stores throughout the UK.  *See*, *supra*, **Ex. B** at 2, 23.

56.    American Greetings, concerning its worldwide licensing program, further states as follows within its most recent Annual Report,

The Corporation has agreements for licensing the Care Bears and Strawberry Shortcake characters and other intellectual property. These license agreements provide for royalty revenue to the Corporation based on a percentage of net sales and are subject to certain guaranteed minimum royalties.  These license agreements may include the receipt of upfront advances, which are . . . earned during the period of the agreement.  Certain of these agreements are managed by outside agents.  All payments flow through the agents prior to being remitted to the Corporation. Typically, the Corporation receives monthly payments from the agents. *See id* at 56.

57.    Upon information and belief, on <u>June 17, 2014</u>, American Greetings topped the list of the most-trustworthy retail websites, according to the Online Trust Alliance's annual Online Trust Audit & Honor Roll (the "Honor Roll").  *See* **Ex. Q** at 26, which is a copy of the Honor Roll.  The Honor Roll — which conducts its examination based on a website's data protection, security, and privacy policies and practices that comply with industry norms — examined the brand protection, security and privacy protection practices of more than 800 websites.  *See id.* at 4.  American Greetings' website was named the <u>best</u> online retailer and e-commerce site.  *See id.* at 7.

**Swift's Intellectual Property Knowledge and Enforcement Activity**

58.    There can be no doubt that Swift — who has an extensive trademark portfolio and numerous business and licensing partners, and whose record label is even named the "Big Machine" — knows, understands and substantially profits from her carefully cultivated and meticulously managed trademarks and brand, image, and other intellectual property.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-21-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

59.     As Swift has claimed in previous court filings in which she seeks to protect her trademarks, intellectual property protection is the backbone of her success, including for her copyright-protected musical compositions, trademark-protected brands and her overall image and likeness.  Swift previously has filed Federal litigation seeking to protect her intellectual property rights.  *See*, *e.g.*, *Taylor Swift v. Malcolm Matthews*, *et al.*, Case No. 09-cv-00442 (M.D. Tenn. 2009) (the "First Swift Trademark Action"); *see*, *also*, *TAS Rights Management, LLC v. Various John Does et al.*, Case No. 11-cv-00477 (M.D. Tenn. 2011) (the "Second Swift Trademark Action"); and, *TAS Rights Management, LLC v. Various John Does*, *et al.*, Case No. 13-cv-00170 (M.D. Tenn. 2013) (the "Third Swift Trademark Action").  Each of these cases is discussed below.

a.     In the First Swift Trademark Action, a copy of which is attached hereto as **Ex. R**, Taylor Swift claims,

> [M]erchandise bearing [Taylor Swift's] trademarks and likeness has been made available for purchase to the public, by [Taylor Swift] and her authorized vendors. . . . [Taylor Swift] has advertised and sold such merchandise since as early as October 2000. . . . Merchandise being offered by [Taylor Swift] . . . includes hooded shirts, posters . . . and, most prominently, tee-shirts.  . . . A variety of merchandise bearing [Taylor Swift's] trademarks is also available in retail stores nationwide, pursuant to [Taylor Swift's] licensing agreements.  [Taylor Swift] carefully limits such agreements . . . and maintains complete control over the manner in which [Taylor Swift's] Trademarks are used and [Taylor Swift's] name and likeness are represented.  (Emphasis added.)  *See* **Ex. R** at Paragraph Nos. 17, 18, 21 and 22.

b.     In the Second Swift Trademark Action, a copy of which is attached hereto as **Ex. S**, TAS Rights Management claims,

> Ms. Swift is an internationally recognized singer-songwriter, musician and actress. . . .  Ms. Swift provides and promotes products and services to the public in association with her name, Taylor Swift, which also functions as a trademark, used in an unstylized, literal form – "Taylor Swift," and in the stylized, "logo" form . . . .  At all times relevant hereto, Ms. Swift and/or her licensees maintained exclusive rights in and control of the Taylor Swift Trademarks, which have and continue to be used extensively in the United States and throughout the world.  (Emphasis added.)  *See* **Ex. S** at Paragraph Nos. 7, 8 and 16.

c.      In the Third Swift Trademark Action, Swift's trademark legal

team made the identical claims as in the Second Swift Trademark Action.  *See*

**Ex. T**, which is a copy of the Complaint in the Third Swift Trademark Action,

also at Paragraph Nos. 7, 8 and 16.

60.      While Swift's merchandising and licensing team obsessively focuses

on the Swift brand, it ignores the intellectual property rights of others.  Upon

information and belief, since at least as early as <u>March 1, 2012</u>, Swift has marketed

and sold "Lucky 13" apparel, as well as offered "Lucky 13" greeting card-themed

contests, all without seeking permission or otherwise securing a license from

Lucky 13 — which itself has an extensive licensing program.  There can be no

doubt that Swift fully understands that marketing and selling another's goods

without securing a license or permission is not acceptable and cannot be allowed.

61.      Upon information and belief, the "Lucky 13" apparel that has been

marketed and sold by Swift is a popular item that is in high demand.

62.      Swift's infringement of Lucky 13's Federally registered and

incontestable LUCKY 13® trademarks is clear-cut.  Lucky 13 is concerned that

Swift's past use and any future use of the term "Lucky 13" to market and sell

apparel and related products is likely to cause and will continue to cause confusion

with and dilute the significant value of Lucky 13's Federally registered and

incontestable LUCKY 13® trademarks.

63.      Swift's unauthorized use and continued use in interstate commerce of

"Lucky 13" for apparel and other products is identical in nature to Lucky 13's

marketing and sale of the LUCKY 13® Goods.  This is because Lucky 13's

LUCKY 13® Goods and Swift's "Lucky 13" apparel and related products are

marketed and sold in the same distribution channels and for a similar price.

64.      Ms. Swift was born on <u>December 13, 1989</u>.  Ms. Swift released her

first album, *Taylor Swift*, in 2006 when she was just sixteen (16) years old, and

toured in support of that album.  Since that time, Ms. Swift — like a hit making,

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-23-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

ever-present Big Machine that is a permanent part of today's pop culture — has released an album every other October or November. These albums include *Fearless* (2008), *Speak Now* (2010), and *Red* (2012). Each album has been more highly anticipated than its predecessor, and has demonstrated Ms. Swift's maturity in her writing and its musical content.

65. Upon Lucky 13's belief, Ms. Swift's next album will be released within the next several months, in time for her 25th birthday. Upon information and belief, since she is now in her mid-twenties, Ms. Swift — as she should, so as to capitalize on her maturing fan base — is trying to create a more adult-themed image, to match her now older consumer demographic.

66. In her latest marketing image and a recent music video, Ms. Swift — who has been photographed with permanent or temporary tattoos and markets herself as liking fast cars and dangerous men who drive them inappropriately, as demonstrated by her *I Knew You Were Trouble* music video — undeniably and squarely markets to and now fits within the exact consumer demographic to whom Lucky 13 markets and sells its LUCKY 13® Goods. Screen shots of Ms. Swift's *I Knew You Were Trouble* music video, as well as her permanent or temporary artwork, which includes the number thirteen (13) on her right hand, are depicted below and on the next page.



FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18    67.    While Lucky 13 does not market its LUCKY 13®-branded goods to

19  tweens and younger teens, and is not interested in marketing its goods to these

20  consumers, a substantial majority of Swift's more mature, adult followers fit within

21  Lucky 13's target consumer demographic.  In fact, the screen shot of the

22  LUCKY 13® website at Paragraph No. 28, *supra*, and the screen shots of Taylor

23  Swift's *I Knew You Were Trouble* music video and tattoos that appear on the prior

24  page at Paragraph No. 66, also *supra*, are similar and could be part of the same

25  LUCKY 13® marketing campaign — the marketing imagery depicts stylish,

26  attractive, tattooed individuals in provocative situations.

27
28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-25-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

68.     Swift has caused and is likely to cause confusion, mistake or deception (a) as to the characteristics, qualities or origin of Lucky 13's LUCKY 13® Goods, (b) as to an affiliation, connection or association between Lucky 13 and Swift, and (c) as to the sponsorship or approval of Swift's "Lucky 13" apparel by Lucky 13.

## American Greetings' Intellectual Property Knowledge and Enforcement Activity

69.     There can be no doubt that American Greetings — which has an extensive trademark portfolio and worldwide business and licensing partners for such properties as CARE BEARS, HOLLY HOBBIE, and STRAWBERRY SHORTCAKE, and with the public trust and confidence its e-retail website inspires — knows, understands and substantially profits from its carefully cultivated and meticulously managed trademarks and other intellectual property.

70.     Like Swift, American Greetings takes the protection of its trademarks and other intellectual property very seriously, as evidenced in its prior Federal court filings.  For example, American Greetings filed trademark claims in *Parillo v. Am. Greetings Corp.*, Case No.6:02-cv-00796 (M.D. Fla. 2002), a copy of which is attached hereto as **Ex. U**.  In that action, American Greetings claimed that it had "invested substantial time, effort and money advertising and promoting the Strawberry Shortcake® mark and line of characters" and that "[t]he pattern of filing numerous Federal trademarks for Strawberry Shortcake® since 1978, as well as continually using and/or licensing Strawberry Shortcake® since the date of her inception, evidences American Greetings [*sic*] intent to protect its valuable, famous and incontestable mark."  *See* **Ex. U** at Paragraphs 19 and 24.

71.     Thus, American Greetings claimed that the defendant "has sought improperly to capitalize on American Greetings' investment in the creation and positive reputation of the Strawberry Shortcake® mark, and the resulting popularity that Strawberry Shortcake® has attained."  *See id.* at Paragraph 38.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

FIRST AMENDED COMPLAINT

72.     While American Greetings' merchandising and licensing team focuses on its myriad brands, it ignores the intellectual property rights of others.

73.     Upon information and belief, since at least as early as <u>March 13, 2013</u>, American Greetings has offered "Lucky 13" greeting card-themed contests, without first seeking permission or otherwise securing a license from Lucky 13.  There can be no doubt that American Greetings fully understands that marketing and selling goods through the use of another's Federally registered and incontestable trademarks without first securing a license or permission is not acceptable and cannot be allowed.

74.     American Greetings' infringement of Lucky 13's Federally registered and incontestable LUCKY 13® trademarks is clear-cut.  Lucky 13 is concerned that American Greetings' past use and any future use of the term "Lucky 13" to market and sell greeting cards is likely to cause and will continue to cause confusion with and dilute the significant value of Lucky 13's Federally registered and incontestable LUCKY 13® trademarks.

75.     American Greetings' unauthorized use and continued use in interstate commerce of "Lucky 13" for the marketing and sale of at least greeting cards is identical in nature to Lucky 13's marketing and sale of the LUCKY 13® Goods. This is because Lucky 13's LUCKY 13® Goods and American Greetings' greeting cards are marketed and sold in the same distribution channels and for a similar price.

76.     American Greetings has caused and is likely to cause confusion, mistake or deception (a) as to the characteristics, qualities or origin of Lucky 13's LUCKY 13® Goods, (b) as to an affiliation, connection or association between Lucky 13 and American Greetings, through at least www.taylorswiftcards.com, and (c) as to the sponsorship or approval of American Greetings' "Lucky 13" Sweepstakes contest by Lucky 13.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-27-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

77. Like Swift and American Greetings, Lucky 13 is committed to protecting its LUCKY 13® trademarks against the use of identical or confusingly similar marks, for itself and its licensees in order to continue to administer its own highly successful licensing program.

## **FIRST CLAIM FOR RELIEF**

*(Infringement of Federally Registered Trademark (Lanham Act §32))*

78. Lucky 13 hereby re-alleges and incorporates by reference each of the allegations from Paragraph Nos. 1 through 77 hereof as if fully stated herein.

79. Lucky 13 is the owner and registrant of numerous United States Federally registered and incontestable LUCKY 13® trademarks, additional Federally registered LUCKY 13® trademarks, and other LUCKY 13™ trademarks.

80. Defendants are not authorized to use any of the LUCKY 13 Federally registered and incontestable trademarks, additional Federally registered LUCKY 13® trademarks, and other LUCKY 13™ trademarks.

81. Both Lucky 13 and Defendants market and sell apparel and other goods and/or services to the same or similar consumers.

82. Without Lucky 13's consent or authorization, Defendants have used and are using "Lucky 13" in connection with the advertising, marketing and offering of apparel and other goods and/or services in interstate commerce, which imitates Lucky 13's LUCKY 13® United States Federally registered and incontestable trademarks, as well as Lucky 13's additional Federally registered LUCKY 13® trademarks, and other LUCKY 13™ trademarks.

83. The use of Lucky 13's Federally registered and incontestable LUCKY 13® trademarks, and well as its additional Federally registered LUCKY 13® trademarks, and other LUCKY 13™ trademarks, was done by Defendants with knowledge and intent to create confusion or mistake, or to deceive as to the source of Defendants' goods and/or services.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-28-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

84.     As a result of Defendants' conduct, there is a strong likelihood of confusion, mistake, or deception.  Many individuals familiar with Lucky 13's LUCKY 13® Goods, reputation and favorable goodwill are likely to: (a) purchase Swift's "Lucky 13" goods; and, (b) upon encountering the "Lucky 13" Sweepstakes offered by Defendants, purchase greeting cards and other goods available to be purchased on the www.taylorswiftcards.com website and other similar points of purchase, under the mistaken belief that such goods and/or services are offered or authorized by Lucky 13.

85.     Defendants' actions have been and are willful, unfair, false and deceptive, in that they tend to mislead, deceive and confuse, and have had and, unless enjoined, will continue to have the result of misleading, deceiving and confusing the public to believe that Defendants and/or their goods and/or services are affiliated with, sponsored or controlled by Lucky 13.

86.     The foregoing actions of Defendants constitute trademark infringement by inducing the erroneous belief that Defendants and/or their goods and/or services are in some manner affiliated with, originate from, or are sponsored by Lucky 13 in violation of Lanham Act § 32, 15 U.S.C. § 1114.

87.     Lucky 13 is informed and believes, and on that ground alleges, that Defendants have made and/or will make unlawful gains and profits from their unlawful actions as alleged herein, and by reason thereof, Lucky 13 has been deprived of gains and profits which otherwise would have inured to Lucky 13 but for such unlawful actions.

88.     Lucky 13 has no adequate remedy at law for the injuries alleged in this Count.  The injuries are, in part, intangible in nature and not capable of being fully measured or valued in terms of monetary damages.  Further, the injuries are of a continuing nature and will continue to be suffered so long as Defendants continue their wrongful conduct.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-29-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

89.     Notwithstanding the difficulty of fully ascertaining the value of the damage to Lucky 13 caused by Defendants' wrongful conduct, Defendants' conduct has resulted in irreparable, direct and proximate damages to Lucky 13. Thus, Lucky 13 is entitled to injunctive relief under 15 U.S.C. §1116(a).

## SECOND CLAIM FOR RELIEF

*(False Designation of Origin and Unfair Competition (Lanham Act §43(a))*

90.     Lucky 13 repeats and re-alleges each and every allegation contained in Paragraph Nos. 1 through 77 hereof as if fully stated herein.

91.     Lucky 13 is the owner and registrant of numerous United States Federally registered and incontestable LUCKY 13® trademarks, additional Federally registered LUCKY 13® trademarks, and other LUCKY 13™ trademarks.

92.     Defendants are not authorized to use any of the LUCKY 13 Federally registered and incontestable trademarks, additional Federally registered LUCKY 13® trademarks, and other LUCKY 13™ trademarks.

93.     Both Lucky 13 and Defendants market and sell apparel and other goods and/or services to the same or similar consumers.

94.     Without Lucky 13's consent or authorization, Defendants have used and are using "Lucky 13" in connection with the advertising, marketing and offering of apparel and other goods and/or services in interstate commerce, which imitates Lucky 13's LUCKY 13® United States Federally registered and incontestable trademarks, as well as Lucky 13's additional Federally registered LUCKY 13® trademarks, and other LUCKY 13™ trademarks.

95.     Through their adoption and use of the "Lucky 13" term, which is identical to Lucky 13's Federally registered and incontestable LUCKY 13® trademarks, Defendants have intentionally and falsely designated the origin of their "Lucky 13" apparel and/or other goods and/or services so as to profit from Lucky 13's well-earned and carefully crafted reputation by confusing the public as

-30-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

to the source, origin, sponsorship or approval of its "Lucky 13" apparel and/or other goods and/or services.

96.     Defendants' unauthorized use and continued use in interstate commerce of "Lucky 13" apparel and/or other goods and/or services have caused and are likely to continue to cause confusion, mistake or deception (a) as to the characteristics, qualities or origin of Lucky 13's  LUCKY 13® and LUCKY 13™ goods, services, and/or commercial activities, (b) as to an affiliation, connection or association between Lucky 13 and Defendants, and (c) as to the sponsorship or approval of Swift's "Lucky 13" apparel and Defendants' other goods, services and/or commercial activities by Lucky 13.  Consumers are likely to purchase products from Defendants under the mistaken belief that Defendants and their "Lucky 13" Sweepstakes are affiliated, connected, or associated with Lucky 13 itself.

97.     Defendants' actions described herein were undertaken with the intention of deceiving and misleading the public at large and wrongfully trade on the goodwill and reputation of Lucky 13.

98.     Such actions, as used in commercial advertising, have misrepresented and, unless enjoined, will continue to misrepresent the nature, characteristics or qualities of Swift's "Lucky 13" apparel, and Defendants' other goods, services and/or commercial activities for which Lucky 13 is without adequate remedy at law.

99.     The activities of Defendants complained of herein also have caused Lucky 13, *inter alia*, monetary loss and damage including, but not limited to, the loss of profits in an amount not yet determined.

100.     Further, the injury is of a continuing nature and will continue to be suffered so long as Defendants continue their wrongful conduct.  Notwithstanding the inadequacy of, and the difficulty of, fully ascertaining the value of the damage to Lucky 13 caused by Defendants' wrongful conduct, Lucky 13 is informed and

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

**FIRST AMENDED COMPLAINT**

DOCSSM/3010185v5/102261-0094

1    believes, and on that ground alleges, that said conduct has resulted in irreparable,

2    direct and proximate damages to Lucky 13.

3                        **THIRD CLAIM FOR RELIEF**

4              *(Federal Trademark Dilution (Lanham Act §43(c))*

5        101.   Lucky 13 repeats and re-alleges each and every allegation contained

6    in Paragraph Nos. 1 through 77 hereof as if fully stated herein.

7        102.   Lucky 13 is the owner and registrant of numerous United States

8    Federally registered and incontestable LUCKY 13® trademarks, additional

9    Federally registered LUCKY 13® trademarks, and other LUCKY 13™

10   trademarks.

11       103.   Lucky 13's LUCKY 13® trademarks are famous and distinctive and

12   therefore are entitled to protection against dilution by blurring or tarnishment.

13       104.   Defendants are not authorized to use any of the LUCKY 13®

14   Federally registered and incontestable trademarks, additional Federally registered

15   LUCKY 13® trademarks, and other LUCKY 13™ trademarks.

16       105.   Defendants commenced use of Lucky 13's Federally registered and

17   incontestable LUCKY 13® trademarks in commerce after the LUCKY 13® name

18   and mark had become famous and distinctive through Lucky 13's decades of

19   advertising, marketing, and selling LUCKY® goods.

20       106.   After the LUCKY 13® marks became famous, Defendants

21   commenced use of the "Lucky 13" term in commerce in conjunction with at least

22   "Lucky 13" apparel and the "Lucky 13" Sweepstakes contest.

23       107.   Defendants, by using the LUCKY 13® trademarks in connection with

24   "Lucky 13" apparel and other goods and/or services in a manner in which

25   consumers are deceived as to the nature and origin of the goods and/or services

26   provided, have injured and will continue to injure Lucky 13's business reputation,

27   have tarnished the distinctive quality of Lucky 13's famous name and marks, and

28   have lessened the capacity of Lucky 13's famous LUCKY 13® trademarks to

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-32-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

identify and distinguish the LUCKY 13® Goods, in violation of 15 U.S.C. § 1125(c).

108.   Because of the similarity between the LUCKY 13® marks and Defendants' use of the "Lucky 13" term, Defendants' use in commerce of "Lucky 13" is likely to impair the distinctiveness of the LUCKY 13® Federally registered and incontestable trademarks, additional Federally registered LUCKY 13® trademarks, and other LUCKY 13™ trademarks, causing dilution by blurring.

109.   Because of the similarity between the LUCKY 13® marks and Defendants' use of the "Lucky 13" term, Defendants' use in commerce of "Lucky 13" is likely to harm the distinctiveness of the LUCKY 13® Federally registered and incontestable trademarks, additional Federally registered LUCKY 13® trademarks, and other LUCKY 13™ trademarks, causing dilution by tarnishment.

110.   Defendants' actions have caused, and unless enjoined will continue to cause, substantial and irreparable injury to Lucky 13 for which Lucky 13 has no adequate remedy at law, including but not limited to substantial and irreparable injury to the goodwill and reputation associated with the LUCKY 13® Federally registered and incontestable trademarks, additional Federally registered LUCKY 13® trademarks, and other LUCKY 13™ trademarks.

111.   Defendants' actions have been willful, intentional, and malicious, and have been done with knowledge and intent to trade on the recognition of the LUCKY 13 trademarks and to harm the reputation of the LUCKY 13 trademarks.

112.   As a result of Defendants' tarnishment of Lucky 13's name and Federally registered and incontestable LUCKY 13® trademarks, Lucky 13 has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Lucky 13 in its marks.  This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury

FIRST AMENDED COMPLAINT

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
SANTA MONICA

DOCSSM/3010185v5/102261-0094

1    for which Lucky 13 has no adequate remedy at law.  Lucky 13 will continue to

2    suffer irreparable harm unless this Court enjoins Defendants' conduct.

3                              **FOURTH CLAIM FOR RELIEF**

4              *(Unfair Competition under Cal. Bus. & Prof. Code §§ 17200 et seq.)*

5          113.   Lucky 13 hereby re-alleges and incorporates by reference each of the

6    allegations from Paragraph Nos. 1 through 77 hereof as if fully stated herein.

7          114.    Lucky 13 is informed and believes, and on that basis alleges, that

8    Defendants have intentionally misappropriated Lucky 13's LUCKY 13® Federally

9    registered and incontestable trademarks, additional Federally registered

10   LUCKY 13® trademarks, and other LUCKY 13™ trademarks, with the intent of

11   causing confusion, mistake and deception as to the source of their goods with the

12   intent to pass off their goods as those of Lucky 13, and as such, Defendants have

13   committed unfair competition in violation of California Business and Professions

14   Code §§ 17200 *et seq.*

15         115.   The foregoing acts of Defendants have caused and will continue to

16   cause injury to Lucky 13 by depriving it of sales of its genuine LUCKY 13 Goods,

17   injuring its business reputation and by passing off Defendants' goods, services

18   and/or commercial activities as Lucky 13's goods, all in violation of California

19   Business and Professions Code §§ 17200 *et seq.*

20         116.   Defendants' acts have caused and will continue to cause irreparable

21   harm and damage to Lucky 13, and have caused and will continue to cause

22   Lucky 13 monetary damage in an amount not yet determined, for which Lucky 13

23   is entitled to, including restitution and attorneys' fees and costs under California

24   Business and Professions Code §§ 17200 *et seq.*

25         117.   Defendants' infringement of Lucky 13's intellectual property

26   described herein constitutes "unlawful, unfair or fraudulent business act[s] or

27   practice[s] and unfair, deceptive, untrue or misleading advertising" within the

28   meaning of California Business and Professions Code §17200.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-34-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

118.   As a consequence of Defendants' actions, Lucky 13 is entitled to injunctive and monetary relief under California Business and Professions Code §§ 17200 *et seq*.

## **FIFTH CLAIM FOR RELIEF**

*(Common Law Misappropriation)*

119.   Lucky 13 hereby re-alleges and incorporates by reference each of the allegations from Paragraph Nos. 1 through 77 hereof as if fully stated herein.

120.   Lucky 13 has invested substantial time, man-hours, resources and money in adopting, developing and using the LUCKY 13® Federally registered and incontestable trademarks, additional Federally registered LUCKY 13® trademarks, and other LUCKY 13™ trademarks ("Investment Capital"), and the Federally registered and incontestable LUCKY 13® trademarks are Lucky 13's property.

121.   In committing the acts of trademark infringement and unfair competition as alleged herein, Defendants have misappropriated and taken without permission Lucky 13's property and converted it to their own use for their own benefit.

122.   Lucky 13 is informed and believes, and on that ground alleges, that by misappropriating and converting Lucky 13's property, Swift and American Greetings have benefited greatly and illegitimately by using the LUCKY 13 trademarks to, (a) for Swift, offer Swift's "Lucky 13" apparel; and, (b) for Swift and American Greetings, to offer other goods, services and/or commercial activities for sale without having to make a substantial investment of their own Investment Capital.

123.   Defendants' acts constitute common-law misappropriation under the common law of the State of California.

124.   Defendants have been and will continue to be unjustly enriched by their acts of misappropriation, unless enjoined.

FIRST AMENDED COMPLAINT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

DOCSSM/3010185v5/102261-0094

125.   The foregoing acts of Defendants have injured and will continue to injure Lucky 13 by depriving it of sales of its genuine LUCKY 13® goods and by injuring its business reputation and goodwill, all in violation of the common law of the State of California.

126.   Defendants' acts have caused and will continue to cause irreparable harm and damage to Lucky 13, and have caused and will continue to cause monetary damage to Lucky 13 in an amount thus far not determined, for which Lucky 13 is entitled to its actual damages, Defendants' profits, punitive damages, attorney fees and costs.

127.   Lucky 13 has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

A.   A determination that Defendants' conduct infringes Lucky 13's Federally registered and incontestable LUCKY 13® trademarks, falsely designates the origin of Defendants' "Lucky 13" apparel and other products, falsely describes such apparel and other products, and unfairly competes with Lucky 13, all in violation of Lanham Act §§43(a) and 32, 15 U.S.C. §1125, and 15 U.S.C. §1114 *et seq*.

B.   A determination that Defendants' conduct infringes Lucky 13's Federally registered and incontestable LUCKY 13® trademarks and unfairly competes with and misappropriates the property of Lucky 13 under California Business and Professions Code §§ 17200 *et seq.* and the common law of the State of California.

C.   That Defendants and their agents, officers, directors, servants, employees, attorneys, its successors and assignees, and all others in active concert or participation with Defendants be preliminarily and permanently enjoined from directly or indirectly:

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-36-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

i.    Using Lucky 13's Federally registered and incontestable LUCKY 13® trademarks, or any other trademarks which are confusingly similar to or colorable imitations of Lucky 13's Federally registered and incontestable LUCKY 13® trademarks, including, without limitation, the term "Lucky 13" alone or as part of or together with any other designs, word or words, trademark, service mark, trade name, trade dress or other business or commercial designation or any logo, symbol or design;

ii.    Committing any act which, in and of itself, or from the manner or under the circumstances in which it is done amounts to false designation of origin, false description or false representation of Defendants' "Lucky 13" apparel and other goods; and,

iii.    Otherwise unfairly competing with Lucky 13 or misappropriating Lucky 13's intellectual property, including, but not limited to Lucky 13's Federally registered and incontestable LUCKY 13® trademarks.

D.    That the Court issue an Order directing Defendants to file with the Court and serve on Lucky 13, within thirty days after the service on Defendants of such injunctions, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction.

E.    That the Court award judgment in favor of Lucky 13 for the amount of either damages sustained by Lucky 13 or the profits made by Defendants as a result of Defendants' wrongful conduct, whichever amount is greater, and damages in an amount necessary for Lucky 13 to conduct corrective advertising to eliminate the confusion caused by Defendants' wrongful acts.

F.    That the Court award judgment in favor of Lucky 13 in the amount of treble damages under 15 U.S.C. §1117, plus prejudgment interest.

G.    That the Court award judgment against Defendants for the full costs of this action, including reasonable attorneys' fees.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-37-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

H.     That the Court award to Lucky 13 punitive damages sufficient to deter Defendants from committing such willful acts of infringement in the future.

I.     That the Court award interest on all amounts found to be due to Lucky 13 from Defendants, at the prevailing rate, from the date said amounts or any part thereof became or become due.

J.     That the Court require Defendants to notify their parent, subsidiaries, affiliated companies, commercial associates, dealers, dealer advertising associations, advertising agencies, suppliers and customers of said Order.

K.     That the Court order such other, further and different relief as the nature of this action may require and that the Court deems just and proper.

L.     That the Court retain jurisdiction of this action for the purpose of enabling Lucky 13 to apply to the Court, at any time, for such further orders as may be necessary or appropriate for the interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith, and for the punishment of any violations thereof.

DATED:  June 26, 2014                    STRADLING YOCCA CARLSON
                                         & RAUTH, P.C.


                                         By:  /s/ Mark L. Skaist
                                              Mark L. Skaist
                                              Justin E. Klaeb
                                              Attorneys for Plaintiffs,
                                              BLUE SPHERE, INC. doing business
                                              as LUCKY 13 and ROBERT A.
                                              KLOETZLY

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-38-

FIRST AMENDED COMPLAINT

DOCSSM/3010185v5/102261-0094

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **JURY DEMAND**

Plaintiffs, Blue Sphere, Inc. doing business as Lucky 13 and Robert A. Kloetzly hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure on each cause of action asserted in its Complaint that is triable by jury.

DATED:  June 26, 2014                STRADLING YOCCA CARLSON
                                      & RAUTH, P.C.


                                      By:   /s/ Mark L. Skaist
                                            Mark L. Skaist
                                            Justin E. Klaeb
                                            Attorneys for Plaintiffs,
                                            BLUE SPHERE, INC. doing business
                                            as LUCKY 13 and ROBERT A.
                                            KLOETZLY

FIRST AMENDED COMPLAINT